1  Mark G. Tratos (Bar No. 1086)
   tratosm@gtlaw.com
2  Peter H. Ajemian (Bar No. 9491)
   ajemianp@gtlaw.com
3  GREENBERG TRAURIG, LLP
   3773 Howard Hughes Parkway
4  Suite 400 North
   Las Vegas, Nevada 89169
5  Telephone: (702) 792-3773
   Facsimile: (702) 792-9002
6
7  Counsel for Plaintiff
8
9              UNITED STATES DISTRICT COURT
10                 DISTRICT OF NEVADA
11
   Teller, an individual,                    Case No. 2:12-cv-00591-JCM-GWF
12
              Plaintiff,                      EMERGENCY MOTION
13                                            FOR ANTI-SUIT INJUNCTION
   v.
14
   Gerard Dogge (P/K/A, Gerard Bakardy) an
15 individual,
16
              Defendant.
17
18 ─────────────────────────────
19      Plaintiff Teller, a professional magician and entertainer residing in Nevada (hereinafter

20 "Teller" or "Plaintiff"), by and through his attorneys Greenberg Traurig, LLP, hereby files this

21 Emergency Motion for Anti-Suit Injunction ("Motion") to enjoin Defendant Gerard Dogge (P/K/A,

22 Gerard Bakardy) ("Dogge") from pursuing subsequent, recently filed, foreign litigation.

23      This emergency Motion is based upon the attached Memorandum of Points and Authorities,

24 the Declaration of Mark G. Tratos, Esq., the Declaration of Teller, the Declaration of Glenn S. Alai

25 the exhibits filed in support hereof and the pleadings and papers on file herein and any and all

26 hearings and oral arguments allowed by this Court.

27 ///

28

1.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

As this Court is aware, Teller has filed the instant action seeking redress for copyright infringement and unfair competition. These claims arise out of the intentional actions of Dogge, a relatively unknown musician and sometimes magician seeking to exploit Teller's signature illusion for his own personal and financial gain. Unbelievably, Dogge posted video of himself performing Teller's signature illusion on the popular website YouTube, offering to sell the instructions for and apparatus of the illusion to any buyer for a few thousand dollars. After unsuccessfully attempting to resolve the matter, Teller was forced to seek relief from this Court. However, it quickly became evident that Dogge was avoiding service. Despite actively avoiding service, it is now clear that Dogge is fully aware of the instant suit: Dogge has recently filed a lawsuit in Belgium alleging that an exhibit to Teller's Complaint was defamatory. Attached to the Belgium action is a copy of Teller's copyright complaint and suit. This meritless suit is a transparent attempt to harass Teller and force settlement.

Under Ninth Circuit law, the foreign suit is improper. The parties to both this action and the recently-filed Belgium action are identical, and the issues and claims asserted in the later-filed Belgium exclusively address conduct occurring in this action. Therefore, Teller seeks an order enjoining Dogge from pursuing his action in the Antwerp Court of First Instance, and, further ordering Dogge to pay Plaintiff his fees and costs associated with seeking this injunction.

### II. STATEMENT OF RELEVANT FACTS

This action seeks redress for copyright infringement and unfair competition related to Defendant's infringing work "The Rose & Her Shadow." The Defendant had seen Teller perform the illusion in Las Vegas before creating the infringing illusion. *See* Declaration of Teller ("Teller Decl."), ¶ 7, attached hereto as **Exhibit 1**.

Earlier this year, Teller became aware that Dogge was performing one of Teller's copyrighted acts, known as "Shadows," without license or Plaintiff's consent. *See* **Exhibit 1**, ¶ 3. Specifically, Dogge posted a YouTube video of himself performing the act, and made reference to the Penn & Teller show in his advertisement for the same. *Id.* Additionally, Dogge was offering to

2.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1  sell the act to the public for approximately 4,000 euros. *Id.* Teller contacted Dogge in an effort to

2  resolve the infringement without court involvement. *Id.* at ¶ 5.

3      Teller communicated with Dogge over several weeks via telephone calls and email

4  communications. *Id.* at ¶ 6. During those conversations, Dogge informed Teller that he had seen

5  Teller perform in Las Vegas and had his photograph taken with Teller, as Teller was his idol. *Id.* at

6  ¶ 7. When Teller asked why Dogge wanted to sell his illusion, Dogge responded that he anticipated

7  a great many sales and much profit. *Id.* Dogge even offered to share some of this profit with Teller,

8  which Teller declined, knowing that if Dogge sells instructions and instruments for the illusion it

9  will lead to additional infringement, will undermine its distinctive association with Teller, and will

10  steadily diminish the value of the piece in Teller's show. *Id.* at ¶ 8.

11      Dogge repeatedly rejected Teller's offers to pay for Dogge's development time and buy the

12  apparatus Dogge developed to perform Teller's illusion, indicating he could make more money by

13  selling the apparatus over the internet. *Id.* at ¶ 9. Eventually, Dogge sent Teller a short and hard

14  deadline, after which he said he would proceed to sell his apparatus over the internet unless Teller

15  paid him funds far in excess of what Teller normally pays developers to assist in developing

16  illusions. *Id.* Teller was left with no alternative but to file the instant suit. *Id.*

17      Teller filed this lawsuit on April 11, 2012 [Docket # 1] and named Gerard Dogge as

18  Defendant. On April 30, 2012, Teller engaged a private investigator to attempt to locate Dogge to

19  serve Dogge with the Summons and Complaint. On May 7, 2012, Teller received an address for

20  Dogge in Stabroek, Belgium. *See* May 7, 2012 letter from Firbank Bureau Investigation, attached

21  hereto as **Exhibit 2**. Teller engaged Patrick Hofstrossler ("Hofstrossler") with the law firm Eubelius

22  of Antwerp, Belgium, in an attempt to locate and serve Defendant Dogge. Hofstrossler attempted to

23  serve Dogge at his Stabroek, Belgium, address, however Dogge could not be located. *See* letter

24  dated July 24, 2012 regarding attempts of service, attached hereto as **Exhibit 3**. Upon further

25  research Hofstrossler was informed by a local Bailiff that Dogge owned a café in the area that had

26  long since been abandoned. *See id.* Because of the nature of Dogge's profession, he is known to

27  travel extensively for his performances and only remains in locations for short periods of time.

