UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TELLER, an individual,

        Plaintiff(s),

v.

GERARD DOGGE (p/k/a Gerard Bakardy) an individual,

        Defendant(s).

2:12-CV-591 JCM (GWF)

## ORDER

Presently before the court is plaintiff's emergency motion for an anti-suit injunction. (Doc. # 11). This motion eventually set off a series of motions and responses, some unusual, by both parties.

**I.    Background**

*A. Factual Background*

Plaintiff is a prominent magician. In 1976, Plaintiff developed an illusion known as "Shadows." (Compl., doc. # 1 at ¶14). Plaintiff successfully copyrighted the illusion with the U.S. Patent Office in 1983. (*Id.*, Ex. 1). Plaintiff has performed the "Shadows" illusion in front of an audience thousands of times in Las Vegas and across the country, and the illusion has become the signature illusion of his entertainment career. (*Id.* at ¶ 16).

Defendant is likewise an entertainer, based out of Europe. (*Id.* at ¶¶ 18-19 & Ex. 2). Defendant allegedly, at some date in the past, traveled from Europe to Las Vegas and watched

**James C. Mahan**
**U.S. District Judge**

plaintiff's entertainment show in person. (*Id.* at ¶¶ 20-22). Defendant, without authorization from plaintiff, allegedly created an illusion known as "The Rose & Her Shadow" that is similar to plaintiff's signature illusion "Shadows." (*Id.* at ¶¶ 20-22). Defendant then posted a video of himself on YouTube performing the illusion and offering to sell the secrets to the illusion at the conclusion of the video. (*Id.* at ¶¶ 22-23).

After discovering the YouTube video, plaintiff's counsel contacted YouTube about taking down the video because it allegedly infringed on plaintiff's copyrights, and YouTube eventually complied. (*Id.* at ¶ 25). Plaintiff then contacted defendant and informed defendant about the potential infringement of plaintiff's illusion.[1] (*Id.* ¶¶ 26-29). Plaintiff and defendant then began informal settlement negotiations that proved unfruitful. (*Id.* at ¶¶ 26-29).

*B. Procedural Background*

The above referenced facts culminated in plaintiff filing a complaint in this court on April 11, 2012, for copyright infringement in violation of 18 U.S.C. § 106 and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). (*See id.*).

Defendant's citizenship and current whereabouts are unknown, and have not been known since the commencement of the action. (See Compl, doc. # 1 at ¶18; Belgian Writ of Summons, doc. # 18, Ex. 1; doc. # 21).[2] On April 30, 2012, plaintiff hired a private investigator to locate defendant in Belgium and serve defendant with the summons and complaint. (Doc. # 11, Ex. 2). Additionally, plaintiff retained a top Belgian law firm to properly effectuate service upon defendant. (Doc. # 11, Ex. 3). To date, defendant has evaded personal service and cannot be located in Belgium, Spain, or in any other country in Europe. (*See* docs. ## 11 & 24).

---

[1] Plaintiff contacted defendant via an email address that defendant posted to his own YouTube video. Communications occurred between plaintiff and defendant before the initiation of this lawsuit and before defendant went "underground" to evade service. (*See* doc. # 8, Declaration of Mark Tratos, Attachment 1).

[2] These documents suggest that defendant is most likely either a Dutch or Belgian citizen. They further suggest that defendant could either be in Belgium, Spain, or any other country in Europe.

James C. Mahan
U.S. District Judge

1    Even without service, defendant became intimately knowledgeable of the details of this
2    lawsuit. (*See* Belgian Writ of Summons, doc. # 18). On or about July 27, 2012, defendant filed a
3    lawsuit against plaintiff in a Belgian court alleging defamation, among other things, based upon
4    plaintiff's complaint and filings in the instant lawsuit. (*Id.*). It is worth noting that defendant filed
5    his lawsuit in Belgium, based on the pleadings in the American lawsuit, before this court authorized
6    service by publication. (*Id.*; Order Granting Motion for Service by Publication, doc. # 10). Defendant
7    has been aware of the filings in this suit from the beginning.

8    After defendant filed the Belgian lawsuit, plaintiff filed an emergency motion for service by
9    publication. (Doc. # 8). This court promptly granted service by publication using defendant's email
10   address associated with the YouTube video. (Doc. # 10). Plaintiff then filed an emergency motion
11   for an anti-suit injunction. (Doc. # 11). This court initially set the matter for a hearing, but ultimately
12   reconsidered and vacated the hearing stating that it would "wait for a response, if any, by defendant.
13   . . ." (Doc. # 15).

