# EXHIBIT 1



# EXHIBIT 2

# CERTIFICATE OF COPYRIGHT REGISTRATION

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PAu        469-609

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*David Ladd*

REGISTER OF COPYRIGHTS
*United States of America*

PA        (PAU)
EFFECTIVE DATE OF REGISTRATION

Jan.     6,     1983
Month     Day     Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1
**TITLE OF THIS WORK ▼**

Shadows

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See Instructions

pantomime drama

## 2
**NAME OF AUTHOR ▼**

**a** Teller (pseudonym for Raymond Teller)

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼
1948

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

all stage directions and actions text

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**c NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

## 3
**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1976 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶          Day ▶          Year ▶          ◀ Nation

## 4
**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Teller
c/o J. Teller
2032 Cherry Street, Philadelphia, PA 19103

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
06 JAN 1983
ONE DEPOSIT RECEIVED
06 JAN 1983
TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE
94115 JAN 6 83

TELLER000001

**FORM PA**

EXAMINED BY _____

CHECKED BY _____

☐ CORRESPONDENCE
Yes

☐ DEPOSIT ACCOUNT
FUNDS USED

**FOR COPYRIGHT OFFICE USE ONLY**

PAu 469-609

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**5** **PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼     Year of Registration ▼ .

**6** **DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.▼

**7** **DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼     Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Teller
c/o J.Teller
2032 Cherry Street
Philadelphia, PA 19103

Area Code & Telephone Number ▶ 714-891-0602 or message 215-568-1194

Be sure to give your daytime phone number.

**8** **CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

Teller (Raymond Teller)     date▶ Jan 2, 1983

Handwritten signature (X) ▼ (Raymond Teller)

TELLER000002

**9** **MAIL CERTIFICATE TO**

Name ▼
Raymond Teller
Number/Street/Apartment Number ▼
2032 Cherry Street
City/State/ZIP ▼
Philadelphia, PA 19103

Certificate will be mailed in window envelope

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?

MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

TELLER000002

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

SHADOWS

by Teller


SETTING:    Stage center is a projection screen
            composed of a piece of paper 4 feet
            high and 3 feet wide, stretched on a
            frame, supported by an easel.

            Six or seven feet directly downstage
            of the screen is a small spotlight at
            stage floor level.  It shines up at
            the screen.

            Between the two, supported on a little
            table, is a rose in a bud vase.  The
            rose has a central stem topped by a
            red blossom, and a branch with leaves
            on either side.

            When the spotlight is turned on, the
            vase and rose cast a sharp shadow on
            the screen.


CHARACTER:  The Murderer.  He carries a large,
            glistening dagger.


HISTORICAL NOTE:  This gothic pantomime has been
performed by its creator over 1100 times since
1976.  It's about time he registered a copyright,
don't you think?


Copyright 1983 by Teller

TELLER000003

page 2

ACTION:

The stage is dark.

The spotlight is slowly illuminated, revealing the rose and
the vase, and casting their shadows on the screen.

The Murderer becomes visible, lurking stage right, turning
his dagger thoughtfully in his fingers.

He looks up and sees the rose.  He takes a few steps towards it.

He notices the shadow, and takes a few more steps, bringing
himself to the (stage right) edge of the screen.

He looks down at the (stage right) branch of the rose.  He
looks back at the shadow of that brnach.  He raises the dagger.



He places the tip of the dagger on the paper screen, just at
the point where the shadow of the branch joins the shadow of
the leaves.  He stabs gently through the paper.

The (stage right) leaves of the real rose fall, breaking from
the stem at exactly the point where the shadow was cut.

Copyright 1983 by Teller        TELLER000004

The Murderer pauses, then glides to the far (left) edge of the screen.  He looks at the remaining (stage right) leaf-branch.

Again he cuts through the shadow, and again the corresponding real rose leaves fall.

He looks at the blossom.

He raises the dagger, placing its tip on the shadow of the stem just where it joins the blossom.  He pierces the paper.

One by one petals start to fall.

He twists the knife.  More petals fall.  Only one remains.

He gives a final jab.  The last petal drops off.

He lowers the dagger.  He contemplates the stem of the rose, now pruned of its leaves and its flower.

As he turns the dagger thoughtfully in his fingers, he accidentally pricks his right thumb on the point of the knife.*  He reacts, drawing a quick breath, and bringing his thumb quickly to his mouth to suck the blood from the wound.

Abruptly, as if struck by an idea, he looks at the rose stem, and up at the shadow of the rose stem.  He lowers his thumb, looks at the wound, and up at the screen.

Slowly he raises his hand, thumb pointing downward, casting its shadow crisply on the brightest portion of the screen.

With his right index finger, he pushes along the pad of the thumb, as if trying to force blood out of the wound.

From the tip of the shadow of his thumb a small stream of blood emerges and, red and glistening, runs down the surface of the paper.

He sees the blood.  He reaches up and touches the stream with the heel of his right hand.  It is real.

He looks out startled towards the audience.  As he turns outward, his hand slides down the stream of blood, spreading its color down the paper in a broad, butcher smear.

The light fades out quickly.

THE END

*Variation:  He reaches out to take the stem of the rose, but, as he grasps it, he pricks his thumb on a thorn.

Copyright 1983 by Teller

# EXHIBIT 3

1              UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEVADA

3


4    TELLER, an individual,            )
                                       )
5                   Plaintiff,         )
                                       )
6    vs.                               ) Case No.:
                                       ) 2:12-cv-00891-JCM-GWF
7    GERARD DOGGE (P/K/A GERARD        )
     BAKARDY), an individual,          )
8                                      )
                    Defendant.         )
9    _____)

10

11

12

13         VIDEOTAPED/TELEPHONIC DEPOSITION OF

14                   GERARD DOGGE

15               ANTWERP, BELGIUM

16               JUNE 11, 2013

17

18

19

20

21

22

23

24

25   REPORTED BY:  BRENDA MATZOV, CA CSR NO. 9243

| | | |
|---|---|---|
| 10:52:16 | 1 | Q.   Okay.  When you say "many years," do you have |
| 10:52:18 | 2 | an estimate? |
| 10:52:20 | 3 | A.   No, Mr. Tratos.  I can't guess an answer. |
| 10:52:25 | 4 | Q.   Okay.  I'm not asking you to guess.  If you -- |
| 10:52:27 | 5 | if you don't have a recollection, then I'm going to |
| 10:52:32 | 6 | ask for your best estimate, but not guessing. |
| 10:52:36 | 7 | Focusing your attention on what was the |
| 10:52:40 | 8 | occasion that allowed you to see that particular trick, |
| 10:52:45 | 9 | how do you recall seeing that particular illusion? |
| 10:52:50 | 10 | A.   I saw Shadows from Mr. Teller, the illusion, |
| 10:52:58 | 11 | magic trick, on the Internet on YouTube.  That's the |
| 10:53:05 | 12 | only way that I saw Mr. Teller performing this illusion, |
| 10:53:10 | 13 | on the Internet on YouTube. |
| 10:53:15 | 14 | Q.   When you saw Mr. Teller performing that |
| 10:53:18 | 15 | illusion on YouTube, what caused you to call it up |
| 10:53:24 | 16 | on YouTube?  What caused you to look at it on YouTube? |
| 10:53:30 | 17 | A.   Because I visited a convention for magicians |
| 10:53:38 | 18 | in England.  And on this convention -- I don't |
| 10:53:43 | 19 | remember -- but maybe 500 or 700 stands, standholders, |
| 10:53:48 | 20 | stands were selling all these exciting magic tricks. |
| 10:53:54 | 21 | And I have -- how can I say this? -- an -- |
| 10:54:04 | 22 | (Comment in Dutch by the witness.) |
| 10:54:07 | 23 | THE INTERPRETER:  "I have a penchant." |
| 10:54:10 | 24 | THE WITNESS:  A what? |
| 10:54:12 | 25 | THE INTERPRETER:  A "penchant."  A "weakness |

| | | |
|---|---|---|
| 11:42:50 | 1 | directly relevant to these proceedings. |
| 11:42:53 | 2 | Therefore, I'm going to ask you again:  Please |
| 11:42:55 | 3 | share the name of the individual you borrowed it from. |
| 11:42:57 | 4 | A.   The name from the person was Alexander.  And |
| 11:43:01 | 5 | I don't know his last name.  Sorry.  He's a German guy |
| 11:43:04 | 6 | who I met in Spain. |
| 11:43:07 | 7 | Q.   Where does Mr. Alexander, whatever his last |
| 11:43:09 | 8 | name is, reside? |
| 11:43:12 | 9 | A.   At this moment? |
| 11:43:17 | 10 | Q.   At the time that you borrowed the camera from |
| 11:43:19 | 11 | him, where did he reside? |
| 11:43:21 | 12 | A.   In Spain. |
| 11:43:24 | 13 | Q.   Did you record the video that you posted on |
| 11:43:27 | 14 | YouTube in Spain? |
| 11:43:28 | 15 | A.   Yes, sir, I did. |
| 11:43:35 | 16 | Q.   How long did you borrow the video camera for? |
| 11:43:41 | 17 | A.   I don't remember, Mr. Tratos.  Maybe three |
| 11:43:43 | 18 | days, four days. |
| 11:43:46 | 19 | Q.   How many times did you record the video -- |
| 11:43:48 | 20 | the videos before you got a video that you thought was |
| 11:43:55 | 21 | satisfactory to post on YouTube? |
| 11:44:01 | 22 | A.   Once or twice maybe.  Yeah. |
| 11:44:04 | 23 | Q.   You've posted two videos on YouTube; correct? |
| 11:44:10 | 24 | A.   No, sir.  I posted actually one video on |
| 11:44:10 | 25 | YouTube.  Because the second one is a part of the first |

| | | |
|---|---|---|
| 11:44:13 | 1 | one or a part of the other one. |
| 11:44:20 | 2 | Q.   Can you explain that, sir? |
| 11:44:21 | 3 | A.   The two videos to be seen on YouTube, one |
| 11:44:25 | 4 | is -- no, not to be seen -- who were to be seen for one |
| 11:44:30 | 5 | week on YouTube and were taken down by you, Mr. Tratos, |
| 11:44:33 | 6 | were two videos, one about -- I don't remember -- five |
| 11:44:36 | 7 | or six minutes.  And the other one was a short video. |
| 11:44:41 | 8 | And the short video was just a part of the longer video. |
| 11:44:46 | 9 | Q.   Did you cause both videos to be posted? |
| 11:44:52 | 10 | A.   I need assist -- assistance from the |
| 11:44:54 | 11 | interpreter. |
| 11:44:55 | 12 | (Brief exchange in Dutch between the |
| 11:44:55 | 13 | interpreter and the witness.) |
| 11:45:10 | 14 | THE WITNESS:  I posted -- I posted the videos |
| 11:45:11 | 15 | on YouTube, if this is your question, Mr. Tratos. |
| 11:45:15 | 16 | Q.   BY MR. TRATOS:  That's my question. |
| 11:45:16 | 17 | Why did you post both of them on YouTube? |
| 11:45:22 | 18 | A.   Because I was very proud that I'm the first |
| 11:45:25 | 19 | and only one in the world who could perform a trick |
| 11:45:31 | 20 | with a rose where the stem is completely visible, where |
| 11:45:35 | 21 | the stem is removable, and where the stem is standing in |
| 11:45:40 | 22 | water in a transparent bottle and where the transparent |
| 11:45:42 | 23 | bottle is removable from the table.  And I'm the first |
| 11:45:47 | 24 | and only one in the world -- and I still am -- who can |
| 11:45:52 | 25 | show the -- all the objects in this illusion as separate |

```
11:45:57   1   things from each other.  And I was very proud to show
11:46:01   2   my invention with the magic community, with the world,
11:46:05   3   with all the YouTube visitors, with everyone.
11:46:11   4        Q.   Did your posting of the videos include an
11:46:14   5   offer to sell people the illusion with a manual on how
11:46:21   6   to perform the illusion?
11:46:26   7        A.   As I remember, the videos did end with a
11:46:31   8   few words on the screen.  And this -- the words were:
11:46:36   9             "Now available, the better than in Las Vegas
11:46:40  10   trick."
11:46:40  11             Or something like that.
11:46:44  12        Q.   Why did you use the words "better than in
11:46:48  13   Las Vegas"?
11:46:48  14        A.   Because it was.
11:46:50  15        Q.   What were you referring to by referring to
11:46:52  16   "Las Vegas"?
11:46:56  17        A.   Mr. Teller.  Mr. Penn & Teller shows.  [sic]
11:47:01  18        Q.   So you intended people to recognize this as
11:47:04  19   being the same illusion that Teller performed?
11:47:09  20        A.   No, Mr. Tratos.  Because it isn't the same
11:47:12  21   illusion.
11:47:13  22        Q.   Did you -- let me ask you a series of
11:47:18  23   questions.
11:47:18  24             When you posted the video, did you first have
11:47:23  25   the image of the rose and its shadow appearing first by
```

