# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TELLER, an individual,

        Plaintiff(s),

v.

GERARD DOGGE (p/k/a Gerard Bakardy) an individual,

        Defendant(s).

2:12-CV-591 JCM (GWF)

## ORDER

Presently before the court is plaintiff Teller's motion for summary judgment as to his copyright infringement claim. (Doc. # 122). *Pro se* defendant Gerard Dogge filed a response in opposition (doc. # 151), and Teller filed a reply (doc. # 172).

Also before the court is Teller's motion for summary judgment as to his unfair competition claim. (Doc. # 123). Dogge filed a response in opposition (doc. # 150), and Teller filed a reply (doc. # 174).

**I.  Background**

The instant action is a suit by Teller, a world-renowned magician, against Gerard Dogge, a Dutch performer who created two YouTube videos offering to sell the secret to one of Teller's signature illusions.

The illusion at the center of this case is called "Shadows," and has been an integral part of Teller's act for over three decades. It consists of a spotlight trained on a vase containing

**James C. Mahan**
**U.S. District Judge**

a single rose. The light falls in such a manner that the shadow of the rose is projected onto a white screen positioned some distance behind it. Teller then enters the otherwise still scene, picks up a large knife, and proceeds to use the knife to dramatically sever the leaves and petals of the rose's shadow on the screen slowly, one-by-one, whereupon the corresponding leaves of the real rose sitting in the vase fall to the ground, breaking from the stem at the point where Teller cut the shadow.

The scene closes with Teller pricking his thumb with the knife, and holding his hand in front of the canvas. A silhouette of a trail of blood appears, trickling down the canvas just below the shadow of Teller's hand. Teller then wipes his hand across the "blood" shadow, leaving a crimson streak upon the canvas.

Teller registered "Shadows" as a dramatic work with the United States Copyright Office on January 6, 1983. (Doc. 122-2 p. 4). The copyright registration states that Teller began performing the trick in 1976, and describes the action of the performance down to its most subtle detail. *Id.* at 4-6.

On March 15, 2012, Dogge uploaded two videos to YouTube in which he performed a strikingly similar illusion entitled "The Rose and Her Shadow." His videos open with a spotlight trained on a glass bottle containing a single rose. The light falls in such a manner that the rose of the flower is projected onto a white screen positioned some distance behind it. Dogge then enters the otherwise still scene, picks up a large knife, and proceeds to use the knife to dramatically sever the leaves and petals of the rose's shadow on the screen slowly, one-by-one, whereupon the corresponding leaves of the real rose sitting in the bottle fall to the ground, breaking from the stem at the point where Dogge cut the shadow. After all of the petals are severed from the rose, Dogge removes the stem from the bottle and pours the water from the bottle into a drinking glass. After the performance concludes, a caption appears, stating "Magic in Las Vegas style! Now available," followed by "A Double illusion for the price of 'One' !!" The videos also display an email address at which Dogge can be reached.

. . .

In order to allow individuals to locate his videos using YouTube's search functions, Dogge tagged the videos with keywords including "Penn" and "Teller." Dogge's caption for the videos stated "I've seen the great Penn & Teller performing a similar trick and now I'm very happy to share my version in a different and more impossible way with you." Dogge later stated that he posted the YouTube videos in an attempt to sell the illusion's secret "to customers in various countries, including the United States."

Though there are organizations, taken seriously by many in the magic community, that blackball any performer who reveals a magician's secret, Teller has opted to pursue this action with copyright infringement and unfair competition claims arising under federal law. In the instant motions, Teller requests that the court grant summary judgment as to both of these claims.

## II. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party

will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To demonstrate the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Analysis**

  *a. Copyright Infringement*

In order to prevail on a claim for direct copyright infringement, a plaintiff must establish two elements: (1) the plaintiff's ownership of a valid copyright; and (2) the defendant's copying of constituent elements of a work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

1. Valid Copyright

Though a certificate of registration constitutes *prima facie* evidence of a valid copyright if it is approved within five years of the first publication of a work, 17 U.S.C. § 410(c), Teller admits that he began performing "Shadows" in 1976 and did not obtain the copyright registration until January 6, 1983.

However, even though the work was not registered within five years of its first performance, the court finds that Teller has provided substantial evidence that he is the creator and owner of "Shadows." The detail of the registration certificate in describing the work and its original performance date, in addition to the testimony of Jim Steinmeyer, a magic ingénieur and historian, stating that "Shadows" was original and unique when it was first performed serve as substantial evidence that Teller owns a valid copyright in the work.