28

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

3.

1    Due to the various difficulties in locating Dogge, Teller has not yet been able to serve

2  Defendant Dogge and on August 9, 2012, Magistrate Judge Foley granted Teller's request for

3  service by publication with a courtesy copy via electronic mail to *Gerard-Bakardy@hotmail.com*.

4  The Court found service in this manner would not result in prejudice to Dogge, as Dogge is fully

5  aware of the claims against him.  In fact, Defendant Dogge has posted a YouTube video in response

6  to the claims, in which Dogge posts his email address *Gerard-Bakardy@hotmail.com*.   *See*

7  Screenshots of YouTube video, attached hereto as **Exhibit 4**.

8    Recently, it became even clearer that Dogge is fully aware not just of the existence of this

9  lawsuit, but also is of its substance, and obscure details within Teller's filings.  That is because on

10  July 27, 2012, Defendant Dogge filed a lawsuit of his own, claiming that one of the exhibits to

11  Teller's Complaint defamed Dogge.  *See* Writ of Summons (case no. A2081-12) (July 27, 2012)

12  ("Belgian Complaint") (available for this Court's in camera review upon request).  Dogge filed this

13  complaint in Antwerp Court of First Instance, Belgium.  *Id.*  As of this filing, Teller has not been

14  served with Dogge's Complaint, although it was delivered to the corporate headquarters of his place

15  of business, the Rio All-Suite Hotel & Casino in Las Vegas, Nevada.  *See* Declaration of Glenn S.

16  Alai ("Alai Decl.") in Support of Plaintiff's Motion, attached hereto as **Exhibit 5**, ¶¶ 1, 4, 6.

17  **II.    LEGAL ARGUMENT**

18      **A.    This Court Should Grant an Anti-Suit Injunction Prohibiting Dogge from
19              Litigating His Action in the Antwerp Court of First Impression**

20    An anti-suit injunction is needed to prevent Dogge from evading the rightful authority of this

21  Court by pursuing a subsequent action in Belgium, based on claims, arising out of and related to this

22  U.S. litigation.  Notably, if the injunction is entered, Dogge will not be denied its day in court.

23  Rather, Dogge will be able to pursue his claim in the forum in which an action between these parties

24  is already pending.  "Where, as here, a party institutes a foreign action in a blatant attempt to evade

25  the rightful authority of the forum court, the need for an anti-suit injunction crests." *Quaak v.*

26  *Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004) (citing *Laker*

27  *Airways v. Sabena, Belgian World Airlines*, 731 F.2d 909, 929-30 (D.C. Cir. 1984)).

28  / / /

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

4.

### 1.   Anti-Suit Injunction Standard

A district court with jurisdiction over the parties[1] has "the power to enjoin them from proceeding with an action in the courts of a foreign country." *Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (noting that *Seattle Totems* stands for the proposition that later-filed foreign actions may be enjoined in certain cases). Such injunctions "allow the court to restrain a party subject to its injunction from proceeding in a foreign court in circumstances that are unjust . . . . This injunction operates in personam: The American court enjoins the claimant, not the foreign court." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006).

When parties seek a preliminary anti-suit injunction enjoining foreign litigation, the regular four-part preliminary injunction test is inapplicable. *Gallo*, 446 F.3d at 991. Instead, the party seeking the injunction needs to "demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *Id.* at 991.

The factors a court must consider prior to issuing an anti-suit injunction are "(1) whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable." *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 915 (9th Cir. 2009) (internal citations and quotations omitted). After the court considers these factors, it may also consider whether the foreign litigation is vexatious or oppressive and review other equitable considerations. *Gallo*, 446 F.3d at 990. An anti-suit injunction is proper when the foreign litigation is vexatious and designed to avoid the processes of the first action. *Harvey Aluminum v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.), cert. denied, 345 U.S. 964, 73 S. Ct. 949 (1953). As demonstrated below, the instant circumstances satisfy the requirements for an anti-suit injunction.

---

[1] This Court's personal jurisdiction over Defendant Dogge is discussed in detail in Section II.B., *infra*.

5.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1

## 2.    This Matter Satisfies the Requirements for an Anti-Suit Injunction.

2      All four steps in the analysis favor an injunction against Dogge from pursuing in the Antwerp

3   Court of First Impression, relief that it can seek in this pending proceeding where Dogge is a named

4   party already.    Moreover, an anti-suit injunction is also warranted because Dogge's Belgian

5   litigation is vexatious and designed to harass.

6      ### a)    The Parties and Issues are the Same

7      Not only are the parties to both actions the same, but all of the issues in Dogge's Antwerp

8   Court of First Impression action result from this litigation, since they relate to an exhibit attached to

9   Teller's Complaint for copyright infringement of the illusion.

10      Claims and issues in the foreign and domestic lawsuits need not be identical for an anti-suit

11   injunction to be appropriate. *Applied Medical Distribution Corp.*, 587 F.3d at 914 (holding the

12   district court applied the wrong legal standard by requiring the claims and issues be identical).    In

13   fact, the Ninth Circuit has cautioned against courts using such a rigid standard, warning that it leads

14   to "counterproductive, and perhaps unintended, results." *Id.* at 915.    Rather, a court must engage in

15   a "functional inquiry" as to whether the domestic lawsuit will dispose of the claims brought in the

16   foreign lawsuit. *Id.* at 914.