14   Plaintiff then filed a motion for an expedited briefing schedule. (Doc. # 16). Apparently in
15   response to the motion activity, defendant, exactly five months after the filing of the complaint, filed
16   a pro se response to plaintiff's motion for an expedited briefing schedule. (Doc. # 18). Shortly
17   thereafter, defendant filed a second pro se response (doc. # 21) to plaintiff's emergency motion for
18   an anti-suit injunction and a pro se motion to file sealed exhibits (doc. # 22). The court will address
19   the emergency motion for an anti-suit injunction, and the resolution of that motion will necessarily
20   resolve many of the issues raised in the other motions and responses filed by both parties.

21   **II.    Anti-Suit Injunction**

22   An anti-suit injunction is an extraordinary remedy and "federal courts are generally reluctant
23   to inject themselves in the proceedings of the courts of other sovereign nations." *Asian American*
24   *Entm't Group Corp. Ltd. v. Las Vegas Sands, Inc.*, No. 2:07-cv-00144, 2012 WL 2190803, at *1 (D.
25   Nev. June 14, 2012). "Determining the appropriateness of an anti-suit injunction is a highly nuanced
26   exercise." *Quack v. Klynveld Peat Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 15 (1st Cir. 2004).
27   "The decisional calculus must take account of th[e] presumption in favor of concurrent jurisdiction."

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

*Id.* at 16-17. The Ninth Circuit has stated repeatedly that the power to issue an anti-suit injunction "should be used sparingly." *Microsoft Corp. v. Motorola, Inc.*, – F.3d –, 2012 WL 4477215, at *6 (9th Cir. Sep. 28, 2012).

The Ninth Circuit has implemented a three factor test that provides the legal standards for issuing an anti-suit injunction, which "involves different considerations from the suitability of other preliminary injunctions." *E. & J. Gallo Winery v. Andina Licores*, 446 F.3d 984, 990 (9th Cir. 2006). The factors are: (1) "whether or not the parties and the issues are the same in both the domestic and foreign actions and whether or not the first action is dispositive of the action to be enjoined"; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction or whether any other *Unterweser* factor applies; and, (3) "whether the impact on comity is tolerable." *Microsoft*, 2012 WL 4477215, at *6-7 (internal quotations and citations omitted). The court will analyze each factor in turn and ultimately conclude that an anti–suit injunction is not warranted for the reasons stated herein.

*A. Parties and Issues*

"The threshold consideration for a foreign anti-suit injunction is whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined." *Microsoft*, 2012 WL 4477215, at *7. The issues need not be "identical," and a slightly more nuanced "functional inquiry" should be employed. *Applied Medical Distribution Corp., v. Surgical Co. BV*, 587 F.3d 909, 914-15 (9th Cir. 2009).

The parties are clearly the same in the domestic and foreign lawsuits–both actions involve solely Teller and Dogge. However, the issues are not the same because the domestic lawsuit would not be dispositive of the Belgian suit.

In previous anti-suit injunction precedents, the Ninth Circuit relied heavily on choice of law provisions and forum selection clauses between the parties. *See Applied Medical*, 587 F.3d at 915-17; *E. & J. Gallo Winery v. Andina Licores*, 446 F.3d 984, 981 (9th Cir. 2006). In those cases, the foreign lawsuits necessarily raised all the same issues as the domestic suits, and resolution of the domestic lawsuits would be dispositive because of the choice of law provisions and forum selection

- 4 -

1  clauses that mandated the application of American law and legal proceedings in American courts.
2  *Applied Medical*, 587 F.3d at 916 ("We hold that the [domestic] action is dispositive of the Belgian
3  action because all of the claims in the Belgian action arise out of the Agreement, are subject to the
4  forum selection clause, and therefore must be disposed of in the California forum if at all. Therefore,
5  the issues are functionally the same."); *Gallo*, 446 F.3d at 991 ("[A]ll the issues before the court in
6  the Ecuador action are before the court in the California action. . . . [I]t is not clear that Andina has
7  claims under Ecuadorian law, as the contract contains a choice of law clause in favor of
8  California."); *see generally Zynga, Inc. v. Vostu USA, Inc.*, 816 F.Supp.2d 824, 829 (C.D. Cal. 2011)
9  ("[T]he dispute at bar does not arise from a contract and thus raise the specter of inconsistent
10 interpretations of the same document.").[3]

11     In this case, plaintiff has filed a suit against defendant alleging unfair competition and
12 copyright infringement. Defendant later filed a suit in a Belgian court for defamation based upon the
13 allegations in plaintiff's domestic complaint. In particular, defendant's Belgian case is based on
14 exhibit 3 of plaintiff's complaint because that exhibit allegedly references explicit or pornographic
15 websites.[4] This case is not dispositive of the action in Belgium. Plaintiff's success or failure in the
16 instant case will not automatically trigger or guarantee a certain outcome in a Belgian court under
17 Belgian defamation law.