| | | |
|---|---|---|
| 11:47:33 | 1 | itself before you enter the filled vision on the screen? |
| 11:47:41 | 2 | A.   I don't understand your question, Mr. Tratos. |
| 11:47:42 | 3 | Do you mean that the video start with a -- a |
| 11:47:48 | 4 | picture without me in the scene?  Is this your question? |
| 11:47:51 | 5 | Q.   That's correct. |
| 11:47:52 | 6 | A.   Yes, I think so, sir.  As I remember, I was |
| 11:47:55 | 7 | not in the picture. |
| 11:47:58 | 8 | Q.   Okay.  Do you enter the picture from the |
| 11:48:00 | 9 | left-hand side of the screen? |
| 11:48:06 | 10 | A.   I entered the picture, as I remember, from |
| 11:48:09 | 11 | the right-hand side of the screen. |
| 11:48:11 | 12 | Q.   All right.  Did you enter the picture with |
| 11:48:12 | 13 | a knife in your hand? |
| 11:48:15 | 14 | A.   No, Mr. Tratos. |
| 11:48:17 | 15 | Q.   Did you enter the picture and pick up a knife? |
| 11:48:21 | 16 | A.   The knife was laying on the table next to the |
| 11:48:26 | 17 | transparent Coca-Cola bottle filled with water and with |
| 11:48:31 | 18 | the complete, visible rose stem inside. |
| 11:48:33 | 19 | Q.   All right.  Did you pick up the knife from |
| 11:48:36 | 20 | the table in the video? |
| 11:48:38 | 21 | A.   Yes, I did, Mr. Tratos. |
| 11:48:41 | 22 | Q.   Did you look first at the rose and then look |
| 11:48:45 | 23 | at the shadow in the video? |
| 11:48:50 | 24 | A.   I don't remember where I looked first, |
| 11:48:51 | 25 | Mr. Tratos. |

| 11:48:53 | 1 | Q.   Okay.  Did you take the knife and place the |
| 11:48:58 | 2 | knife on the shadow of the rose where the leaves were |
| 11:49:05 | 3 | connected to the stem first? |
| 11:49:11 | 4 | A.   Yes, I think so, Mr. Tratos.  Yes. |
| 11:49:13 | 5 | Q.   And when you did that, did you cut |
| 11:49:16 | 6 | apparently -- did -- did the video make it appear |
| 11:49:20 | 7 | as if you cut the leaves from the stem, causing them |
| 11:49:27 | 8 | to fall? |
| 11:49:28 | 9 | A.   Yes, I did, Mr. Tratos.  And the understanding |
| 11:49:30 | 10 | that we're still speaking about the complete physical |
| 11:49:36 | 11 | stem in the transparent bottle with water. |
| 11:49:39 | 12 | Q.   That's correct. |
| 11:49:39 | 13 | Did you then go to the other set of leaves |
| 11:49:45 | 14 | on the other side of the stem and perform the same act |
| 11:49:49 | 15 | of putting the knife on the shadow at the connecting |
| 11:49:53 | 16 | point and apparently cut those leaves off by -- by |
| 11:50:00 | 17 | putting the knife on the shadow? |
| 11:50:03 | 18 | A.   I remember I did, Mr. Tratos.  Yes. |
| 11:50:06 | 19 | Q.   And did that cause the appearance of those |
| 11:50:11 | 20 | leaves to fall? |
| 11:50:14 | 21 | A.   On the real rose, of course, the -- the -- |
| 11:50:18 | 22 | the leaves were falling on the real rose.  And that's |
| 11:50:21 | 23 | what you could see in the shadow as well.  Yes. |
| 11:50:24 | 24 | Q.   Okay.  And did you, in fact, then put your |
| 11:50:28 | 25 | knife on the shadow of the rose where the petals |

| | | |
|---|---|---|
| 11:50:35 | 1 | occurred attached to the stem? |
| 11:50:37 | 2 | A.   Yes, Mr. Tratos. |
| 11:50:40 | 3 | Q.   Did you then apparently make a cut on the |
| 11:50:43 | 4 | shadow which caused some of the petals to fall? |
| 11:50:48 | 5 | A.   I think so.  Yes, Mr. Tratos. |
| 11:50:50 | 6 | Q.   And did you -- did you repeat that action |
| 11:50:53 | 7 | again to cause more petals to fall? |
| 11:50:57 | 8 | A.   Yes, Mr. Tratos. |
| 11:50:59 | 9 | Q.   And did that leave one petal that you then |
| 11:51:03 | 10 | eventually cut off the rose by cutting its shadow? |
| 11:51:09 | 11 | A.   I don't understand your question. |
| 11:51:11 | 12 | Q.   Sure.  When you finally were left with the -- |
| 11:51:18 | 13 | A.   The last part? |
| 11:51:19 | 14 | Q.   -- the rose stem and just one petal, did you |
| 11:51:25 | 15 | then cut that petal off by cutting its shadow? |
| 11:51:31 | 16 | A.   Yes, Mr. Tratos. |
| 11:51:32 | 17 | Q.   All right. |
| 11:51:35 | 18 | A.   Can I add something to my answer? |
| 11:51:40 | 19 | Q.   Certainly. |
| 11:51:40 | 20 | A.   Can you clarify the word "cutting"? |
| 11:51:43 | 21 | Because I -- I think there are several ways |
| 11:51:46 | 22 | of cutting.  You can -- like Mr. Teller does in the |
| 11:51:50 | 23 | Shadows is more stabbing.  That's how I would call it. |
| 11:51:55 | 24 | And I think I -- I don't -- so I need assistance from |
| 11:52:00 | 25 | the interpreter. |

| | | |
|---|---|---|
| 11:52:00 | 1 | (Comment in Dutch by the witness.) |
| 11:52:04 | 2 | THE INTERPRETER:  "A cutting or sawing |
| 11:52:09 | 3 | movement rather than a stabbing motion." |
| 11:52:13 | 4 | Q.   BY MR. TRATOS:  So you're using a knife, |
| 11:52:16 | 5 | but you're saying you're using the knife not as -- |
| 11:52:20 | 6 | A.   As a stabber. |
| 11:52:21 | 7 | Q.   -- as a stabber?  But you're using it as |
| 11:52:24 | 8 | a saw? |
| 11:52:25 | 9 | A.   Yes. |
| 11:52:27 | 10 | Q.   Either way, you're putting the knife on the |
| 11:52:32 | 11 | paper where the shadow is located; correct? |
| 11:52:36 | 12 | A.   Correct, Mr. Tratos. |
| 11:52:37 | 13 | Q.   And you -- are you actually cutting into the |
| 11:52:40 | 14 | paper? |
| 11:52:43 | 15 | A.   No, Mr. Tratos. |
| 11:52:46 | 16 | Q.   It's simply the illusion of cutting into the |
| 11:52:49 | 17 | paper; correct? |
| 11:52:50 | 18 | A.   I don't remember if there was paper on the |
| 11:52:54 | 19 | easel.  Maybe it was just a whiteboard without paper. |
| 11:52:58 | 20 | I don't remember that, Mr. Tratos. |
| 11:53:00 | 21 | Q.   We'll show you a copy of the printout in |
| 11:53:03 | 22 | a moment and show it to you.  And maybe that will |
| 11:53:07 | 23 | refresh your -- your recollection.  But right now |
| 11:53:10 | 24 | I'm just calling on your recollection. |
| 11:53:15 | 25 | So then, when you completed those particular |

| | | |
|---|---|---|
| 11:53:20 | 1 | steps, can you tell me if you then had a stem that was |
| 11:53:33 | 2 | naked, had nothing, either leaves or petals, did you |
| 11:53:37 | 3 | set your knife down? |
| 11:53:42 | 4 | A.   Yes.  I changed the -- the knife for a glass, |
| 11:53:49 | 5 | I think.  No.  No.  Let me rephrase. |
| 11:53:53 | 6 | I put the knife down.  I removed the stem |
| 11:53:59 | 7 | out of the transparent bottle to show that the stem |
| 11:54:03 | 8 | is separate and loose from the whole item.  And then |
| 11:54:08 | 9 | I lift up the bottle from the table.  And then I poured |
| 11:54:15 | 10 | out the water in the bottle in a glass.  So I didn't |
| 11:54:19 | 11 | have the knife in my hand when I was pouring the water |
| 11:54:23 | 12 | out of the bottle in the glass, Mr. Tratos. |
| 11:54:27 | 13 | Q.   Okay.  Now let's call your attention to the |
| 11:54:32 | 14 | period of time that you rehearsed the trick. |
| 11:54:34 | 15 | When you rehearsed the trick, in order to |
| 11:54:39 | 16 | prepare to videotape it, was there anyone physically |
| 11:54:45 | 17 | there while you were rehearsing the -- the illusion? |
| 11:54:48 | 18 | A.   No, Mr. Tratos. |
| 11:54:52 | 19 | Q.   Did you do that completely by yourself at |
| 11:54:56 | 20 | all times? |
| 11:54:57 | 21 | A.   Yes, Mr. Tratos. |
| 11:54:58 | 22 | Q.   Can you tell me where the theater was that |
| 11:55:02 | 23 | you were using to rehearse the trick? |
| 11:55:05 | 24 | A.   It's in Spain, Mr. Tratos. |
| 11:55:08 | 25 | Q.   Where was it? |

```
12:09:44   1          Did you write that sentence?
12:09:45   2      A.   Mr. Tratos, I will spare you some time.
12:09:48   3   I wrote all this text.  Yes.
12:09:52   4      Q.   So everything on this page you -- you are
12:09:54   5   the author of; correct?
12:09:56   6      A.   In the black text, yes.
12:10:03   7      Q.   Did you write the phrase:
12:10:05   8          "This is the most magical, romantic, and
12:10:09   9   beautiful illusion I know."
12:10:11  10      A.   This is a part of the text.  Yes, Mr. Tratos,
12:10:13  11   I did.
12:10:14  12      Q.   Did you write:
12:10:15  13          "I've seen the great Penn & Teller perform
12:10:18  14   a similar trick.  And now I'm very happy to share my
12:10:24  15   version in a different and more impossible way with
12:10:27  16   you."
12:10:28  17      A.   Yes, sir.  This is a part of the text.
12:10:31  18      Q.   All right.  In fact, sir, when you posted
12:10:35  19   this video, were you, in fact, not saying that this
12:10:40  20   was Teller's trick but you were just doing it somewhat
12:10:46  21   differently?
12:10:48  22      A.   I think you are asking me a leading question
12:10:51  23   now, Mr. Tratos.
12:10:52  24      Q.   That's exactly what I'm entitled to do because
12:10:56  25   I'm opposing counsel.  I can ask you leading questions.
```

| | | |
|---|---|---|
| 13:53:39 | 1 | Teller perform in? |
| 13:53:41 | 2 | A.   No, Mr. Tratos. |
| 13:53:44 | 3 | Q.   You have seen David Copperfield perform. |
| 13:53:47 | 4 | Do you recall the theater that Mr. Copperfield |
| 13:53:51 | 5 | was in? |
| 13:53:52 | 6 | A.   More or less, I -- I remember that it was |
| 13:53:54 | 7 | a very big place.  I don't think we have such kind |
| 13:53:58 | 8 | of theaters in Belgium.  And I don't know how many, |
| 13:54:01 | 9 | but thousands -- probably thousands of people were |
| 13:54:04 | 10 | in the theater. |
| 13:54:05 | 11 | Q.   So it was a very big theater, perhaps a |
| 13:54:09 | 12 | 2,000-seat theater? |
| 13:54:11 | 13 | A.   I don't know, Mr. Tratos.  I know for me it |
| 13:54:13 | 14 | was looking a very huge, very big theater. |
| 13:54:17 | 15 | Q.   Okay.  Calling your attention to the video |
| 13:54:21 | 16 | that you posted on YouTube, if you were offering to |
| 13:54:26 | 17 | sell this illusion, was it restricted to being purchased |
| 13:54:32 | 18 | by amateur magicians? |
| 13:54:35 | 19 | A.   I never offered my creation or my invention |
| 13:54:41 | 20 | for sale, Mr. Tratos. |
| 13:54:44 | 21 | Q.   Well, in fact, wasn't the YouTube posting -- |
| 13:54:48 | 22 | posting offering to sell it? |
| 13:54:51 | 23 | A.   It was, Mr. Tratos. |
| 13:54:53 | 24 | Q.   It was; correct? |
| 13:54:54 | 25 | A.   Yes, Mr. Tratos. |

13:54:56   1          Q.   And, in fact, you did have people call and

13:55:00   2   respond to that posting wanting to buy it; correct?

13:55:04   3          A.   Yes, Mr. Tratos.

13:55:07   4          Q.   Okay.   And was there any restriction as to

13:55:11   5   the type of person that was going to buy this illusion?

13:55:19   6          A.   That he would pay for it, Mr. Tratos.   That

13:55:21   7   was the only restriction.

13:55:23   8          Q.   So a magician who was a professional magician,

13:55:27   9   who performed in a 2,000- or 3,000-seat theater, could

13:55:33   10  have bought this illusion; correct?

13:55:35   11         A.   Yes.   Correct, Mr. Tratos.

13:55:37   12         Q.   And you were offering it to them just like

13:55:40   13  you were offering it to an amateur; correct?

13:55:43   14         A.   Yes, Mr. Tratos.   Correct.

13:55:45   15         Q.   And if you were on the very back row of a

13:55:48   16  3,000-foot theater and you were 150 feet from the stage,

13:55:53   17  do you think someone could distinguish between the vase

13:55:58   18  being clear or opaque?

13:56:01   19         A.   For sure, Mr. Tratos.   I've seen Mr. David --

13:56:03   20  I've seen Mr. David Copperfield performing magic tricks

13:56:08   21  with small gambling cards, Mr. Tratos, even smaller

13:56:13   22  than the Coca-Cola bottle and the apparatus, the vase.

13:56:16   23  And it was -- it was clearly -- it was seen in the end

13:56:20   24  of the theater by thousands of people, Mr. Tratos.

13:56:23   25         Q.   Isn't it true that Mr. Copperfield uses video

| | | |
|---|---|---|
| 15:02:08 | 1 | identifies the rose and shadow illusion that Teller |
| 15:02:12 | 2 | has been performing for all these years -- do you |
| 15:02:16 | 3 | believe that that -- that the public identifies that |
| 15:02:20 | 4 | illusion with Teller? |
| 15:02:23 | 5 | A.   I don't know what the public or the audience |
| 15:02:27 | 6 | identify things they see with a -- with a person.  I |
| 15:02:30 | 7 | don't know that, sir, what the public's opinion is. |
| 15:02:33 | 8 | Q.   Do you think that all of the articles that |
| 15:02:35 | 9 | we have submitted that have been written about Teller |
| 15:02:41 | 10 | and the Shadow illusion will be something that the |
| 15:02:46 | 11 | public would have seen and, therefore, reacted to? |
| 15:02:54 | 12 | A.   Difficult question for me, sir.  I don't |
| 15:02:56 | 13 | know all these articles, and I -- I don't want to |
| 15:02:59 | 14 | know all these articles.  And probably they were |
| 15:03:01 | 15 | published in I don't know how many magazines and how -- |
| 15:03:04 | 16 | how many times.  So I can presume many people have |
| 15:03:10 | 17 | written these articles.  Yes. |
| 15:03:10 | 18 | Q.   Do you know how many people have seen Teller |
| 15:03:14 | 19 | perform this illusion over the last 35 years? |
| 15:03:17 | 20 | A.   I don't have a clue, sir. |
| 15:03:24 | 21 | Q.   Did Teller tell you that he has performed |
| 15:03:28 | 22 | this illusion at every show that he's performed since |
| 15:03:31 | 23 | he created it? |
| 15:03:33 | 24 | A.   I think so.  Yes. |
| 15:03:36 | 25 | Q.   Did Teller tell you that it's always in the |

15:03:40   1   position in his show where it is the next-to-the-last

15:03:44   2   illusion that the audience sees?

15:03:47   3        A.   I don't remember that, sir.

15:03:49   4        Q.   Okay.  Did Teller tell you that this illusion

15:03:54   5   was like a child to him and he would feel terrible if

15:03:59   6   it was taken away from him and everyone was performing

15:04:04   7   the illusion?

15:04:05   8        A.   Yes.  He told me this on one of these phone

15:04:08   9   conversations.  Yes, sir.  He called it a "kidnapping."

15:04:13   10        Q.   And did you feel sympathy for him when you

15:04:18   11   heard that he felt like this was a kidnapping?

15:04:21   12        A.   Of course, sir.

15:04:21   13        Q.   Okay.  Is there a reason why you refused to

15:04:24   14   stop, then?

15:04:26   15        A.   Because it wasn't -- he felt it like a

15:04:29   16   kidnapping, sir.  But it wasn't a kidnapping.  If you

15:04:33   17   like to make analogies in these kind of terms, I would

15:04:34   18   say it was a cloning.

15:04:38   19        Q.   It was a cloning?

15:04:39   20        A.   Yeah, if you want.

15:04:41   21        Q.   Okay.  Why -- why do you say it's a cloning?

15:04:43   22   Why do you use that term?

15:04:47   23        A.   I don't know if -- if this is a right analogy

15:04:50   24   to -- to -- to use now.  But that's what I could see on

15:04:53   25   the news, that the -- the scientists are able to clone

15:04:58   1   goats and -- and animals and use some materials which

15:05:04   2   is in one animal, and they produce another animal with

15:05:07   3   this and things like that.  So -- but it was absolutely

15:05:09   4   not a kidnapping.

15:05:12   5        Q.   Okay.  Let me finally call your attention

15:05:17   6   in this line of questions to any other persons that

15:05:20   7   you have maybe had conversations with about whether

15:05:26   8   they thought there was -- this was an infringement.

15:05:30   9        You've talked about your friend who is the

15:05:36  10   magician who first taught you things.  You talked about

15:05:40  11   Raphael.

15:05:41  12        Anyone else that you had a conversation

15:05:42  13   with to talk about whether they thought this was an

15:05:47  14   infringement?

15:05:49  15        A.   No, sir.  I don't remember speaking with any

15:05:52  16   other magicians about if there was infringement, "yes"

15:05:56  17   or "no."

15:05:58  18        Q.   Okay.  Is there a reason why you have -- let's

15:06:08  19   strike that and let me try -- try a different question.

15:06:12  20        If I were to tell you that you could produce

15:06:14  21   the manual that you have started and worked on and you

15:06:24  22   could redact, that is, blank out or cover those portions

15:06:29  23   of the manual that you thought were the protected trade

15:06:34  24   secret, the mechanism, but produce everything else,

15:06:39  25   would you be willing to produce the manual in question

```
 1                    CERTIFICATE OF REPORTER

 2

 3            I, BRENDA MATZOV, CA CSR No. 9243, do hereby

 4    certify:

 5            That, prior to being examined, the witness

 6    named in the foregoing deposition was duly sworn by me

 7    to testify the truth, the whole truth, and nothing but

 8    the truth;

 9            That the foregoing deposition was taken before

10    me at the time and place herein set forth, at which time

11    the aforesaid proceedings were stenographically recorded

12    by me and thereafter transcribed by me;

13            That the foregoing transcript, as typed, is a

14    true record of the said proceedings;

15            And I further certify that I am not interested

16    in the action.

17

18            Dated this 17th day of June, 2013.

19

20    _____

21    BRENDA MATZOV, CA CSR No. 9243

22

23

24

25
```

CERTIFICATE OF WITNESS/DEPONENT

I, GERARD DOGGE, witness herein, do hereby certify and declare the within and foregoing transcription to be my examination under oath in said action taken on June 11, 2013, with the exception of the changes listed on the errata sheet, if any;

That I have read, corrected, and do hereby affix my signature under penalty of perjury to said examination under oath.

_____  _____
GERARD DOGGE, Witness                    Date

# EXHIBIT 4

1

Gerard Dogge
Hoevensebaan 2 – 2950 Kapellen
Belgium – Europe
Gerard-Bakardy@hotmail.com
Cell: 011.34.606.35.65.04.

8th, of February 2013

2

3

4

**No Counsel  - PRO - SE**

5

6

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

8

Teller, an individual

          Plaintiff.

v.

Gerard Dogge (Gerard Bakardy),
an individual

          Defendant.

**CASE N° 2:12-cv-00591-JCM-GWF**

9

10

**Answer to plaintiff's**
first set of requests for admissions
&
**Defendant first set of requests**
for admissions to plaintiff Teller.

11

12

13

14

15

Honourable Judge George Foley Jr.,

16

Forgive me for approaching the Court in this way, for defending myself in a

17

poor English vocabulary. As mentioned before, I'm not a lawyer, and especially

18

not an American lawyer.

19

I'm also not an American citizen, I'm European, with a Dutch nationality, born

20

and residing in Belgium and therefore obliged to 'know' the Belgian law. Logical.

21

In the same way as, I believe, the American citizens are expected to know the

22

USA Federal Law.

23

So, forgive me, I don't know the American law.  Although plaintiff was so kind

24

to send me a 150 pages with the *Federal Rules of civil procedure* and another 150

25

pages with the *Local Rules of practice*, it is not realistic to expect that these

26

documents make me a American citizen or lawyer. To translate and understand

27

these 300 pages, written in English, into my language (Flemish-Dutch) would take

28

a long time. To practice the USA law would take another number of years.

1

Although plaintiff and defendant agreed, in the phone conference (11.27.2012) discussing the 'discovery plan', that the 'pre' interrogation would take place 'in person' and hereafter in the Nevada court chambers, I will try my best to answer some of plaintiff's requests.

**REQUEST NO. 1:**

**Yes, I** *Admit that each and every Document produced by me in response to Plaintiff's Requests for Production of Documents is authentic and that it is the original Document or a true and accurate copy of the original Document.*

**REQUEST NO. 2:**

**Yes, I** *Admit that I was aware of* several magicians performing *Shadows before The Rose and Her Shadow was created.*

**REQUEST NO. 3:**

**I** *Admit that I've seen Teller perform Shadows, on the internet ( YouTube) prior to creating The Rose and Her Shadow.*

**REQUEST NO. 4:**

**No, I do not** *Admit that I've seen Teller perform Shadows live in Las Vegas prior to creating The Rose and Her Shadow.*

**REQUEST NO. 5:**

**No, I do not** *Admit that I have seen Teller perform live in Las Vegas.*

**REQUEST NO. 6:**

**No, I do not** *Admit that I got a photograph taken with Teller.*

**REQUEST NO. 7:**

**No, I do not** *Admit that The Rose and Her Shadow is based upon Shadows.*

**REQUEST NO. 8:**

**No, I do not** *Admit that The Rose and Her Shadow is inspired by Shadows.*

**REQUEST NO. 9:**

**No, I do not** *Admit that in creating The Rose and Her Shadow, I intended to improve upon Shadows.*

**REQUEST NO. 10:**

**No, I do not** *Admit that in creating The Rose in Her Shadow, I copied Shadows.*

**REQUEST NO. 11:**

**I** *Admit that I created  independently  The Rose and Her Shadow while aware of the existence of Shadows by Teller, shadows by Petros and by many more magicians.*

**REQUEST NO. 12:**

**I can only *presume*** *that Shadows is* **probably** *well-known in the* **USA** *magic community.*

**REQUEST NO. 13:**

**I can only *presume*** *that Shadows is* **probably** *well-known in the* **USA** *magic community as Teller's illusion.*

**REQUEST NO. 14:**

**No, I do not** *Admit that I created marketing materials that advertised The Rose by referring to Shadows, Las Vegas, and/or Penn & Teller.*

**REQUEST NO. 15:**

**No, I still do not** *Admit that I created marketing materials that advertised The Rose and Her Shadow by referring to Shadows, Las Vegas, and/or Penn & Teller.*

**REQUEST NO. 16:**

**Yes, I Admit** *that I posted The Rose and Her Shadow on YouTube.*

**REQUEST NO. 17:**

**No, I do not** *Admit that I did not investigate Shadows to see if it was a copyrighted work before posting the video of The Rose and Her Shadow.*

**REQ UEST NO. 18:**

**No, I do not** *Admit that I did not conduct a search of the U.S. Copyright Office records to determine whether or not Shadows was a copyrighted work.*

**REQUEST NO. 19:**

**No, I do not** *Admit that I did not conduct a search of any nation's copyright records to determine whether or not Shadows was a copyrighted work.*

**REQUEST NO. 20:**

**No, I do not** *Admit that I knew Shadows was copyrighted before posting the video of The Rose and Her Shadow.*

**REQUEST NO. 21:**

**No, I do not** *Admit that my video of The Rose and Her Shadow on YouTube included an offer to sell The Rose.*

**REQUEST NO. 22:**

**No, I do not** *Admit that I hoped to trade on the goodwill of Teller and/or Shadows to increase sales of The Rose.*

**REQUEST NO. 23:**

**No, I do not** *Admit that I hoped to trade on the goodwill of Teller and/or Shadows to increase publicity for The Rose and Her Shadow.*

**REQUEST NO. 24:**

**No, I do not** *Admit that I hoped to trade on the goodwill of Teller and/or Shadows to improve my reputation as a magician.*

4

**REQUEST NO. 25:**

**I do not need to** *Admit that I was aware that YouTube postings can be viewed from many countries throughout the world, including the United States, so long as the user has a sufficient internet connection.* (It's a fact that the internet in general only can be viewed worldwide so long there is a internet connection !)

**REQUEST NO. 26:**

**Yes, I** *Admit that in posting The Rose and Her Shadow on YouTube, I intended to reach a worldwide audience.*

**REQUEST NO. 27:**

**Yes, I** *Admit that I intended to sell The Rose to customers in various countries, including the United States.* (the USA is a part of the world)

**REQUEST NO. 28:**

**Yes, I** *Admit that I posted The Bakardy Rose on YouTube in several languages.* It's irrelevant and has nothing to do with the defendants alleged infringement.


Defendant is looking forward to the oral pleadings to further justify his answers to plaintiff's requests.


**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

# Defendant first set of requests
## for admissions to plaintiff Teller.

Plaintiff shall serve his written reply to these requests for admissions within thirty (30) days of the date of service hereof, by email as usual or/and on the address of Defendant Gerard Dogge, Hoevensebaan 2, 2950 Kapellen, Belgium, Europe.

Following the same instructions and definitions as mentioned in plaintiff's request for admissions.

**REQUEST n° 1:** Admit that the first contact between you and defendant was on your initiative and that you approached defendant, by emailing - calling him on March the 21st 2012.

**REQUEST n° 2:** Admit that, in that same phone conversation, you gave many compliments to the defendant for his presentation of the 'Rose and her shadow', especially because (t)his presentation shows  a 'mobile' and 'complete visible' rose stem and a transparent removable vase or bottle.

**REQUEQT n° 3:** Admit that, in that same phone conversation, you told the defendant that you were searching already for a long time to find a way to do your 'shadows' presentation with a transparent and removable vase with the rose stem completely visible and removable, but never found the right method to achieve this.

**REQUEST n° 4:** Admit that, in that same phone conversation, you told the defendant that you would make an offer to assume exclusively, full ethical and legal possession of the defendant's method.

**REQUEST n° 5:** Admit that, in that same phone conversation, you asked the defendant to cancel the planned advertisement to sell his invention.

**REQUEST n° 6:** Admit that you received a draft of the advertisement, cancelled by the defendant.

**REQUEST n° 7:** Admit that, in that same phone conversation, you told the defendant that you did not want any other magicians in the world to do defendants trick.

**REQUEST n° 8:** Admit that you called the defendant several times to negotiate and discuss the terms of this matter.

**REQUEST n° 9:** Admit that in one of the negotiation calls you offered defendant $40.000 as this would have cost you as much as starting a litigation against defendant.

**REQUEST n° 10:** Admit that this offer was turned down by the defendant.

**REQUEST n° 11:** Admit that in one of the negotiation calls the defendant proposed an alternative: mentioning to forget about exclusive deals and to present his method or prop in a different way, such as a presentation without the use of a rose, shadow or knife.

**REQUEST n° 12:** Admit that you, in reply to defendants alternative proposal, saw this as a positive outcome and that you told the defendant your attorney would write a text to accompany the manual to inform future buyers that the Teller version 'shadows' was copyrighted and prohibited to perform.

**REQUEST n° 13:** Admit that, in your last phone call,  you told the defendant that you needed a few days to consider the defendants alternative proposal, or to end the negotiation, paying $125.000 to assume exclusive possession of defendants method, prop and legal rights.

**REQUEST n° 14:**  Admit that the defendant never approached you, trying to sell his method, prop or legal rights, exclusively to you.

**REQUEST N°  15:** Admit that defendant asked you to inform him about the copyright details of your act 'Shadows'.

7

**REQUEST N° 16:** Admit that defendant asked you several times, to inform him about the copyright details on your act 'Shadows'.

**REQUEST N° 17:** Admit that you did/do not mention in any of your 'Shadows' video's (on YouTube) that there is a copyright on your act.

**REQUEST N° 18:** Admit that, the first and only time, you informed the defendant concerning the copyright details, was by emailing the copyright details  as an exhibit in your complaint or litigation filed on April 11th 2012.

**REQUEST N° 19:** Admit that since that moment (04.11.2012) the copyright details were published for the first time on the internet.

**REQUEST N° 20:** Admit that in the original complaint, filed by you, in the Nevada Court on April 11th 2012, exhibit 3 contains two (2) screenshots showing the defendants picture and name, Gerard Bakardy, right under the users toolbar with favourite web links.

**REQUEST N° 21:** Admit that in exhibit 3, filed on 04.11.2012., among  the users favourite web links, several web links refer to porn for gay's.

**REQUEST N° 22:** Admit that on some of these porn sites the 'boy's' look like very young teenagers.

**REQUEST N° 23:** Admit that you're aware that this toolbar with favourite  web links is in the same picture as the defendant's picture and name.

**REQUEST N° 24:** Admit that the screenshots at issue, used in your exhibit 3, do not mention the name of the user, nor the name of the person who took the screenshots.

**REQUEST N° 25:** Admit that  the screenshots at issue, used in your exhibit 3, do mention one name, and one name only:  Gerard Bakardy

**REQUEST N° 26:** Admit that all of the other screenshots filed in your complaint clearly show the name of the person who took the screenshots, Greenberg-Traurig.

8

**REQUEST N° 27:** Admit that you were aware that the complete complaint, including the exhibits, was going to be published on the internet.

**REQUEST N° 28:** Admit that you received several emails from defendant asking you about your intentions and the meaning of publishing all this.

**REQUEST N° 29:** Admit that you answered the defendant in an email on the April 24th 2012 : "*There is no actionable bases for objecting to documents filed with the USA court."*

**REQUEST N° 30:** Admit that on the same date, April 24th 2012, you re-filed the altered exhibits after you had changed or 'photoshoped' them , by hiding the favourite porn web links on the toolbar.

**REQUEST N° 31:** Admit that you did not file any motion nor request to the Court of Nevada to re-file 'new' altered exhibits.

**REQUEST N° 32:** Admit that you did not inform the defendant that you've re-filed 'new' altered exhibits.

**REQUEST N° 33:** Admit that you could have requested the Court of Nevada, to seal or redact  the original exhibits filed on 04.11.2012.

**REQUEST N° 34:**  Admit that the altered screenshots in exhibit 3,    do not show the correct representation of reality, meaning the real screen of your  PC.

**REQUEST N° 35:**  Admit that the original exhibits were published on the internet.

**REQUEST N° 36:**  Admit that the porn web links on the screenshots at issue, used in your exhibit 3, are not relevant nor needed to prove an alleged infringement of copyright.

**REQUEST N° 37:**  Admit that these and all exhibits were filed not by the defendant, but by you, on your behalf and on your responsibility.

**REQUEST N° 38:**  Admit that you're aware that there are more magicians performing the act 'Shadows'.

9

**REQUEST N° 39:**  Admit that Gerard Bakardy is the only person you've seen on YouTube controlling a flower/rose in a with water filled, removable transparent bottle/vase, with the stem of the flower completely visible.

**REQUEST N° 40:** Admit that Gerard Bakardy never revealed his method to you.

**REQUEST N° 41:** Admit that you don't know anyone who Gerard Bakardy revealed his method to.

**REQUEST N° 42:** Admit that you did not see any 'live' show of Gerard Bakardy performing his method, The Rose and her Shadow.

**REQUEST N° 43:**  Admit that you don't know anyone who has seen a 'live' show of Gerard Bakardy, performing his method, The Rose and her Shadow.

**REQUEST N° 44:** Admit that you never performed 'shadows' in a with water filled and removable transparent vase, with a removable and completely visible rose stem.

**REQUEST N° 45:** Admit that you're not able to show what's in your white vase, in your performance 'shadows' without revealing your method.

**REQUEST N° 46:** Admit that you're not able to remove the stem out of your white vase,  in your performance 'shadows'.

**REQUEST N° 47:** Admit that you're not able to remove your white vase from the table, in your performance 'shadows'.

**REQUEST N° 48:** Admit that you're not able to perform 'shadows' in a transparent vase.

**REQUEST N° 49:** Admit that you've stated in the press that you find the defendants trick is 'slightly' different from yours, 'shadows'.

**REQUEST N° 50:** Admit that your performance 'shadows' was created for you in 1976, almost 40 years ago.

**REQUEST N° 51:** Admit that your, almost 40 year old trick 'shadows' is different from Bakardy's trick, The Rose and The Rose and her Shadow.

**REQUEST N° 52:** Admit that you're aware that defendant has uploaded a new video on You Tube called 'The Bakardy Rose'.

**REQUEST N° 53:** Admit that this video clearly shows a copyright symbol.

**REQUEST N° 54:** Admit that you're aware that defendant has a copyright on his trick or method.

**REQUEST N° 55:** Admit that you're aware that any performance using a removable vase/bottle filled with a liquid such as water, and a completely visible and mobile rose/flower stem  etc.. as shown in 'The Bakardy Rose'  is an infringement on the copyright owned by Gerard Bakardy.

**REQUEST N° 56:** Admit that you don't know any other magician/person in the world, except from Gerard Bakardy who can perform 'The Rose and her Shadow' in the way he does it.

**REQUEST N° 57:** Admit that your performance of 'shadows', is limited  to how your present act is, due to the nature of the method or prop used in your performance.

**REQUEST N° 58:** Admit that, due to the nature of the method or prop, developed  by Gerard Bakardy,  the performance of  'The Rose and her Shadow',  has surpassed your almost 40 year old act 'shadows'.

**REQUEST N° 59:** Admit that the publicity around your copyright procedure is a publicity boost for Penn & Teller in general.

**REQUEST N° 60:** Admit that the publicity around your copyright procedure creates more ticket sales for the Penn & Teller shows.

11

I am looking forward to the oral pleadings to discuss or further justify the defendants requests and answers.  I am now awaiting the plaintiff's answers.

Dated : February 8th,  2013.

With the deepest respect for the Court,

Gerard Dogge

Hoevensebaan 2, B2950 Kapellen
Belgium - Europe

# EXHIBIT 5



TELLER000071

# EXHIBIT 6

28th, of March 2013

Gerard Dogge
Hoevensebaan 2 – 2950 Kapellen
Belgium – Europe
Gerard-Bakardy@hotmail.com
Cell: 011.34.606.35.65.04.

**No Counsel  - PRO - SE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

**CASE N° 2:12-cv-00591-JCM-GWF**

Teller, an individual

       Plaintiff.

v.

Gerard Dogge (Gerard Bakardy),
an individual

       Defendant.

**Answer to plaintiff's**
second set of requests for admissions
&
**Defendant second set of
requests** for admissions to plaintiff

Honourable Judge George Foley Jr.,

Forgive me for approaching the Court in this way, for defending myself in a poor English vocabulary. As mentioned before, I'm not a lawyer, and especially not an American lawyer.

I'm also not an American citizen, I'm European, with a Dutch nationality, born and residing in Belgium and therefore obliged to 'know' the Belgian law. Logical. In the same way as, I believe, the American citizens are expected to know the USA Federal Law.

So, forgive me, I don't know the American law.  Although plaintiff was so kind to send me a 150 pages with the *Federal Rules of civil procedure* and another 150 pages with the *Local Rules of practice*, it is not realistic to expect that these documents make me a American citizen or lawyer. To translate and understand these 300 pages, written in English, into my language (Flemish-Dutch) would take a long time. To practice the USA law would take another number of years.

1

Although plaintiff and defendant agreed, in the phone conference (11.27.2012) discussing the 'discovery plan' , that the 'pre' interrogation would take place 'in person' and hereafter in the Nevada court chambers,  I will try my best to answer some of plaintiff's requests.

**REQUEST N°1:** Admit that Exhibit 3 that was filed with the United states district Court copyright infringement complaint was replaced with a revised Exhibit 3 by April 26,2012.

**Response:** Objection, This request is vague and ambiguous with respect to the phrase 'revised' and 'replaced' , accordingly the defendant denies this request for admission.

**Request N°2:** Admit that the revised Exhibit 3 filed on April 26,2012 did not have a bookmark bar.

**Response:** Objection, This request is vague and ambiguous with respect to the phrase 'revised' and 'did not have a bookmark bar', accordingly the defendant denies this request for admission.

**Request N°3:** Admit that the revised Exhibit3 does not show your name on the same page as the bookmarks that you deem objectionable.

**Response:** Objection, This request is vague and ambiguous, with respect to the phrase 'revised' accordingly the defendant denies this request for admission.

**Request N°4:** Admit that in order to ascertain what sites the bookmarks on the bookmark bar referred to, a user could not simply click on the .pdf and be directed to those sites.

**Response:** Objection. This request is vague and ambiguous with respect to the phrase 'bar referred to'. This request is not relevant to the pending copyright action, nor is it reasonably calculated to lead  to the discovery of admissible evidence in the same.

Instead, this request seeks information you presumably believe  is  related  to your defence  in  the  Belgium defamation litigation filed against you for associating the defendant with young actors in hard porn for homo's, to make believe that defendant could be a paedophile and a pervert, and is accordingly outside the scope of the Federal Rules. Defendant denies this request.

**Request 5:**  Admit that in order to ascertain what sites the shortcuts on the bookmark bar referred to, a user would have to use Google or another search engine.

**Response:** Objection. This request is vague and ambiguous with respect to the phrase 'bar referred to'. This request is not relevant to the pending copyright action, nor is it reasonably calculated to lead  to the discovery of admissible evidence in the same. Instead, this request seeks information you presumably believe is related to your defence in the Belgium defamation litigation filed against you for associating the defendant with young actors in hard porn for homo's, to make believe that defendant could be a paedophile and a pervert, and is accordingly outside the scope of the Federal Rules. Defendant denies this request.

**Request N°6:** Admit that there are no 'live' links in the original Exhibit 3.

**Response:** Objection. This request is vague and ambiguous. Since pornography is a big business in the United States, with total sales estimated to be $13.3 to 14 billion per year, links such as 'mantube' , 'Corbin', 'CFSelect' , '2long'  as showed and published on your legal evidence do not need to be 'live' clicked on to know what they are about. Fact is that the pervert web links are direct 'live' links on Mr. Tellers computer. Further, this request is not relevant to the pending copyright action, nor is it reasonably calculated to lead  to the discovery of admissible evidence in the same.

3

Instead, this request seeks information you presumably believe is related to your defence in the Belgium defamation litigation filed against you for associating the defendant with young actors in hard porn for homo's, to make believe that defendant could be a paedophile and a pervert, and is accordingly outside the scope of the Federal Rules. Defendant denies this request.

**Request N°7:** Admit that you have referred to yourself as or used the pseudonym Gerard Bakardy.

**Response:** Defendant admits.

**Request N°8:** Admit that you have used the following screenname, handle, or pseudonym online 'Gerarreke'.

**Response:** Defendant admits.

**Request N°9:** Admit that you have used the following screen name, handle, or pseudonym online 'Gerard-Bakardy@hotmail.com'.

**Response:** Defendant admits.

**Request N°10:** Admit that you have used the following screen name, handle, or pseudonym online 'fuertebel@hotmail.com'.

**Response:** Objection. This request is vague and ambiguous. The email address as mentioned in request n°10 was used by the defendant in correspondence with the plaintiff but never published 'online'.   This request is not relevant to the pending copyright action, nor is it reasonably calculated to lead  to the discovery of admissible evidence in the same.

**Request N°11 - 18:** Admit that you uses 'several' names online..

**Response to 11,12,13,14,15,16,17,18:** Objection. These requests are not relevant to the pending copyright action, nor reasonably calculated to lead  to the discovery of admissible evidence in the same. Instead, these requests seek information you presumably believe to be related to your defence in the Belgium

defamation litigation filed against you for associating the defendant with young actors in hard porn for homo's, to make believe that defendant could be a paedophile and a pervert, and is accordingly outside the scope of the Federal Rules. Defendant denies this request.

**Request N°19:** Admit that you have visited the United States.

**Response:** Defendant admits.

**Request N°20:** Admit that you have visited Las Vegas, Nevada.

**Response:** Defendant admits.

**Request N°21:** Admit that you have attended shows or performances in Las Vegas, Nevada.

**Response:** Objection. This request is vague and ambiguous with respect to the phrase 'attended' and 'shows and performances'. Notwithstanding the objections, the defendant admits to have been in Las Vegas.

**Request N°22:** Admit that you saw the Penn & Teller show performed in Las Vegas.

**Response:** Denied. Defendant has never seen the Penn and Teller show in Las Vegas.

**Request N°23-25:** Admit that you have performed...

**Response to 23,24,25:** Objection. This request is vague and ambiguous with respect to the phrase 'performed'. This request is not relevant to the pending copyright action, nor is it reasonably calculated to lead to the discovery of admissible evidence in the same.

**Request N°26-28:** Admit that you wrote an email..

**Response to 26,27,28:** Defendant is aware of what he wrote in emails to Teller. Defendant will never deny his own emails. Defendant has never filed a motion to seal nor redact his own words, nor 'revised' his own exhibits. Defendant admits.

5

**Request N°29:** Admit that you and Teller discussed your use of a flower other than a rose as part of one option to avoid copyright infringement.

**Response:** Objection. This request is vague and ambiguous with respect to the phrase 'one option to avoid'. Notwithstanding the objections, the defendant admits that he discussed with Teller several options to satisfy both parties.

That's why defendant asked Teller to send 'his' copyright detail's.  In this way Bakardy would be informed about 'what' was copyrighted. Teller refused.

**Request N°30:** Admit that when you uploaded the video of 'The Rose and her Shadow' to YouTube, you 'tagged' the video with a number of 'tags', to include "Penn".

**Response:** Defendant admits.

**Request N°31:** Admit that when you uploaded the video of 'The Rose and her Shadow' to YouTube, you 'tagged' the video with a number of 'tags', to include "Teller".

**Response:** Defendant admits.

**Request N°32:** Admit that when you uploaded the video of 'The Rose and her Shadow' to YouTube, you 'tagged' the video with a number of 'tags', to include "Tutorial".

**Response:** "Tutorial" was automatically 'suggested' by YouTube. Probably because 'tutorial' is a common tag on videos of 'Penn & Teller'.

**Request N°33:** Admit that when you uploaded the video of 'The Rose and her Shadow' to YouTube, you 'tagged' the video with a number of 'tags', to include "revealed".

**Response:** "Revealed" was automatically 'suggested' by YouTube. Probably because 'revealed' is a common tag on videos of 'Penn & Teller'.

**Request N°34:** Admit that you refer to Penn & Teller in the description of your YouTube videos.

**Response:** Defendant did describe his version as different and more impossible than Penn & Tellers.

**Request N°35:** Admit that in your current YouTube video of 'the Bakardy Rose', you do not use the effect of acting upon the shadow of a rose to impact the rose itself.

**Response:** Defendant admits that also this act is totally different from Tellers.

**Request N°36:** Admit that in your current YouTube video of 'the Bakardy Rose', you do not use a knife or other instrument to sever the leaves and petals from the shadow rose.

**Response:** Defendant admits once more that this act is totally different from Tellers.

**Request N°37:** Admit that you have publically stated "na twee jaar intensief experimenteren slaagde ik erin de truc net hetzelfde uit te voeren, maar tien keer straffer!"

**Response:** This is a statement from the reporter not from the defendant. Defendant denies.

**Request N°38:** Admit that the text referenced in Request 37 roughly translates to: "After two years of experimentation, I managed to perform the trick just the same, but ten times better!"

**Response:** Defendant 'admits' that the translation is roughly right.

**Request N°39:** Admit that in 'The Bakardy Rose' video, your announcer explains that "instead of being focused on his problem, he tried to be creative when he figured out how to perform this trick!"

**Response:** Defendant will never deny what is clearly to be seen on the internet. Defendant admit.

7

**Request N°40:** Admit that in 'The Bakardy Rose' video, your announcer states that " remembering an old existing trick and wondering if he could refresh it, he wanted to improve it, to make it more beautiful and more magical.."

**Response:** Defendant will never deny his own video, clearly to be seen on the internet. Defendant admits.

**Request N°41:** Admit that in 'The Bakardy Rose' video, your announcer states that "even the discomfort of the chemo couldn't stop him from finding a completely new way to perform this illusion"

**Response:** Defendant will never deny his own video, clearly to be seen on the internet. Defendant admits.

**Request N°42:** Admit that a newspaper article for which you gave an interview stated: "fier bood Bakardy het geheim van zijn verbeterde Teller-act te koop aan op het internet, zoals gebruikelijk is bij baanbrekende goochelvondsten."

**Response:** Objection. Although the defendant can read that the reporters opinion states that Bakardy's trick is better than Tellers, the defendant cannot be held responsible for the reporters article.

**Request N°43:** Admit that the text referenced in request 41 roughly translates to: Bakardy offered the secret of his improved Teller act for sale on the internet, as is customary four groundbreaking magic finds."

**Response:** Objection, this request is confusing. The translation refers to a text in request <u>42</u> and is a roughly a right translation from the reporters opinion.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

./..

./..

./..

./..

./..

8

CASE N° 2:12-cv-00591-JCM-GWF

# Defendant second set of requests
## for admissions to plaintiff Teller.

Plaintiff shall serve his written reply to these requests for admissions within thirty (30) days of the date of service hereof, by email as usual or/and on the address of Defendant Gerard Dogge, Hoevensebaan 2, 2950 Kapellen, Belgium, Europe.

Following the same instructions and definitions as mentioned in plaintiff's request for admissions.

**REQUEST n°1:** This request is to help the plaintiff to understand defendants request N°2 in the first set. Plaintiff does not understand the meaning of 'mobile' and 'complete visible'. Since these are the plaintiffs own words, also used in the second paragraph in his email to Bakardy from 03.27.2012, defendant believes that plaintiff is not willing to admit. The rephrased request: Admit that you've wrote to Bakardy in the email from 03.27.2012. that defendant "developed a way to allow the rose stem to be visible and mobile...a reasonable price for that improvement would be about $7.500."

**REQUEST n°2:** Admit that you've wrote to defendant in that same email from 03.27.2012.that you would like to offer $15.000 to the defendant to "assume full ethical and legal possession of your method".

**REQUEST n°3:** Admit that you've wrote to defendant in that same email from 03.27.2012. " I would also expect you would agree to keep this arrangement absolutely confidential. If this were to get out in the magic community , I believe it would make both of us look very, very bad..."

9

**REQUEST N°4:**  Admit that you've filed in Court on date 08.06.2012 a document 8-1, containing a letter from Tratos dated  May 23, 2012 to Bakardy stating: " We (Teller) will pay you his standard prop development fee of no more that $15.000. We will absorb the cost of shipping the device to Teller in the US."

**Request N°5:** Admit that the document described in request n°4  after being filed in Court became a public document on the internet through the Courts website – Pacer.

**Request N°6:**  Admit that on 11.02.2012, about three months later, you've filed a motion to seal your own document described in request n°4.

**Request N°6:** Admit that defendant did not file an opposition and the Courts order from 11.20.2012 granted your motion to seal, meaning that the document described in request n°4, was no longer published on the Courts website from date 11.20.2012. Meaning that the document described in request n°4 was published on the internet from  the 6th of August 2012 until the 20th of November 2012. Meaning 105 days.

**Request  N°7:** Admit that the offer of $15.000 mentioned in the document described in request n°4, refers to the offer of $15.000 made in the email described in request n°2.

**Request N°8:**  Admit that on date of 04.04.2012 you've sent a copy of your 'confidential' email from 03.27.2012 to the publisher of 'The Escamoteur' a Magazine for Magicians, Mr. Gunther Guinee.

**Request N°9:** Admit that the letter from Tratos to Bakardy, described in request n°4, states:"..one of our research team may have recently investigated a possible infringement on an adult website... as a screenshot from a computer that had been used to research other potential infringements on such a site."

10

**Request N°10:** This request is to help the plaintiff to understand defendants request N°37 in the first set. Plaintiff seems not to understand the meaning of 'responsibility' and 'you'. Defendant believes that plaintiff is not willing to admit. The rephrased request:  Admit that all exhibits filed by the plaintiff, included the original exhibit 3 filed on 04.11.2012 were filed on Tellers behalf.

**Request N°11:** Admit that all exhibits filed by the plaintiff, included the original exhibit 3 filed on 04.11.2012 were filed on Tellers request.

**Request N°12:** Admit that all exhibits filed by the plaintiff, included the original exhibit 3 filed on 04.11.2012 were filed with Tellers approval.

**Request N°13:** Admit that all exhibits filed by the plaintiff, included the original exhibit 3 filed on 04.11.2012 were filed on Tellers responsibility.

**Request N°14:**  Admit that defendant has send you on date of 21st of October 2012, his answer to your complaint, including defendants exhibits n°2, 8 & 9.

**Request N°15:** Admit that the exhibits 8 & 9, described in request n°14,  shows 3 other persons performing a rose and shadow magic routine.

**Request N°16:**  Admit that exhibit 9, described in request n°14, shows a screenshot taken on 08.03.2012 from a YouTube video called "shadows" by petros."  Stating that it was uploaded on Aug.25 2009  having  5.011 views on the date the screenshot was taken.

**Request N°17:** Admit that the exhibit 9, described in request n°14, shows a screenshot from a comment posted by 'Hector' on April 16,2012 on 'The Magic Cafe' forum stating:" I contacted Mr. Teller myself...I will let you know the outcome of our discussions." Signed: "Hector".

11

**Request N°18:** Admit that the exhibit 8, described in request n°14, shows a screenshot from a YouTube video uploaded by ALSmagic2008  called "plant and shadows" wherein the comments under the video is state : "...there are a bunch of people who have made different versions,... this was exposed some years back by multiple magicians so this methods are now public information..."

**Request N°19:** Admit that the exhibit 8, described in request n°14, shows a screenshot from a YouTube video uploaded by ALSmagic2008  called "plant and shadows"  and mentions that this video has been viewed 2403 times.

**Request N°20:** Admit that the magicians showed on the exhibit 8/9, described in request n°14, are professional or at least look professional.

**Request N°21:** Admit that Exhibit n°2 as described in request n°14, shows an article published by 'Law and Magic Blog' based on an interview given by Teller, were the reporter states: "the illusion is slightly different from Tellers, but Teller thinks it's not so different  .."

**Request N°22:**  Admit that the technique to 'force a card'  is one of the techniques used by many magicians performing card tricks.

**Request N°23:** Admit that Penn & Teller had a  TV show wherein was revealed 'how to force a card'.   http://www.youtube.com/watch?v=UO8boL0XiUU

**Request N°24:** Admit that the revealing of the technique, 'how to force a card' causes damages to the profession of a magician.

**Request N°25:** Admit that the magic trick 'Cups and Balls' is a famous trick performed all over the world by many magicians.

**Request N°26:**  Admit that the revealing of this trick 'Cups and Balls' causes damages to the profession of a magician.

**Request N°27:** Admit that Penn & Teller is revealing the trick 'Cups and Balls' by showing the secret moves, showing the secret preparation and by performing the trick in clear plastic cups.

**Request N°28:**   Admit that the prop or 'magic attribute' to perform the 'vanishing silk' as performed by Penn & Teller on their tour in China, is used by many magicians and is a small but valuable prop to perform many magic tricks.

**Request N°29:** Admit that Penn & Teller, on their tour in China, did reveal the 'vanishing silk' trick to hundreds of 'non' magicians.

**Request N°30:** Admit that the revealing of this trick 'the vanishing silk' and the revealing how to use the 'prop' causes damages to the profession of a magician.

**Request N°31:** Admit that Gerard Bakardy, the defendant never revealed his methods or tricks including  'The Rose and her Shadow' to you.

**Request N°32:** Admit that you don't know anyone to whom the defendant has revealed his methods or tricks including The Rose and her Shadow' .

**Request N°33:** Admit that the first contact between you, Joseph Raymond Teller, now 'Teller', and Gerard Bakardy was by email sent by you on date 20th March 2012, stating: "Before you start selling this item, may we talk? Where can I reach you, please?"

**Request N°34:** Admit that it was not the defendant who contacted, emailed or called you (Teller),  it was you, Teller, who contacted, emailed and called the defendant to discuss the 'item' as stated in your email.

**Request N°35:**  Admit that in your response to defendants interrogatory n°19, to "Identify <u>all</u> magic tricks created and copyrighted by Teller"  you did not listed  the trick  wherein 'money change to goldfish' in a water filled fish tank as performed by Teller.

**Request N°36:**   Admit that after reading your answer to defendants interrogatory n°19, one could conclude that you, Teller, do not have a copyright on the trick described in request n°35.

**Request N°37:** Admit that in a phone conversation, you've asked Bakardy if  he possibly could customize his 'rose' to your wishes, like to have the first two under 'leaves' not that close by the stem as they are in Bakardy's version, but further away from the stem like they are in Tellers 'shadows' version. And to customize the 'speed' in the action of the movement, to make the falling of the petals or leaves  more smooth or fluently.

**Request N°38:** Admit that in Tellers answer to the defendants interrogatory n°22 and n°23 to identify your own exhibits 3, Teller states: "This interrogatory is not relevant.."

**Request N°39:** Admit that Tellers answer to defendants interrogatory n°22 states: "exhibit 3 is a screenshot..captured on or about March 30,2012" is vague and not clear about the date and time the screenshot was taken.

I am looking forward to the oral pleadings to discuss or further justify the defendants requests and answers.  I am now awaiting the plaintiff's answers.

Dated : March 28th,  2013.

With the deepest respect for the Court,

Gerard Dogge

Hoevensebaan 2, B2950 Kapellen
Belgium - Europe

14

# EXHIBIT 7

# Wereld Primeur-Eerst in Belgie

## The Rose

### & Her Shadow !

### Her Shadow !



Op het podium staat een tafeltje met daarop een met water gevuld flesje met daarin een roos ! Ongeveer 1.5 meter daarachter staat een wit bord of witte muur waarop de schaduw te zien is van deze roos, afkomstig van een bundelspotlicht die enkele meters voor de tafel staat. Dan komt de goochelaar, bekijkt rustig de hele situatie, benadrukt de schaduw door enkele bewegingen te maken, neemt een mes of schaar en begint stuk voor stuk de blaadjes van de bloem te snijden.... Maar niet van de echte bloem !! Hij doet dit in de schaduw bloem !!!  Maar toch vallen de blaadjes van de echte bloem en uiteraard ook in de schaduw is dit te zien.  Om de toeschouwer duidelijk te maken dat er geen 'onzichtbare' draadjes zitten tussen de echte roos en de schaduw roos loopt de goochelaar enkele malen tussen deze twee in alvorens hij een totaal 'kale' rozenstam verkrijgt.

De toeschouwers die denken een verklaring te kennen worden eens te meer ontgoocheld of moet ik zeggen 'begoocheld' als de goochelaar de stam uit het heldere flesje neemt, vervolgens het flesje van de tafel neemt en... leeg giet want er zat nog water in ook !!!

Iedereen zal met verbazing vragen:
## "Hoe is het mogelijk ?"

Made in Belgium !!!
Klein verpakt – Groots effect
Volledig zelfwerkend !
Geen 'sleight of hand' !

### Beter dan in
### Las Vegas



Removable Stem

Removable Crystal 'Vase'

2 vliegen in één klap !!
"The Rose & Her Shadow"
+
"Zwevend Tafeltje Illusie"
Mits een kleine voorbereiding
kan je twee illusies vertonen
met één investering !

Kies zelf je uitvoering :
Dubbele illusie – De Roos met Zwevende Tafel : 2.450€
Enkel de Roos met gewone tafel : 2.299€
Komt in één koffertje met volledige handleiding & DVD

*Een onverslijtbare truc !!*
*Deze heb je voor het leven  en*
*zal de parel zijn in je optreden!*
TELLER000031

## Meer Info ?

## Bestellen:

Tel.: 0034.606.35.65.04.
Email: gerard-bakardy@hotmail.com
Youtube : Gerard Bakardy -The Rose & Her Shadow

## World Premiere – First in Belgium

Boxed text on the right side of the page

On stage is a table with a bottle filled with water and containing a rose! Approximately 1.5 meters behind it is a white board or white wall showing the shadow of this rose, in the beam of a spotlight a few meters in front of the table. Then the magician comes, calmly surveys the whole situation, highlights the shadow with some motions, take a knife or scissors and begins to cut each petal of the flower, piece by piece. But not the real flower! He is doing it with the shadow flower!! Yet the leaves fall from the real flower and of course this is seen in the shadow. To remove any doubts of the audience,  that there might be "invisible" wires between the real rose and shadow rose,  the magician moves  several times between the two before he produces a completely  "bare"' rose stem.

The spectators who think they  know the trick are disappointed, or should I say 'deluded', as the magician takes the stem from the clear bottle, then takes the bottle from the table and ... empties it, because there is still water in too! !

Everyone will ask in amazement: "How is that possible?"

Middle of the page, opposite text box:

Made in Belgium!!
Small package - Big impact
Completely automatic!
No 'sleight of hand'!
Better than in
Las Vegas

In the white star under the text box:

Two birds with one stone!
"The Rose & Her Shadow"
          +
"Floating Table Illusion"
With a little preparation
You can present  two illusions
with one investment!

Bottom of page above the white rectangle, left:

Choose your own presentation:
Double illusion - The Rose with Floating Table: € 2,450

Rose only, with ordinary table: € 2,299
Comes in a case with full manual & DVD


Bottom of page, above the white rectangle, right:

An unbeatable trick!!
You have it for life
And it should be the pearl of your performance!
Teller000031

White box at bottom of page:

Left:

More information?

Middle:

Order:

Right side:

Tel:. 0034.606.35.65.04.
Email: gerard-bakardy@hotmail.com
Youtube: Gerard Bakardy-The Rose & Her Shadow



**ASTA-USA TRANSLATION SERVICES, INC.**
314 WEST 18TH STREET  CHEYENNE, WYOMING 82001
TEL.: 866.446.1860 | FAX.: 866.297.0606 | WWW.ASTA-USA.COM | WWW.LEGALTRANSLATIONSOLUTIONS.COM

## CERTIFIED TRANSLATION

*Documents Translated For:*

| LAST NAME: Ney | FIRST NAME: Cynthia | MIDDLE NAME: N/A |
|---|---|---|
| COMPANY: Greenberg Traurig, LLP | DIVISION: N/A | |

*List of Materials, Documents, Forms, Transcripts, Licenses, etc., translated.*

| |
|---|
| Ad entitled World Premiere – First in Belgium [1 page] |
| Teller v. Dogge; United States District Court, District of Nevada, Case No. 12-00591 |
| |

| Source Language: | Dutch |
|---|---|
| Target Languages: | English |

### SAN DIEGO, CALIFORNIA

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at ASTA-USA Translation Services, Inc., a professional document translation company, attest that the language translation completed by ASTA-USA's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, ASTA-USA Translation Services, Incorporated has caused the Certificate to be signed by its duly authorized officer(s).

**By:**                                                    **Date:** June 10, 2013

                 Alain J Roy, President

A copy of the translated version is attached to this statement of certification.



The National Association of Judiciary Interpreters & Translators - Member #7031

The American Translators Association – *Member #243198*

**ASTA-USA Translation Services, Incorporated** - *A Member in Good Standing*



F-C1206

# EXHIBIT 8



| | Q | Browse | Movies

# The Rose & her Shadow in Close up ! - Gerard Bakardy

Gerarreke ⊕ Subscribe 6 videos ▾



0:58 / 1:51

👍 Like 👎 | + Add to ▾ | Share | ⚑

**12** views 📊

Uploaded by Gerarreke on Mar 15, 2012

0 likes, 0 dislikes

The magician cuts one by one the leaves from a rose... in her shadow ! But it happens in reality on the real rose which is standing 2 meters away from her shadow. Everything is separate and loose from each other, so how is this possible? This is the most Magical, romantic and beautiful illusion I know. I've seen the great Penn & Teller performing a similar trick and now I'm very happy to share my version in a different and more impossible way with you. It is so magical to manipulate a shadow! The audience is so surprised especially when they see that the stem and 'vase' filled with water are removed from the table ! In combination with the floating table effect, these are fur sure 'the' eye catchers in my show.
It could be a wonderful and refreshing addition to all your coin or card tricks on show !
Thanks for watching my movie,

TELLER000070

**Category:**

# EXHIBIT 9



http://www.youtube.com/watch?v=BYmt7NtO85Y

★ Live now: Cults performing at the SXSW festival in Austin.

 [_____] 🔍  Browse | Movie

## The Rose & her Shadow in Close up ! - Gerard Bakardy

Gerarreke  ⊕ Subscribe   6 videos ▾



▶  🔊  0:53 / 1:51                          ⚙ ▢ ▭ ⛶

👍 Like  👎   + Add to ▾   Share   ⚑                    **14** views  📊

Uploaded by Gerarreke on Mar 15, 2012

0 likes, 0 dislikes

The magician cuts one by one the leaves from a rose... in her shadow ! But it
happens in reality on the real rose which is standing 2 meters away from her
shadow. Everything is separate and loose from each other, so how is this
possible? This is the most Magical, romantic and beautiful illusion I know.
I've seen the great Penn & Teller performing a similar trick and now I'm very
happy to share my version in a different and more impossible way with you. It
is so magical to manipulate a shadow! The audience is so surprised
especially when they see that the stem and 'vase' filled with water are
removed from the table ! In combination with the floating table effect, these
are fur sure 'the' eye catchers' in my show.
It could be a wonderful and refreshing addition to all your coin or card tricks
on show !
Thanks for watching my movie,

**Category:**
Entertainment

**Tags:**
The  rose  her  shadow  Magic  trick  illusion  Floating  table  Gerard
Bakardy  Penn  Teller  Magic (illusion)  Card  Tricks  Revealed  Coin  Cards
Magic Trick  Criss  David  Blaine  Magician  Cool  Amazing  Tutorial
Magic Tricks

**License:**
Standard YouTube License

TELLER000069

Show less

All Comments (0)                                                    see all

# EXHIBIT 10

1

2
Gerard Dogge
Hoevensebaan 2 – 2950 Kapellen
Belgium – Europe
Gerard-Bakardy@hotmail.com
Cell: 011.34.606.35.65.04.

3

June 12th, 2013.

4
**No Counsel  - PRO - SE**

5

6
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

7

8

9

10

11

12

13

| |
|---|
| Teller, an individual |
|       Plaintiff. |
| v. |
| Gerard Dogge (Gerard Bakardy), an individual |
|       Defendant. |

**CASE N° 2:12-cv-00591-JCM-GWF**

**Answer to plaintiff's**
third set of requests for admissions

14
Honourable Judge George Foley Jr.,

15
Forgive me for approaching the Court in this way, for defending myself in a

16
poor English vocabulary. As mentioned before, I'm not a lawyer, and especially

17
not an American lawyer.

18
I'm also not an American citizen, I'm European, with a Dutch nationality, born

19
and residing in Belgium and therefore obliged to 'know' the Belgian law. Logical.

20
In the same way as, I believe, the American citizens are expected to know the

21
USA Federal Law.

22
So, forgive me, I don't know the American law.  Although plaintiff was so kind

23
to send me a 150 pages with the *Federal Rules of civil procedure* and another 150

24
pages with the *Local Rules of practice*, it is not realistic to expect that these

25
documents make me a American citizen or lawyer. To translate and understand

26
these 300 pages, written in English, into my language (Flemish-Dutch) would take

27
a long time. To practice the USA law would take another number of years.

28

1

As stated during the Court hearing from June 7th. defendant is respecting the Honourable Judges order to answer the plaintiff's requests in English and is appreciating very much to be allowed by the Court to answer with a small delay. Although most of plaintiff's requests are not relevant and in the eyes of the defendant nothing more than 'fishing' attempts defendant tried his best answering the 90 (ninety) requests for admissions .

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

## **Response to third set of plaintiff's Requests for admission**

**REQUEST NO. 1 :** Admit that in the YouTube videos of The Rose and Her Shadow, the focus is a single rose in a vase casting a shadow.

**Response :**  Objection, the focus of The Rose and Her Shadow is on a single rose in a transparent, translucent Coke bottle filled with water, with the rose stem completely visible and removable. Notwithstanding the objection defendant denies this request.

**REQUEST NO. 2 :** Admit that in the YouTube videos of The Rose and Her Shadow, the Rose apparatus is placed on a small table.

**Response :**  The Rose apparatus can be performed on a small table but is not limited in its performance to a small table, even a translucent surface or even holding the Coke bottle in the hand are one of the possibilities to perform with the Rose apparatus. Notwithstanding these arguments, defendant admits this request.

**REQUEST NO. 3 :**  Admit that in the YouTube videos of The Rose and Her Shadow, the Rose Apparatus is red.

**Response :**  Objection, The Rose Apparatus is partly red, but also contains the colour green. Notwithstanding the objection, defendant admits this request.


**REQUEST NO. 4 :**  Admit that in the YouTube videos of The Rose and Her Shadow, the Rose Apparatus is lit so as to cast a shadow of the Rose Apparatus on a light-colored surface, namely, paper on an easel.

**Response :**  Defendant denies, this request. The easel in the Rose and her Shadow video does not show paper on an easel.


**REQUEST NO. 5 :**  Admit that in the YouTube videos of The Rose and Her Shadow, the easel and table stand in front of a red curtain.

**Response :** Defendant denies this request. The curtain's color isn't red.


**REQUEST NO. 6 :**  Admit that in the YouTube videos of The Rose and Her Shadow, you as the magician enter the camera's field of vision with a knife.

**Response :**  Objection, this request is vague and ambiguous with respect to the phrase "camera's field of vision". Defendant did not enter the stage holding the knife. Notwithstanding the objection defendant denies this request.


**REQUEST NO. 7 :**  Admit that in the YouTube videos of The Rose and Her Shadow, you as the magician are dressed in black.

**Response :** Objection, this request is vague and ambiguous with respect to the word "black". Defendant did not wear "black" dressed. Notwithstanding the objection defendant denies this request.

**REQUEST NO. 8 :** Admit that in the YouTube videos of The Rose and Her Shadow, you apply the knife's edge to the Rose Apparatus's shadow at the point of connection between the rose stem and a leaf of the Rose Apparatus.

**Response :** Objection, this request is vague, ambiguous and unintelligible with respect to the phrases " you apply", "the knife's edge to the Rose Apparatus's shadow", "at the point of connection between the rose stem and a leaf of the Rose Apparatus". Notwithstanding the objection defendant denies this request.

**REQUEST NO. 9 :** Admit that in the YouTube videos of The Rose and Her Shadow, as you "cut" the shadow of the Rose Apparatus, the corresponding leaf falls off of the Rose Apparatus.

**Response :** Defendant admits this request.

**REQUEST NO.10 :** Admit that in the YouTube videos of The Rose and Her Shadow, you use the same effect described above to "cut" the second leaf off of the Rose Apparatus, and that leaf falls of off the Rose Apparatus.

**Response :** Objection, this request is ambiguous and confusingly to the phrase " "you use the same effect described above". Notwithstanding the objection defendant denies this request.

**REQUEST NO.11 :** Admit that in the YouTube videos of The Rose and Her Shadow, you use the same effect described above to "cut" the petals from the Rose Apparatus, and the petals fall off the Rose Apparatus.

**Response :** Objection, this request in ambiguous and confusingly with respect to the words "you use the same effect described above".

Notwithstanding the objection defendant denies this request.

4

**REQUEST NO. 12 :** Admit that in the YouTube videos of The Rose and Her Shadow, you apply a knife to the shadow of the Rose Apparatus to create the illusion that by cutting a rose's shadow, you can destroy the rose itself.

**Response :** Objection, this request is ambiguous and confusingly with respect to the phrases " to create the illusion" and "you can destroy the rose itself".  This is just a part of creating the illusion, the illusion that Gerard Bakardy created is more magical and creates the impossibility of an illusion that a rose in a transparent Coke bottle filled with water can fall apart, without touching the Rose Apparatus. After the Rose fell apart the stem is removed out of the transparent bottle and the water is poured out of the bottle.  The Rose Apparatus is never destroyed and can be used again and again after it has been falling apart.

Notwithstanding the objection defendant denies this request.

**REQUEST NO.13 :** Admit that the technique used in The Rose and Her Shadow is referred to in the magic community as "sympathetic magic".

**Response :** Objection.  Defendant didn't know the existence of the term "sympathetic magic" until he could take notice from the report from Mr. Steinmeyer where he gives an explanation about this terminology. Defendant did then look in several dictionaries to find the meaning of "sympathetic magic", also named "contagious magic" and found different explanations. Since defendants invention is different and not described in the magic community yet because nobody saw the Rose and Her Shadow,

defendant is not sure if the technique used in The Rose and Her Shadow is comparable with "sympathetic magic" as referred in the magic community. Notwithstanding the objection defendant denies this request.

**REQUEST NO.14 :** Admit that the illusion is that doing violence to a shadow destroys the flower.

5

**Response :** Objection, this request is vague and ambiguous with respect to the words " the illusion", "doing", "violence" , "a shadow" , "destroys" and "flower".

This request is confusingly and unclear, notwithstanding the objection defendant denies this request.

**REQUEST NO.15 :** Admit that in your comments to The Rose and Her Shadow you stated "I've seen the great Penn & Teller performing a similar trick and now I'm very happy to share my version in a different and more impossible way with you.

**Response :** Admit.

**REQUEST NO.16 :** Admit that in your comments to The Rose and Her Shadow video you state "In combination with the floating table effect, these are fur sure the 'the' eye catchers' in my show.

**Response :** Objection, although the request is not completely correct to defendants comment. Notwithstanding this objection, defendant admits this request.

**REQUEST NO.17 :** Admit that you have used the following screen name, handle, or pseudonym online : "BwArtikel".

**Response :** Denied

**REQUEST NO.18 :** Admit that you have never used the following screen name, handle, or pseudonym online : "BwArtikel".

**Response :** Admit

**REQUEST NO.19 :** Admit that you have used The Rose in a show before an audience.

**Response :** Objection, this request is vague and ambiguous with respect to the word "The Rose". Notwithstanding the objection, defendant denies this request.

6

**REQUEST NO.20 :** Admit that you have not used The Rose in a show before an audience.

**Response :** Objection, this request is vague and ambiguous with respect to the word "The Rose". Notwithstanding the objection, defendant admits the request.


**REQUEST NO.21 :** Admit that the first time you saw a magician destroy a flower on stage by cutting it's shadow, it was Teller.

**Response :** Objection, this request is ambiguous, unintelligible and vague with respect the words "you saw a magician", "destroy", "flower" and "on stage". Notwithstanding the objections, defendant denies this request.


**REQUEST NO.22 :** Admit that you were unaware of alleged magician William Alexander and / or the user known as ALSmagic2008 performing a variation of Shadows until the dispute with Teller.

**Response :** Defendant denies this request.


**REQUEST NO.23 :** Admit that you were unaware of alleged magician Petros performing a variation of Shadows until the dispute with Teller.

**Response :** Defendant denies this request.


**REQUEST NO.24 :** Admit that you were unaware of Hector performing a variation of Shadows until the dispute with Teller.

**Response :** Defendant denies this request.


**REQUEST NO.25 :** Admit that you do not know of any magicians in Europe performing an illusion where a rose falls apart apparently as a result of the magician acting on its shadow.

**Response :** Objection, this request is vague and ambiguous with respect to the words "know" and "acting". Since these kinds of illusions are for sale and for rent for many years, defendant can impossibly know all magicians performing this illusion. Notwithstanding the objections, defendant denies this request.

**REQUEST NO.26 :** Admit that you do not know of any magicians in the United Stated, aside from Teller, performing an illusion where a rose falls apart apparently as a result of the magician acting on its shadow.

**Response :** Objection, this request is in conflict with requests n° 22, 23, 24. This request is also vague and ambiguous with respect to the words "know" and "acting". Since these kinds of illusions are for sale and for rent for many years, defendant can impossibly know all magicians performing this illusion. Notwithstanding the objections, defendant denies this request.

**REQUEST NO.27 :** Admit that you have performed The Rose and Her Shadow before a live audience.

**Response :** Defendant denies this request.

**REQUEST NO.28 :** Admit that you have not performed The Rose and Her Shadow before a live audience.

**Response :** Defendant admits this request.

**REQUEST NO.29 :** Admit you have used the following pseudonym : Gerard Robert.

**Response :** Objection, Gerard Robert is not a pseudonym, defendant denies this request.

**REQUEST NO.30 :** Admit you have not used the following pseudonym : Gerard Robert.

**Response :** Objection, Gerard Robert is not a pseudonym, defendant denies.

**REQUEST NO.31 :** Admit that you have used the following pseudonym : Gerard D'Anvers.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation. Notwithstanding the objection, defendant admits.

**REQUEST NO.32 :** Admit you have not used the following pseudonym : Gerard D'Anvers.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation. Notwithstanding the objection, defendant denies.

**REQUEST NO.33 :** Admit you have used the following pseudonym : Gerard Danvers.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation. Notwithstanding the objection, defendant admits.

**REQUEST NO.34 :** Admit you have not used the following pseudonym : Gerard Danvers.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation. Notwithstanding the objection, defendant denies.

**REQUEST NO.35 :** Admit that Jacky Kahan is your agent.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation. Notwithstanding the objection, defendant denies.

**REQUEST NO.36 :** Admit that Jacky Kahan is not your agent.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation.

Notwithstanding the objection, defendant admits.

**REQUEST NO.37 :** Admit that MagicCafe Productions is your agent.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation.

Notwithstanding the objection, defendant denies.

**REQUEST NO.38 :** Admit that MagicCafe Productions is not your agent.

**Response :** Objection, this request is irrelevant to the alleged copyright litigation.

Notwithstanding the objection, defendant admits.

**REQUEST NO.39 :** Admit that you contacted Ian McCarthy regarding The Rose and/or

The Rose and Her Shadow.

**Response :** Defendant denies.

**REQUEST NO.40 :** Admit that you did not contact Ian McCarthy regarding The Rose

and/or The Rose and Her Shadow.

**Response :** Defendant admits.

**REQUEST NO.41 :** Admit that you have used the following screen name, handle, or

pseudonym online : "Dirk VL".

**Response :** Objection, this request is not relevant to the alleged copyright litigation.

Notwithstanding the objection, defendant denies.

**REQUEST NO.42 :** Admit that you have never used the following screen name, handle, or pseudonym online : "Dirk VL".

**Response :** Objection, this request is irrelevant to the alleged copyright litigation. Notwithstanding the objection, defendant admits.

**REQUEST NO.43 :** Admit that you own real property in the United States.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same, this request is also outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.44 :** Admit that you do not own real property in the United States.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same, this request is also outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.45 :** Admit that you own real property in Florida.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same, this request is also outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

11

**REQUEST NO.46 :** Admit that you do not own real property in Florida.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same, this request is also outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.47 :** Admit that you have performed at one or more Sheraton hotels.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.48 :** Admit that you have performed at one or more Hilton hotels.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.49 :** Admit that you have performed at one or more Madison hotels.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required

**REQUEST NO.50 :** Admit that you have performed on one or more Royal Caribbean cruise ships.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required

**REQUEST NO.51 :** Admit that you have never performed at any Sheraton Hotel.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

13

CASE N° 2:12-cv-00591-JCM-GWF

**REQUEST NO.53 :** Admit that you have never performed at any Hilton hotel.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required

**REQUEST NO.54 :** Admit that you have never performed on any Royal Caribbean cruise ship.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.55 :** Admit that you were director of a company based in Deurne.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same, this request is also outside the scope of the Federal Rules.

This request seeks private and privileged information and therefore no answer is required.

14

**REQUEST NO.56 :** Admit that you were director of a company based in Stabroek.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required

**REQUEST NO.57 :** Admit that you are no longer the director of a company based in Duerne.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.58 :** Admit that you are no longer the director of a company based in Stabroek.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.59 :** Admit that you sold your ownership interest in the company based in Duerne.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.60 :** Admit that you sold your ownership interest in the company based in Stabroek.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.61 :** Admit that you have previously owned a nightclub.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related

to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required

**REQUEST NO.62 :** Admit that you have previously owned a bar.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.63 :** Admit that you have previously owned a performance venue.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.64 :** Admit that you have never owned a nightclub.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related

to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.65 :** Admit that you have never owned a bar.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.66 :** Admit that you have never owned a performance venue.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.67 :** Admit that you have previously had an ownership interest in a nightclub.

18

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.


**REQUEST NO.68 :** Admit that you previously had an ownership interest in bar.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.


**REQUEST NO.69 :** Admit that you do previously had an ownership interest in a performance venue.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.70 :** Admit that you have never had an ownership interest in a nightclub.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.71 :** Admit that you have never had an ownership interest in a bar.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.72 :** Admit that you have never had an ownership interest in a performance venue.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.73 :** Admit that you previously had an ownership interest in a company that operated a nightclub.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.74 :** Admit that you previously had an ownership interest in a company that operated a bar.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.75 :** Admit that you previously had an ownership interest in a company that operated a performance venue.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence

in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.76 :** Admit that you have never had an ownership interest in a company that operated a nightclub.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.77 :** Admit that you have never had an ownership interest in a company that operated a bar.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

22

**REQUEST NO.78:** Admit that you have never had an ownership interest in a company that operated a performance venue.

**Response :** Objection, the request is not relevant to the pending alleged copyright litigation nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead this request seeks information you presumably believe is related to the claims in the Belgium defamation litigation and is accordingly outside the scope of the Federal Rules.

This request is not limited to time or in scope, this request seeks private and privileged information and therefore no answer is required.

**REQUEST NO.79 :** Admit that your intent, when posting the video of The Rose and Her Shadow on YouTube, was for viewers to recognize the illusion as a Teller illusion.

**Response :** Objection, this request is unintelligible and ambiguous with respect to the word "recognize". Notwithstanding the objection defendant denies this request.

**REQUEST NO.80 :** Admit that your intent, when posting the video of The Rose and Her Shadow on YouTube, was for viewers to recognize the illusion as a Teller illusion, but that you believed it was an improved version of that illusion.

**Response :** Objection this is a compound request for admission to get response on request  "Admit that your intent, when posting the video of The Rose and Her Shadow on YouTube, was for viewers to recognize the illusion as a Teller illusion" this request was answered in Request N° 79. The other part of this compound request is "you believed it was an improved version of that illusion". Notwithstanding this objection defendant denies.

**REQUEST NO.81 :** Admit that the YouTube user known as Petros is not attempting to sell a rose prop via the YouTube video entitled "Shadows by Petros".

23

**Response :** Objection, defendant can impossibly know the intentions of Youtube users. Defendant denies.

**REQUEST NO.82 :** Admit that the YouTube user known as Petros' video states that "Full credit goes to Penn and Teller".

**Response :** Objection. This request is vague with respect to the word "Petros' video" defendant doesn't know how many videos Petros has posted on Youtube.

Defendant is not aware of this statement and denies this request.

**REQUEST NO.83 :** Admit that the Youtube user known as Petros states in the description of the video "me attempting to do tellers amazing magic that he came up with long time ago. After I saw it I finally decided to go ahead and do it, I am not revealing it any way I respect a fellow magicians work and I will perform it in public as per tellers approval, thank you for your ideas"

**Response :** Objection, this request is vague and ambiguous to the words "the description of the video", defendant doesn't know how many video's Petros has posted on Youtube. Notwithstanding the objection defendant admits.

**REQUEST NO.84 :** Admit that the YouTube user known as Petros' conclusion to his video states " Thank you Teller, for creating an amazing Magic. My attempt can never match yours".

**Response :** Objection. This request is vague with respect to the words "Petros' conclusion to his video" defendant doesn't know how many videos Petros has posted on Youtube.   Defendant is not aware of this statement, notwithstanding the objection, defendant denies.

**REQUEST NO.85 :**   Admit that the YouTube user known AIS Magic or William Alexander performs a shadows illusion with a bouquet of daisies.

**Response :** Objection, this request is leading, ambiguous and unintelligible with respect to the phrase 'AIS Magic or William Alexander'  notwithstanding the objection, defendant admits.

**REQUEST NO.86 :** Admit that the YouTube user known as AIS Magic or William Alexander states in his comments section that the illusion is "not for sale".

**Response :** Objection, this request is ambiguous and unintelligible with respect to the word "the illusion". William Alexander states in the comments section "a trick inspired by teller of "penn and teller" … I love them both as they both are a big source of inspiration to me".   Defendant is not aware of the statement " not for sale" and denies this request.

**REQUEST NO.87 :** Admit that in the YouTube video of The Rose and Her Shadow, you remove the petals and leaves from a rose by acting on its shadow, which is projected on an easel, with a knife.

**Response :** Objection, this request is vague, ambiguous and unintelligible with respect to the phrases "you remove the petals and leaves from a rose" and "by acting on its shadow which is projected on an easel" and "with a knife". Notwithstanding the objections defendant denies.

**REQUEST NO.88 :** Admit that in the YouTube video of The Rose and Her Shadow, the focus is a single rose in a vase casting a shadow.

**Response :** Objection. This request is ambiguous and unintelligible to the words "the focus", "in a vase" and "casting a shadow". The focus is not on a vase but on a

25

transparent Coke bottle filled with water, obviously this casts a different shadow than a vase. Notwithstanding these objections, defendant denies this request.

**REQUEST NO.89 :** Admit that in posting the YouTube video of the 'The Rose an Her Shadow", you wanted viewers to associate your illusion with Teller's illusion.

**Response :** Defendant stated "I'm very happy to share my version in a different and more impossible way with you" and did not want viewers to associate my illusion with Teller's illusion. Defendant denies.

**REQUEST NO.90 :** Admit that in tagging the YouTube video "The Rose and Her Shadow" with the tags "Teller" and "Penn", you sought to have your video appear in the search results of users who were searching YouTube for videos of Penn & Teller.

**Response :** Objection. If this was the defendant's intention, he better should have 'tagged' 'shadows from Teller' which he did not.  On the contrary, YouTube suggested most of the 'tags' automatically. Apparently YouTube seems to associate Penn & Teller with magic tricks/illusions and vice versa.  The tags are blue coloured, meaning they can be clicked on, leading the users to the websites they're linked with. It is clear that the tags are mentioned to help the users in their search for magic in general. Defendant denies this request.

I am looking forward to the oral pleadings to discuss or further justify the defendants requests and answers.

With the deepest respect for the Court,

Gerard Dogge

Hoevensebaan 2, B2950 Kapellen
Belgium - Europe

26