Dogge argues that Teller's copyright is not valid because (A) it is registered as a dramatic work rather than a magic routine, (B) Teller abandoned his copyright, (C) Teller "openly challenged others to copy" the work, and (D) Teller did not inform the public that "Shadows" is copyrighted.

A. Registration as a Pantomime Drama

While Dogge is correct that magic tricks are not copyrightable, this does not mean that "Shadows" is not subject to copyright protection. Indeed, federal law directly holds "dramatic works" as well as "pantomimes" are subject to copyright protection, granting owners exclusive public performance rights. *See, e.g.*, 17 U.S.C. §§ 102 &106. The mere fact that a dramatic work or pantomime includes a magic trick, or even that a particular illusion is its central feature does not render it devoid of copyright protection.

As previously stated, Teller's certificate of registration describes the action of "Shadows" with meticulous detail, appearing as a series of stage directions acted out by a single performer. Because dramatic works and pantomimes clearly fall within the protection of the Copyright Act, Dogge has presented no reason for the court to doubt the validity of Teller's copyright.

. . .

. . .

B.     Abandonment

"It is well settled that rights gained under the Copyright Act may be abandoned. But abandonment of a right must be manifested by some overt act indicating an intention to abandon that right." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998). In this case, Dogge puts forward no evidence that Teller made an affirmative act indicating that he intended to abandon his copyright, instead arguing that Teller's failure to take action against other alleged infringers constitutes abandonment. Without ruling on the question as to whether other individuals have performed works similar to "Shadows," the court finds that Dogge's allegations are insufficient to support the contention that the copyright has been abandoned.

C.     "Challenged Others to Copy"

Dogge next argues that Teller "challenged others to copy his work" by having his partner, Penn Jillette state publicly "No one knows how 'Shadows' is done and no one will ever figure it out." Even if it were possible to waive copyright protection by "challenging others," the statement in question makes no indication that any other individual should publicly perform the work, and only demonstrates confidence that the illusion is so clever that its secret cannot be discovered. Taken as a "challenge," this statement merely provokes others to unearth the secret, not perform the work.

Therefore, Dogge's argument is misplaced, as it conflates the idea of copying the secret of the illusion with copying the public performance of the work. However, in terms of copyright protection, the secret behind the trick does not impress the court, the performance it is used for is everything.

D.     Notice

Dogge argues that Teller's copyright is not valid because he did not affix "notice" to his performances indicating that "Shadows" is a copyrighted work. However, the Copyright Act does not require that holders provide notice that their works are copyrighted. Furthermore, the evidence on the record shows that Teller directly told Dogge during an email exchange in March 2012 that "Shadows" was a copyrighted work. Therefore, even though notice is not required, the court finds that Teller conveyed that he held a copyright in the work.

James C. Mahan
U.S. District Judge

- 6 -

Accordingly, despite Dogge's numerous attempts to utter an incantation to make the copyright disappear, the court finds that Teller maintains a valid interest as the creator and owner of "Shadows."

### 2. Copying

In order to prove that a defendant copied the protected work, a plaintiff must show "[A] that the infringer had access to plaintiff's copyrighted work and [B] that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

#### A. Access

In the context of copyright infringement, "access" is simply defined as "an opportunity to view or copy [a] plaintiff's work." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 482 (9th Cir. 2000) (quoting *Sid & Marty Krofft Tele. Prods., Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir. 1977)). However, this element cannot be proven by a mere showing that a defendant had a "bare possibility" of access to the work. *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982). Instead, a plaintiff must provide evidence that rises above the level of speculation and conjecture, showing that the defendant had a "reasonable possibility" of accessing the protected work. *See Three Boys Music Corp.*, 212 F.3d at 482.

A plaintiff can demonstrate that an alleged infringer had access by providing evidence of a "particular chain of events . . . between the plaintiff's work and the defendant's access to that work" or by showing that " the plaintiff's work has been widely disseminated." *Id*.

Upon reviewing the record, it is clear that Dogge has provided contradictory accounts as to whether and to what extent he had seen Teller perform "Shadows" prior to posting the YouTube videos, half of him swearing blind that he had never seen the work before, (doc. # 151 p. 40:8-17), the other half convinced that he observed Teller perform the trick in its entirety (doc. # 122-2 p. 20).

Self-serving testimony, made when an individual is faced with summary judgment, that contradicts clear evidence on the record need not be given credence by the court. Indeed, the Ninth Circuit has observed, "If a party who has been examined at length on deposition could raise an issue

of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (quoting *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975)).

In this case, Dogge's caption to the YouTube videos clearly stated, "I've seen the great Penn & Teller performing a similar trick and now I'm very happy to share my version in a different and more impossible way with you." (Doc. # 172 p. 48). Furthermore, during his deposition, Dogge recounted "I saw Shadows from Mr. Teller, the illusion, magic trick, on the internet on YouTube." (Doc. # 172 p. 51). Given Dogge's clear statements admitting he had access to Teller's work, the court finds that Dogge's recent contradictory account does not raise a genuine dispute of material fact.

### B. Substantial Similarity

In order to determine whether two works are substantially similar, the Ninth Circuit utilizes a two-part analysis. *Cavalier*, 297 F.3d at 822. First, the court uses an "extrinsic test" to observe objective criteria and analytically dissect the two works. *Id*. The court then performs an "intrinsic test" to determine "whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works." *Id.* (internal quotation marks and citation omitted). With both of these tests, the court "must take care to inquire only whether the *protectible elements, standing alone,* are substantially similar." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

While applying the extrinsic test, the court specifically observes "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" of the two works. *See, e.g.*, *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). The court is careful to note however, that "ideas" and "concepts" are not copyrightable, nor are "themes" and "scenes-a-faire," and therefore these elements must be excluded from the comparison. *Cavalier*, 297 F.3d at 823.

. . .

Even overlooking the non-protectible elements of these two works, Teller's "Shadows" and Dogge's "The Rose and Her Shadow" are nearly identical twins. Each work begins with a view of a rose sitting on a table. In Teller's work, the rose sits in an opaque vase, while Dogge's rose sits in a transparent glass bottle.

In both works, the rose's shadow is projected onto a screen behind the table. The lone performer then enters the frame, observes the rose, then takes hold of a knife sitting on the table and shows it to the audience. The performer proceeds to use the knife to cut the shadow of the rose: starting with the branch on the audience's left, then branch on the right, and finally the flower on top. As the performer cuts the shadow of the rose, the corresponding parts of the real rose fall onto the table.

While Teller's performance closes as he cuts his hand, and smears blood upon the canvas, Dogge's piece concludes as he removes the stem from the bottle and pours the water from the bottle into a glass.

The events and dramatic progression of these two works are nearly identical. Both works reply upon a mysterious mood and proceed at a similar pace. Each involves a sole, silent performer. In fact, the only perceivable differences between these two works are the slight differences in props (Teller's vase versus Dogge's bottle) and the variance in the performer's actions in the final seconds (smearing blood versus pouring water). These minor differences are inconsequential compared to the overwhelming number of significant and subtle similarities between these two works. Accordingly, the court finds that "Shadows" and "The Rose and Her Shadow" are substantially similar under the extrinsic test.

Similarly, the court holds that a reasonable audience would find that these works have the same total concept and feel. Both performances are based on the incredibly unique concept of a performer methodically cutting parts of a rose's shadow, thereby severing the corresponding parts of a real rose, and would be indistinguishable from each other in the mind of an ordinary observer.

Dogge contends that the works are not substantially similar because his secret to performing the illusion differs from Teller's, and because he uses a clear glass bottle instead of a vase in his

version. However the court finds that these reaching arguments by Dogge exceed his limited grasp of copyright law. By arguing that the secret to his illusion is different than Teller's, Dogge implicitly argues about aspects of the performance that are *not perceivable by the audience*. In discerning substantial similarity, the court compares only the *observable* elements of the works in question. Therefore, whether Dogge uses Teller's method, a technique known only by various holy men of the Himalayas, or even real magic is irrelevant, as the performances appear identical to an ordinary observer.

Additionally, the court finds that Dogge's attempt to point to differences in minor details of these two works to be nothing but misdirection. Clearly, the closer one looks at infinitesimal nuances of these works, the less one actually sees their similarities. However, If Dogge's contentions were true, any individual could reap the benefits of another's creative labor by copying a final product and altering a few inconsequential details. Indeed, this is precisely why a copyright infringement claim requires "substantial similarity" instead of perfect identity between two works.

Therefore, the court holds that Teller has provided substantial evidence that he owns a valid copyright and that Dogge's "The Rose and Her Shadow" copied original, constituent aspects of "Shadows." Because Dogge fails to raise a genuine issue of material fact regarding these elements, the court finds that Teller is entitled to summary judgment on his copyright infringement claim.

### 3. Damages

In lieu of requiring proof of actual damages in every case, the Copyright Act gives owners the option of pursuing statutory damages for copyright infringement. *See* 17 U.S.C. § 504(c). The Copyright Act allows the court to award up to $150,000 in statutory damages if it finds a defendant willfully infringed upon a copyright, but only up to $30,000 for non-willful infringement. *Id*. A defendant is found to have acted willfully when the defendant had knowledge that his conduct constituted copyright infringement.

. . .

. . .

. . .

Here, Teller argues that the evidence shows Dogge's infringement was willful because Dogge was informed on March 21, 2012, that he was infringing upon Teller's copyright, and one of the infringing videos remained active for an additional seven days until it was removed by the YouTube staff.

Dogge claims that he was not aware that "Shadows" might be a copyrighted work prior to his discussion with Teller on March 21, 2012. Dogge admits that Teller told him on that date that Teller held a valid copyright in the work, but claims to have responded by requesting that Teller send a copy of the copyright registration. Additionally, Dogge argues that he mistakenly allowed one version of his video to remain active for seven days following this conversation with Teller.

Accordingly, the court finds that Dogge has raised a genuine dispute of material fact as to whether he willfully infringed upon Teller's copyright, and therefore Teller's motion for summary judgment will be denied as to the issue of damages.

### 4. Attorneys' Fees

The Copyright Act provides that courts may award reasonable attorneys' fees to the prevailing party in an infringement action. *See* 17 U.S.C. § 505. The Ninth Circuit has put forward five factors to assist courts in determining whether an award of attorneys' fees is appropriate: "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence." *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996).

In this case, the court finds that an award of attorneys' fees is appropriate, as Teller has prevailed on his claim for copyright infringement, the court does not doubt that his motivation was to protect his exclusive right to his creative work, and awarding attorneys' fees in cases such as this one advances the public interest in promoting protection of creative works and deterring potential infringers. Accordingly, the court orders that Teller submit a memorandum, in compliance with the requirements set forth in Local Rule 54-16, detailing the attorneys' fees for his copyright infringement claim following the final resolution of the issue of damages.

. . .

*b. Unfair Competition*

15 U.S.C. § 1125(a) provides,

> Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

This provision has been interpreted to create a cause of action against individuals who use distinctive elements of a celebrity's persona without permission to falsely suggest an association or endorsement of goods or services. *See White v. Samsung Electronics Am., Inc.*, 971 F.2d 1395, 1399-1400 (9th Cir. 1992).

To determine whether a likelihood of confusion exists, the Ninth Circuit has created a nonexhaustive list of factors for consideration: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* at 1400.

Teller argues that the evidence on the record demonstrates that Dogge's videos created a likelihood of confusion among their target audience by indicating that Teller endorsed the product being sold. In support, Teller cites to the testimony of Jim Steinmeyer stating that "Shadows" is Teller's signature trick, and is widely associated with his celebrity persona.

Dogge responds by questioning the reliability of Steinmeyer's claims regarding Teller's public recognition, and again pointing to the differences between the two works.

The testimony of Teller's expert certainly serves as evidence from which a reasonable person could conclude that there is a likelihood of confusion as to Teller's involvement with Dogge's videos. However, construing Dogge's arguments liberally in consideration of his status as a *pro se* litigant, the court finds that a genuine dispute of material fact exists as to this claim.

From the record, it is undisputed that the contents of Dogge's videos and his offer to sell the secret to the trick are significantly related to Teller's signature illusion. It is evident, for the same reasons set out in the copyright analysis, that these performances are extraordinarily similar. It is also clear from the caption to the videos that Dogge intended to profit by selling the secret to an illusion similar to Teller's.

Nonetheless, the relevant question regarding this claim is not whether there is similarity between "Shadows" and "The Rose and Her Shadow," but whether an individual viewing one of Dogge's videos is likely to assume that Teller endorsed the video's contents. Dogge's response indicates that the "Shadows" illusion is not widely recognized as being associated with Teller. Further, there is a lack of evidence on the record that any viewer of these videos actually believed they were endorsed by Teller. Dogge's caption, stating "I've seen the great Penn & Teller performing a similar trick and now I'm very happy to share my version in a different and more impossible way with you," potentially clarified that the videos were not supported by Teller. It is also important to note that there is no allegation that Dogge used an image of Teller or a representation of his likeness in the videos.

Accordingly, the court finds that genuine issues of fact exist regarding whether Dogge's YouTube videos were likely to cause confusion as to Teller's involvement with Dogge's commercial activity. Therefore, the court will deny Teller's motion for summary judgment relating to the unfair competition claim.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Teller's motion for summary judgment on the copyright infringement claim (doc. # 122) is GRANTED as to all issues except willful infringement.

IT IS FURTHER ORDERED that plaintiff Teller's motion for summary judgment on the unfair competition claim (doc. # 123) is DENIED.

. . .

. . .

IT IS FURTHER ORDERED that plaintiff Teller submit a memorandum, in compliance with the requirements set forth in Local Rule 54-16, detailing the attorneys' fees for his copyright infringement claim following the final resolution of the issue of damages.

DATED March 20, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge

- 14 -