17      A recent First Circuit case addressed the general issue of whether acts by a party as part of

18   the litigation can fall within the ambit of the anti-suit injunction.    In *Quaak v. Klynveld Peat*

19   *Marwick Goerdeler Bedrijfsrevisoren*, an American publically-traded company hired a Belgian

20   accounting firm to serve as its auditor.    361 F.3d 11, 14 (1st Cir. 2004).    After the American

21   company's collapse, a flood of lawsuits alleged the company was guilty of massive securities fraud.

22   *Id.*    The Belgian accounting firm refused to produce its auditing records, asserting that do so would

23   violate Belgian law. *Id.*    After a magistrate judge ordered the Belgian firm to produce its records,

24   the firm sought refuge in a Belgian court, requesting the court impose substantial penalties on those

25   who tried to seek discovery pursuant to the magistrate's order. *Id.*    The First Circuit affirmed the

26   lower court's issuance of an anti-suit injunction, holding that the "essential character" of the Belgian

27   suit was to "chill legitimate discovery by in terrorem tactics" which could only be viewed as "an

28   effort to quash the practical power of the United States courts." *Id.* at 20 (internal quotations

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

6.

1  omitted).  Thus, although the exact issues were not identical in the Belgian and American suits, the

2  Belgian suit was brought to stifle the already-pending United States action, which was sufficient to

3  meet the first prong of the anti-suit injunction standard, namely, that the parties and issues are the

4  same.

5       Here, the parties in the two suits are identical and the issues are substantially similar.  In

6  effect, all of Dogge's claims in the Belgian Complaint depend on the events that occurred within this

7  lawsuit.  As a result, the issues involved in the two lawsuits are the same.  In fact, this Court is in a

8  far better position than one in Belgium to determine liability arising from a document filed in this

9  Court.

10       As was the case in *Quaak*, the essential character of the foreign lawsuit here is to chill a

11  legitimate already-pending lawsuit in the United States.  Dogge's Belgian suit is clearly brought in

12  an attempt to stifle Teller's prosecution of his case, and if Dogge truly was concerned about the

13  contents of Teller's filings, the obvious forum to address such a concern would be in the Court in

14  which the document was filed.   Thus, given that Dogge's Belgian lawsuit is brought to "evade the

15  rightful authority of the forum court, the need for an anti-suit injunction crests."  *See Quaak*, 361

16  F.3d at 20.

17           **b)**    **This Forum's Policies Favor an Anti-Suit Injunction**

18       Permitting Dogge to pursue his litigation in Belgium would allow him to improperly forum-

19  shop an already-pending litigation and would affirm his vexatious and devious attempts to avoid

20  service of a lawsuit he is clearly aware of.  Even worse, permitting Dogge's Belgium lawsuit would

21  offend this forum's policies embodied in the litigation privilege to defamation.

22       Federal courts disfavor forum-shopping tactics, and for this reason, when two parties to a

23  cause of action each attempt to initiate suit by filing complaints, but do so in different forums, courts

24  typically give priority to the first-filed action.  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93,

25  95 (9th Cir. 1982).

26       Additionally, "Nevada recognizes 'the long-standing common law rule that communications

27  uttered or published in the course of judicial proceedings are absolutely privileged.'"  *Crockett &*

28  *Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1195 (D. Nev. 2006)

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1  (quoting *Fink v. Oshins*, 118 Nev. 428, 49 P.3d 640, 643 (2002). "An absolute privilege is an

2  immunity, which protects against even the threat that a court or jury will inquire into a

3  communication." *Id.* (internal quotations omitted). "The absolute privilege for communications

4  related to judicial proceedings is based on the policy that as officers of the court, attorneys ought to

5  have 'the utmost freedom in their efforts to obtain justice for their clients.'" *Id.* (quoting *Fink*, 49

6  P.3d at 643).

7  Here, Dogge's Belgian lawsuit claims that an exhibit attached to Teller's Complaint defamed

8  him. However, rather than address such a concern with this Court, Dogge is attempting to

9  improperly forum shop this litigation into a Belgian court. Moreover, under this forum's policies,

10  Plaintiff cannot incur liability for defamation based on information contained in his legally exempt

11  filings, as this information is protected by the litigation privilege. The litigation privilege is central

12  to the functioning of our courts and permitting Dogge to pursue his Belgian action would

13  impermissibly suppress the proceedings here, as it would prevent Plaintiff from vigorously pursuing

14  his claim, knowing that doing so could potentially expose him to liability in a foreign tribunal. This

15  Court should protect the fundamental policies contained in the first-to-file rule and the litigation

16  privilege and enjoin Dogge's Belgian action from proceeding.

17  c)  **There Is No Impact on Comity**

18  Enjoining Dogge from pursuing its newly filed litigation against Plaintiff would have no

19  impact on comity. "Comity is not required where the [foreign] action was filed after the U.S. action

20  for the sole purpose of interfering with the U.S. suit." *Dependable Highway Express, Inc. v.*

21  *Navigators Ins. Co.*, 498 F.3d 1059, 1069 (9th Cir. 2007).

22  Comity is "the recognition which one nation allows within its territory to the legislative,

23  executive or judicial acts of another nation, having due regard both to international duty and

24  convenience, and to the rights of its own citizens, or of other persons who are under the protection of

25  its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). Comity "is neither a matter of absolute

26  obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Id.* at 163-64.

27  In *Dependable Highway Express*, a lawsuit was initiated in the United States prior to another

28  lawsuit being initiated between the same parties in a foreign court. 498 F.3d at 1069. The Ninth

8.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1    Circuit held that the foreign court had the "initial opportunity to exercise comity" and the United

2    States District Court was not required to exercise comity in such circumstances. *Id.*

3      Here, comity is not required because Teller's action was filed on April 11, 2012, over three

4    months before Dogge filed his Belgian suit. Moreover, "the obligation of comity expires when the

5    strong public policies of the forum are vitiated by the foreign act." *Gallo,* 449 F.3d at 995; *see also*

6    *Applied Medical*, 587 F.3d at 919 ("enjoining [a] subsequently-filed foreign suit, which contravenes

7    the Agreement's forum selection clause, *a fortiori,* does not implicate comity.")  Here, this forum

8    has a strong public policy interest in having defendants subject to its jurisdiction appear and defend

9    lawsuits brought within this Court, and not avoid the same by simply bringing a parallel action in the

10   court of their choosing.  Allowing a foreign defendant subject to this Court's jurisdiction to avoid

11   service of a complaint, and simply select an international forum favorable to him, would seriously

12   undermine this Court's authority and should not be tolerated.

    **d)  Dogge's Belgian Litigation Is Vexatious**

13     Dogge's Belgian lawsuit is vexatious and is mere retaliation for the lawsuit Teller filed in

14   this Court.  Dogge's insidious tactics are illustrated by his active avoidance of service of Teller's

15   Complaint coupled with his attempts to serve Teller with the Belgian suit.  Dogge has admitted full

16   knowledge of the suit pending in this Court, yet has avoided or frustrated Teller's attempts to

17   formally serve his pleadings at every opportunity.  Teller has attempted to contact Dogge by phone,

18   email, and at known residences, on numerous occasions.  Due to Dogge's public acknowledgment of

19   the claims against him, and his attachment of the Complaint to the one he filed in Belgium, it is

20   obvious that Dogge is aware of the current lawsuit against him and is purposely avoiding service.

21   Pursuant to Judge George Foley's order, Dogge has been served again by email and publishing of

22   the notice in the newspapers is ongoing.

23     As further evidence of Dogge's motivations, Dogge has attempted service of the Belgian

24   complaint, not on Teller's counsel, whose name and contact information are known, but rather, has

25   attempted service on Teller's home and workplace, in an obvious effort to harass and embarrass

26   Teller.  Clearly, Dogge has brought the Belgian litigation for improper purposes and this is but one

27   further reason the Court should grant Teller's requested relief and issue an anti-suit injunction.

28

9.

*LV 419,844,783v1 8-30-12*

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

**B.    This Court Has Personal Jurisdiction Over Dogge**

This Court can properly exercise personal jurisdiction over Dogge. In order to ensure that a court is properly exercising jurisdiction over a defendant, a plaintiff must show that the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). Here, Dogge has numerous contacts with Nevada, as he has visited Nevada and watched the Penn & Teller performance, marketed and attempted to sell Teller's copyrighted illusion with references to Teller and Las Vegas, engaged in phone calls and emails with Teller in Nevada, and purposely directed tortious conduct at Teller as the owner of a copyrighted illusion. Dogge cannot now be surprised that he has been called to answer for his tortious conduct where the harm occurred, in Nevada.

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:[2] (1) the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim must arise out of that activity; and (3) the exercise of jurisdiction must be reasonable. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002) (citations omitted). If a plaintiff satisfies the first two prongs, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011). As such, where each of the three prongs is satisfied, it is proper for this Court to exercise personal jurisdiction.

**1.    Dogge Purposefully Directed His Tortious Conduct at Nevada.**

The Ninth Circuit has held that in cases involving copyright infringement, it applies the *Calder* "effects" test to determine the first prong, purposeful direction. *Mavrix*, 647 F.3d 1218, 1228, *see generally Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The "effects" test requires that the defendant (1) committed an intentional act, (2) expressly aimed at the

---

[2] Teller does not allege that this Court has general jurisdiction over Dogge pursuant to Nevada's long-arm statute. As such, only specific personal jurisdiction is addressed.

10.

forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* "There is no requirement that the defendant have any physical contacts with the forum." *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). This Court has held that under Ninth Circuit jurisprudence, where a defendant "willfully infringed copyrights owned by the plaintiff, which, as the defendant knew, had its principal place of business in the forum, this fact alone is sufficient to satisfy the *Calder* effects test." *See Righthaven v. South Coast Partners, Inc.*, 2011 WL 534046, *4 (D. Nev. 2011) (quotations omitted, emphasis added), quoting *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir.1997), *overruled on other grounds by Feltner v. Columbia Pictures*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998).

In *Mavrix*, the Ninth Circuit exercised personal jurisdiction where the defendant acted intentionally in reposting the plaintiff's copyrighted photographs on its website, expressly aimed its conduct at California by using the photographs to exploit the California market for its own commercial gain, specifically by capitalizing on the California-centered celebrity and entertainment industries, and where the defendant's conduct led to a foreseeable economic loss in California. *Mavrix*, 647 F.3d 1218, 1231-32. Here, the facts are similar to *Mavrix* and other cases within the circuit that have found purposeful direction.

### a. Dogge Acted Intentionally in Posting the Video That Infringed Teller's Copyright, and Injured Teller in Las Vegas

The Ninth Circuit has held that the intentional act requirement is satisfied where the defendant has "an intent to perform an actual, physical act in the real world, rather than to accomplish a result or consequence of that act." *See Brayton Purcell* LLP, 606 F.3d 1124, 1128. This prong is "easily satisfied" in copyright infringement actions when the defendant does the action that infringes the copyright. *Id.*, at 1129-29 (collecting authorities); *see also Mavrix*, 647 F.3d 1218, 1228-29 (noting that "[t]here is no question that [defendant] acted intentionally reposting the infringing photos…"). Here, there can be no dispute that Dogge took intentional action by posting the infringing illusion and attempting to sell the copyrighted Shadows illusion on the website

LV 419,844,783v1 8-30-12

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1  YouTube.  Having seen Teller perform in Las Vegas, Dogge was aware that the infringement would
2  injure Teller in Las Vegas.

### b. *Dogge Expressly Aimed His Conduct at Nevada*

4          This prong is satisfied where "the defendant is alleged to have engaged in wrongful conduct
5  targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Daniels v.*
6  *Jenson*, 2012 WL 369792 (D. Nev. 2012).  Maintaining a passive website is not sufficient, but
7  individually targeting a plaintiff by attempting to make commercial use of copyrighted material is.
8  *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129-30 (finding aiming in the
9  website context where "[the defendant] knew of [the plaintiff's] existence, targeted [the plaintiff's]
10  business, and entered direct competition with [the plaintiff].")

11         Under the circumstances in this case, this prong is plainly satisfied.  Dogge expressly aimed
12  his conduct at Nevada, specifically at Las Vegas and at Plaintiff Teller in particular.  There is no
13  question that Dogge knew of Teller, and claims to have seen Teller perform and to even to have met
14  Teller.  Dogge referenced Penn & Teller in his YouTube post, and referenced Las Vegas in his print
15  advertisement.  Dogge was clearly capitalizing on Teller's popularity and knew he was offering
16  Teller's copyrighted work for sale.  Prior to Dogge's actions, if someone were interested in
17  performing Shadows, they would have to approach Teller and discuss terms for a license.  Now,
18  Dogge has essentially engaged in direct competition with Teller by undermining the market for such
19  potential negotiations and sales.  The market for Teller's performances is likewise undermined if the
20  general public can purchase Teller's signature illusion for themselves, or watch any local amateur
21  magician perform it.

### c. *Dogge Has Caused Harm to Teller he Knows is Likely to be Suffered in*
### *Nevada*

24         There can be no doubt that Dogge's actions have caused harm to Teller, and that
25  Dogge knew that harm would be suffered in Nevada.  As noted above, Dogge was and is well aware
26  of the fact that Teller lives and works in Las Vegas, as Dogge has seen Teller's show, had his picture
27  taken with Teller, communicated by email and phone with Teller, and has attempted to have Teller
28  served with a lawsuit in Las Vegas.  Infringement of Teller's signature illusion clearly causes

12.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1  economic and professional harm to Teller in Nevada.  Teller is located in Nevada, he performs the

2  illusion in Nevada, and makes his living in Nevada.  When Dogge made the decision to post the

3  illusion on a publicly accessible website, he knew full well that the harm would be suffered in

4  Nevada by a particular person, namely, Teller.  As such, this prong is satisfied.

5  **2.  Teller's Claim Arises Out of Dogge's Forum-Related Tortious Activity**

6  The Ninth Circuit and this Court have held that the second prong of the specific jurisdiction

7  test is satisfied where the claim of copyright infringement arises out of publication of the infringing

8  material on a website accessible to users in the forum state.  *See Mavrix*, 647 F.3d 1218, 1228 ("As

9  to the second prong, Mavrix's claim of copyright infringement arises out of [the defendant's]

10  publication of the [infringing work] on a website accessible to users in the forum state.");

11  *Righthaven*, 2011 WL 534046, *4 (noting that the standard was "easily met" where "[d]efendants'

12  unauthorized copying and posting of the Work appears to be their only contacts with Nevada, and

13  but for that copyright infringement, [plaintiff's] claim would not have arisen.").  As with these cases,

14  Teller's copyright and unfair competition claims arise out of the infringing material posted by Dogge

15  on a website accessible to those in the forum, and as such, this prong is also satisfied.

16  **3.  The Exercise of Jurisdiction Would be Reasonable**

17  The exercise of jurisdiction would be reasonable under the circumstances.  When the first

18  two prongs are satisfied, a court presumes that the exercise of specific jurisdiction is reasonable, and

19  the burden shifts to the defendant to 'present a compelling case that the presence of some other

20  considerations would render jurisdiction unreasonable.'"  *Righthaven*, 2011 WL 534046 (D. Nev.

21  2011), *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).  Courts in the Ninth

22  Circuit examine several factors in making a determination as to the reasonableness of exercising

23  jurisdiction: (1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2)

24  the burden on a defendant of defending in the forum; (3) the extent of conflict with the sovereignty

25  of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most

26  efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's

27  interests in convenient and effective relief; and (7) the existence of an alternative forum.  *Daniels v.*

28  *Jenson*, 2012 WL 369792 (D. Nev. 2012).  None of the factors is dispositive; instead, the court must

13.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

balance the factors. *Id.* Overall, the result must comport with fair play and substantial justice. *See Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 930-31 (9th Cir. 2011). Here, although a few factors weigh slightly in favor of Dogge, the vast majority weigh heavily in favor of the exercise of personal jurisdiction in Nevada.

### a.   The Second and Third Factors

The second and third factors (the burden on the defendant and the conflict with sovereignty of the defendant's home state) weigh slightly in favor of Dogge. It is somewhat of a burden on Dogge to litigate in Nevada, as Dogge is a foreign national who lives overseas in Spain. However, the burden is not so significant as to outweigh jurisdiction. Although Dogge lives in a foreign country, he has traveled to the United States before, and on information and belief, he speaks fluent English. As the Ninth Circuit has noted, "modern advances in communication and transportation have significantly reduced the burden of litigating in another country," and other factors, such as e-filing, video conferences, and video depositions further ease any hardship. *See Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 926 (9th Cir. 2011) (citations and quotations omitted); *see also Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114-15 (9th Cir. 2002) (performing reasonableness analysis where defendants were living in Europe, and finding exercise of long arm jurisdiction proper). Although the Belgian courts may have some interest in the determination of the matter – although apparently Dogge is not even currently living in Belgium - the Ninth Circuit has also held that the extent of the conflict with the sovereignty of the defendant's state "is not dispositive because, if given controlling weight, it would always prevent a suit against a foreign national in a United States court." *Id.* It is true that caution must be exercised when extending personal jurisdiction into the international field, *see Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988), *citing Asahi Metal Industries v. Superior Court of Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 1034-35, 94 L.Ed.2d 92 (1987) but the federal courts in the United States are careful to protect the rights of all litigants. When Dogge chose to capitalize on Teller's fame and ingenuity by infringing Teller's copyright, Dogge knew full well that some legal action was bound to result, and could have easily weighed the likelihood of having to defend an action in the United States in making the determination as to whether to infringe. This suit was a foreseeable

14.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1   consequence of Dogge's actions and Dogge should not be excused from having to defend the suit

2   where he committed the harm.

3                    *b.     The First, Fourth, Fifth, Sixth, and Seventh Factors*

4             The remaining factors weigh heavily in favor of the reasonableness of litigation in Nevada.

5   Dogge has purposefully interjected himself into the forum state's affairs by seeking out a well-

6   known Nevada resident and targeting him by infringing his copyright and attempting to exploit the

7   infringement for commercial gain. A plaintiff has an interest in litigating in the plaintiff's forum of

8   choice, and Nevada has an interest in protecting its citizens who are the victim of tortious activity. It

9   is most efficient to litigate the matter here, as the plaintiff resides here, the illusion has been

10  performed here countless times, and this court already has a working knowledge of copyright and

11  unfair competition laws. The importance of the forum to Teller's convenient and effective relief can

12  likewise not be overstated, especially in light of the fact that there is no adequate alternative forum.

13  Dogge will likely argue that Belgium provides an adequate forum; however, these claims are based

14  on violation of the Copyright Act and the Lanham Act, both United States statutes.   To force

15  someone who has taken the appropriate measures under the law to protect himself and his creation –

16  by registering the copyright – to go halfway around the world to litigate the infringement simply

17  does not comport with fairness or common sense.

18            This is not a situation where a defendant is "haled into a jurisdiction solely as a result of

19  random, fortuitous, or attenuated contacts..."  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

20  475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  As discussed above, it was Dogge who chose this

21  course of action, visiting the United States and viewing Teller performing the illusion live, reaching

22  out to the United States and specifically Nevada to harm Teller by making it known that he was

23  performing Teller's illusion and offering to sell the secret to anyone with a few thousand dollars,

24  even referencing Las Vegas in the print advertisement.  Dogge was well aware of Teller, his

25  celebrity, and his location given the success of Teller's show at the Rio in Las Vegas.  Certainly

26  Dogge cannot be surprised that Teller took legal action against him in Nevada.

27            In light of the above analysis, this Court plainly has personal jurisdiction over Dogge where

28  Dogge purposely directed his tortious activity at Teller in Nevada, this lawsuit arose from that

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

15.

1   activity, and the exercise of personal jurisdiction would be manifestly reasonable under the

2   circumstances.  As such, this Court has personal jurisdiction over Dogge and it is appropriate to

3   enjoin Dogge's suit in Belgium.

4           **C.**    **Dogge Should Be Ordered to Pay the Costs and Expenses Associated with this Injunction.**

5

6          The only apparent purpose of Dogge's suit in the Antwerp Court of First Impression is to

7   harass Plaintiff and increase the costs of this litigation.  This is the best forum for the parties' dispute

8   given that Dogge witnessed Teller perform the magic trick in question in Las Vegas and advertised

9   on his YouTube positing that his trick was "As seen in Las Vegas."  Additionally, Dogge was well

10  aware that Teller lives in Las Vegas and any injury to his copyrights would occur here.  By contrast,

11  Teller has no contacts with Belgium other than email communications with Dogge informing Dogge

12  of Teller's copyrights for the subject illusion, and Dogge's infringement of the same.  *See* Teller

13  Declaration, Ex. 1, ¶ 10.

14         Furthermore, and as previously mentioned, Dogge's Belgian defamation suit is clearly

15  brought only in an effort to embarrass and harass Teller as is shown by the fact that Dogge has

16  attempted service upon Teller both at his work and home, despite being well aware of the name and

17  address of Teller's legal representation, which appears on all filings in this matter.

18         Given these circumstances, there is no justifiable reason for Dogge to initiate and pursue his

19  subsequent foreign litigation.  Accordingly, Teller respectfully requests that the Court award its fees

20  and costs associated with filing this motion for an injunction.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

16.

III.    **CONCLUSION**

Based on the foregoing, Plaintiff Teller respectfully requests that the Court grant this Motion and enjoin Defendant Dogge from pursuing the Belgian litigation.  Moreover, Teller requests this Court award him his attorney's fees for having to bring this Motion.

DATED:  August 30th, 2012.

GREENBERG TRAURIG, LLP

Mark G. Tratos (Bar No. 1086)
Peter H. Ajemian (Bar No. 9491)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Counsel for Plaintiff

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

17.

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2012, I served the EMERGENCY MOTION FOR ANTI-SUIT INJUNCTION by United States mail, postage prepaid at Las Vegas, Nevada, and by electronic mail on the following:

Eric Libbrecht
Gerechtsdeurwaarder
Kioskplaats 24
2660 Antwerpen (Hoboken)
gdw.e.libbrecht@skynet.be

AN EMPLOYEE OF GREENBERG TRAURIG, LLP

# Exhibit 1

Mark G. Tratos (Bar No. 1086)
tratosm@gtlaw.com
Peter H. Ajemian (Bar No. 9491)
ajemianp@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Teller, an individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Gerard Dogge (P/K/A, Gerard Bakardy) an individual,<br><br>　　　　Defendant. | Case No. 2:12-cv-00591-JCM-GWF<br><br>**DECLARATION OF TELLER** |

I, Teller, declare under penalty of perjury as follows:

I am over the age of 18 years, and a resident of the State of Nevada.  I have personal knowledge of the facts set forth in this Declaration and would be competent to so testify if called upon to do so.

1.　　I have been a professional magician for almost forty years and I am part of the act, Penn & Teller, which has performed on numerous television shows and on stage throughout the United States and around the world.

2.　　During my long career I have created several original illusions which I use in our performances. The theatrical piece that has become most publicly associated with me, is called "Shadows."  It is my signature piece.  I have held a Copyright on the piece since 1983.  In the

illusion, as I draw a knife across the shadow cast by a rose, the corresponding portion of the actual rose is cut and falls. I have performed "Shadows" tens of thousands of times, from Broadway to Las Vegas, and, in particular, at every theater show we've done at the Rio for more than a decade. It is the illusion and performance which most magicians and the public associate with me.

3.      Earlier this year I became aware of an individual who identified himself as Gerard Bakardy. He posted a You Tube video of himself performing my copyrighted act without consent or license from me, and offered to sell it to the public for approximately 4,000 euros.

4.      Using contacts in the magic community, I learned that Gerard Bakardy was a lounge musician who had recently taken up magic.

5.      In an effort to find a way of resolving the infringement that was occurring by the YouTube posting, and to deter the effort by Mr. Bakardy to trade on my name by making reference to the Penn & Teller show in his ad, and in order not to sustain further injury, I attempted to contact Mr. Bakardy to find a resolution of the matter without having to resort to the courts.

6.      My first communication with Mr. Bakardy was through e-mails which quickly led to the opportunity to communicate by phone. I continued to communicate with Mr. Bakardy over several weeks in both telephone calls and e-mails in an effort to attempt to find a way of resolving the dispute without litigation.

7.      Mr. Bakardy told me during our conversations that he had seen me perform in Las Vegas. He said he had his photograph taken with me and that I was an idol of his. I know therefore he saw me perform Shadows, as it is a mainstay of all of my performances. When I asked him his motives for wanting to sell the piece, he said he anticipated a great many sales and much profit.

8.      He offered to share some of this profit if I would go into business with him. I declined. I believe that if the instructions and instruments for this illusion is sold to random customers to whom I have not licensed the copyrighted work, it will lead to additioanal infringements, undermine its distinctive association with me, and steadily diminish the value of the piece in my show.

9.      Mr. Bakardy rejected my repeated offers to pay for his development time and buy the

apparatus that he had developed to perform my illusion. Mr. Bakardy indicated that he could make a lot more money simply by selling it over the internet. Eventually Mr. Bakardy set a short and hard deadline, after which he said he would proceed to sell his apparatus to all comers unless I paid him funds far in excess of what I normally have to pay developers to help me in the development of illusions. I was left with no alternative but to seek to enforce my intellectual property rights and to prevent the unfair competition by bringing an action in the United States Federal District Court.

      10.    Now I am informed that Mr. Bakardy has filed a retaliatory lawsuit in Belgium, attaching a copy of my filed United States Federal Court complaint for copyright infringement to his suit and has sent a copy of that lawsuit to the Rio Hotel here in Las Vegas. I have no contacts with Belgium of any sort and my only communications have been through e-mail and telephonic contact with Mr. Bakardy. Never the less, I understand that Mr. Bakardy is trying to serve me personally with the Belgium complaint. He has delivered a copy to the Rio Hotel and he has attempted to have a process server serve me at my residence. I believe that unless this retaliatory European action is enjoined I will inevitably be served as I perform most evenings in a very public place. Unlike Mr. Bakardy I cannot hide.

      11.    Finally, Mr. Bakardy has through the various communications attempted to suggest that I intended to cause him embarrassment or harm by including a screen shot of his advertisement for sale of the illusion as it appeared on YouTube. That clearly is not and was not the intent of my counsel or me in filing the lawsuit. We simply wanted to prevent the ongoing copyright injury that might occur if the Defendant went forward with the threatened sale of this illusion through the internet around the world. We wanted to stop the false association which Mr. Bakardy was claiming with me and Penn and Teller and the injury to my career.

DATED August 30, 2012

TELLER

LV 419844924v1 - 8/30/2012 10:23:04 AM

# Exhibit 2



# FIRBANK BUREAU INVESTIGATION

*(The international private investigators)*
BCR House, 3 Bredbury Business Park, Stockport, Cheshire SK6 2SN
Tel: 0161 300 0936 (Office Hours)   24hr Line: 07766 307 545   Fax: (01625 527 529)
*Overseas office*: 10 Villas de Artenara, Caleta de Fuste, Fuerteventura 35610, Spain
E-mail: fbim23@hotmail.com   Web: www.fbiinternational.co.uk

## TRACE REPORT

*Greenberg Traurig, LLP*
*Suite 400 North*
*3773 Howard Hughes Parkway*
*Las Vegas*
*Nevada 89169*

*7th May 2012*

Client Ref No:        No Reference

Result of Trace:      POSITIVE

Name of Subject:     Mr Gerard Dogge

Subject trace Address:  Mailbox 1, Bostbus, 2940 Stabroek, Belgium

Telephone No:

Mobile Number:       0034 606 356 504 (still active)

Additional Information:   Your subject was living in Fuerteventura until March 2012 when
He returned to his native Belgium where he is currently living.

*All queries must be notified in writing within 30 days of receipt of this report.*

*The information above is supplied for the sole use of the person or persons to whom it is
supplied on the understanding that the contents should be treated as highly confidential and
must not be disclosed to a third party. Whilst every endeavor is made to ensure that the
above information is correct and accurate, no responsibility can be accepted if this does not
prove to be so. None of the above information has been obtained in contravention of the
Criminal Justice and Public Order Act 1994 and the Data Protection Act 1984.*

*LV 419,753,583v1 5-7-12 131991 010400*

# Exhibit 3

**eubelius**
advocaten avocats attorneys

| | |
|---|---|
| O. ref.: | 123776 |
| By e-mail: | huizinga@eu.gtlaw.com |
| By fax: | +31/ 20.30.17.350 |
| | |
| Contact: | Patrick Hofströssler |
| Telephone: | 02/543.35.15 |
| E-mail: | patrick.hofstrossler@eubelius.com |
| | |
| File: | Teller/Gerard Dogge (Bakardy) |

De heer Allard Huizing
Advocaat
Greenberg Traurig, LLP
Strawinskylaan 3127
1077 ZX AMSTERDAM
NEDERLAND

Brussels, 24 July 2012

Dear Allard,

I refer to our previous contacts in this matter.

Following your requests, I instructed on 24 May 2012 the leading bailiffs firm of Antwerp (Jennes-De Roeck-Behaeghel) to serve to Mr Gerard Dogge, with last known address in Belgium, Cogelsplein 7, box 9 in Deurne (Antwerp).

I instructed the bailiff to serve to Mr Dogge in person the following documents:

1. The letter of Greenberg Traurig, signed by Mark G. Tratos dated on 14th May 2012, one page
2. The document "United States District Court for the District of Nevada", with reference "Civil Action No 2:12-cv-00591" with the subtitle "Summon in a civil action "dated 12th April 2012, two pages
3. The document "United States District Court District of Nevada" and "Complaint" dated 11th April 2012, 10 pages with 4 attachments, the first "Exhibit 1" of 6 pages, the second "Exhibit 2" of 4 pages, the third "Exhibit 3" of 4 pages and the fourth "Exhibit 4", of 2 pages.

I instructed the bailiff to stress in the service that it should contain the following sentence: "you are summoned to take note with close attention of the content of the three served documents".

Finally, I instructed the bailiff to act on behalf of Mr Raymond Joseph Teller, born on 14 February 1948, residing at Clark Country Nevada, P/A Mark G. Tratos, Greenberg Traurig LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, Nevada 89169.

BRUSSELS   KORTRIJK   ANTWERP
Louizalaan 99 Avenue Louise, B-1050 Brussels, T +32 2 543 31 00, F +32 2 543 31 01, www.eubelius.com
Burgerlijke cooperatieve vennootschap met beperkte aansprakelijkheid – K.B.O. 0460.946.968 / RPR Brussel
Société coopérative civile à responsabilité limitée – B.C.E. 0460.946.968 / RPM Bruxelles

24. JUL. 2012 12:01    EUBELIUS    NO. 579    2/2

Case 2:12-cv-00591-JCM-GWF   Document 11   Filed 08/30/12   Page 27 of 32
Case 2:12-cv-00591-JCM -GWF   Document 8-3   Filed 08/06/12   Page 3 of 3

**eubelius**
advocaten avocats attorneys

The bailiff went several times to the last known address of Mr Dogge. However, the place is known as a former dancing named "Solsleutel", but is now closed and none of the doorbells of the apartments above the place bears Mr Dogge's name.
The bailiff asked people living there, but nobody knows a certain "Dogge".

I instructed the bailiff to leave a message at that address and to serve in the hands of the public prosecutor of that district.

I will keep you informed.

Best regards,

Patrick Hofstrossier

# Exhibit 4



# Exhibit 5

1  Mark G. Tratos (Bar No. 1086)
   tratosm@gtlaw.com
2  Peter H. Ajemian (Bar No. 9491)
   ajemianp@gtlaw.com
3  GREENBERG TRAURIG, LLP
   3773 Howard Hughes Parkway
4  Suite 400 North
   Las Vegas, Nevada 89169
5  Telephone: (702) 792-3773
   Facsimile: (702) 792-9002
6
   Counsel for Plaintiff
7

8              UNITED STATES DISTRICT COURT

9                   DISTRICT OF NEVADA

10

11  Teller, an individual,                    Case No. 2:12-cv-00591-JCM-GWF

12              Plaintiff,                     DECLARATION OF GLENN S. ALAI IN
                                               SUPPORT OF PLAINTIFF'S MOTION
13  v.

14  Gerard Dogge (P/K/A, Gerard Bakardy) an
    individual,
15
                Defendant.
16

17

18  I, GLENN S. ALAI, declare as follows:

19       1.      I am Executive Director of Teller's magic and comedy show "Penn & Teller,"

20  which is currently being performed regularly in the Penn & Teller Theater at the Rio All-

21  Suite Hotel & Casino in Las Vegas, Nevada.

22       2.      If called as a witness, I could testify competently to the matters stated herein.

23  This Declaration I make of my own personal knowledge except where otherwise indicated.

24       3.      I am aware of a complaint that was apparently filed in Belgium by the

25  Defendant in this instant matter, Mr. Gerard Dogge, against Teller (the "Belgium

26  Complaint").

27

28

1

1    4.    Upon information and belief, a copy of the Belgium Complaint was delivered

2  to the corporate headquarters of Caesars Entertainment Corporation in Las Vegas, Nevada

3  on or about August 21, 2012.

4    5.    I received a copy of the Belgium Complaint on or about August 24, 2012 from

5  Caesars Entertainment Corporation through internal company circulation channels.

6    6.    To date, Teller has not been served with the Belgium Complaint.

7    DATED August 30, 2012

8

9                                                        /s/ Glenn S. Alai                    .
10                                                      GLENN S. ALAI

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

2