18     *B. Policies of the Forum*

19     Second, a court should "look to whether the foreign litigation would frustrate a policy of the
20 forum issuing the injunction, or whether any of the other *Unterweser* factors apply." *Microsoft*, 2012

---

[3] In *Microsoft*, the most recent anti-suit injunction decision, the Ninth Circuit found the issues to be the same without a forum selection or choice of law provisions. *Microsoft*, 2012 WL 4477215, at *10 ("Here, there is no forum-selection clause, but the broader principle applies: Courts should give effect to freely made contractual agreements."). The court found that "the face of the contract makes clear that it encompasses not just U.S. patents, but all of Motorola's standard-essential patents worldwide. When that contract is enforced by a U.S. court, the U.S. court is not enforcing German patent law but, rather, the private law of the contract between the parties." *Id.*

[4] The contested exhibit was modified by plaintiff two weeks after the original filing, and the version currently available to the public is undeniably sanitary.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  WL 4477215, at *11 (internal quotations and citations apply). The additional *Unterweser* factors
2  are whether the foreign litigation would (1) be vexatious or oppressive, (2) threaten the issuing
3  court's in rem or quasi in rem jurisdiction, or (3) where the proceedings prejudice other equitable
4  considerations. *Id.* at 7.

5  In both *Gallo* and *Applied Medical*, the courts reasoned that foreign litigation would
6  substantially frustrate forum policies and warrant an anti-suit injunction when parties explicitly
7  contracted in a forum selection clause. *See Applied Medical*, 587 F.3d at 918-19; *Gallo*, 446 F.3d
8  at 991-93. "There is a strong policy favoring robust forum selection clauses. . . . Anti-suit injunctions
9  may be the only viable way to effectuate valid forum selection clauses." *Applied Medical*, 587 F.3d
10 at 918-19; *see generally Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991) ("[A]
11 clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any
12 confusion about where suits arising from the contract must be brought and defended. . . ."). Finally,
13 the importance of anti-suit injunctions crests when considering contractual agreements among global
14 corporations. *See Gallo*, 446 F.3d at 992 ("Without an anti-suit injunction in this case, the forum
15 selection clause effectively becomes a nullity. The potential implications for international commerce
16 are considerable.").

17 The crucial forum policy of upholding forum selection clauses does not apply in this case.
18 Obviously, there was never any business agreement between plaintiff and defendant so they could
19 not have contracted to litigate in a particular forum in the event of a dispute. The most important
20 policy of the forum in this case is providing a forum for plaintiff to litigate his novel claims of
21 whether a person may copyright a magic trick or illusion. Plaintiff is still proceeding forward with
22 his claims. The court further finds that none of the other *Unterweser* factors apply because the
23 foreign litigation does not threaten this court's in rem or quasi in rem jurisdiction, nor are any other
24 equitable considerations prejudiced. To the extent that the foreign suit may be vexatious, it does not
25 overcome the fact that no other factor under this step in the analysis warrants the issuance of an anti-
26 suit injunction.
27 . . .
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

C.  Comity

Finally, a court should assess "the injunction's impact on comity." *Microsoft*, 2012 WL 4477215, at *12 (internal quotations and citations omitted). In both *Gallo* and *Applied Medical*, the courts found that there could be no impact on comity when the parties agreed *ex ante* to litigate in an American forum. *See Applied Medical*, 587 F.3d at 920; *Gallo*, 446 F.3d at 994. The reasoning that there was no impact on comity in those prior cases does not apply to this case. In any event, the impact on comity is an irrelevant consideration because plaintiff fails at step one and step two.

Accordingly

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that plaintiff's emergency motion for an anti-suit injunction (doc. # 11) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that plaintiff's emergency motion for preliminary injunction (doc. # 13) be, and the same hereby is, DENIED.

IT IS FURTHER, ORDERED, ADJUDGED, AND DECREED, that plaintiff's motion for an expedited briefing schedule (doc. # 16) be, and the same hereby is, DENIED as moot.

DATED October 9, 2012.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge