

☑ FILED _____ RECEIVED
___ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

SEP - 5 2014

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

1

Gerard Dogge
Hoevensebaan 2 – 2950 Kapellen
Belgium – Europe
Gerard-Bakardy@hotmail.com
Cell: 011.34.606.35.65.04.

**No Counsel  - PRO - SE**

5th of September , 2014.

---

| Teller, an individual | IN THE UNITED STATES DISTRICT COURT |
|---|---|

Teller, an individual

     Plaintiff.

v.

Gerard Dogge (Gerard Bakardy),
an individual

     Defendant.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

**CASE N° 2:12-cv-00591-JCM-GWF**

**OPPOSITION-REPLY**
**To Plaintiff's  motion (#228-229)**
**For default judgment and**
**permanent injunction**
**against Dogge**
\*\*\*\*

Judge George Foley Jr., Judge James Mahan,

## 1.INTRODUCTION-HISTORY

In an embarrassing way I look back to how this proceedings are coming to an end. Anyone will notice that plaintiff  won his case while it never came to the ground of the case, while it is not proven that the Court orders are justified.  It is sad to see how the Court  was blinded by the plaintiff's misleading motions and declarations. The Court granted plaintiff's requests for sanctions striking my answer and neglecting the multiple exhibits I filed, without giving me any chance to plead my case for a Jury nor Judge.

    During the entire proceeding there was not a single exhibit filed by the plaintiff to prove that he suffered any damage, nor that I really infringed Tellers copyright. Logic. Because plaintiff cannot. Because up until today, I never sold a single 'prop', nor did I ever perform the illusion at issue, nor did I ever advertise where, how, and on which price my prop could be bought.

1

To fill up the gap of convincing evidence to prove his case, plaintiff tried his very best to put words in my mouth to trap me during the deposition and discovery but stayed empty handed.

During the proceedings it came to light that plaintiff instructed his witnesses what to say and write and rewarded them for their silent cooperation.    It came to light that Teller instructed his witnesses to delete multiple videos on the internet which could be used by me to prove to the Court that the illusion at issue was performed all over the world by several persons/magicians and not exclusively by Teller, as he claims.    It came to light that the only evidence he ever filed showing some screenshots from his computer was manipulated, and photo shopped, while he could have redacted the 'sensitive parts' on it,  in a legal way.

After plaintiff realized that it became difficult for him to prove the alleged infringement and was confronted with the multiple exhibits I had filed and realized that I really was prepared to discuss and show this evidence to the Jury, he drastically changed his strategy.

I must say, I did not expect this strategy. And I less expected the Court was helping the plaintiff in his sneaky strategy.

1st   In complete contrast to his first demands for a Jury trial, he turned 180°.  Now he was doing all possible to get rid of the Jury. Plaintiff started to file motions for summary judgements. The Court granted plaintiff's request.

2nd   Plaintiff started filing motions requesting me, to do things wherefrom he knew that I never could or would do. Such as handing my personal computer to the plaintiff.  He knew that I would react like any other normal person would do. Refusing.  Then he wanted me to produce a manual and DVD which didn't even exist, I was still working on it as I declared in the deposition.   It was clear to me that Teller, who built his career on revealing other magicians illusions and therefore is known as the 'bad boy' in the magic circle, had bad and indecent intentions.

2

He was still eager to find out which method I was using to perform the surpassing illusion.  First he offered me money for it, now he involved the Judge for it.  Then he wanted me to sign a confidential agreement.  Since I learned how plaintiff thinks and acts and that his behaviour better doesn't come the light, I can understand his eager to sign contracts as such. It would help him in his strategy 'what happens in Vegas stays in Vegas'.  Signing the proposed contract would only benefit him and not me. Of course, like any other normal person would do, I refused to sign.

3rd     The next step in plaintiff's strategy was requesting the Court for sanctions to strike my answer and multiple exhibits because I was not respecting or 'disobeying' to the Court.  In this way plaintiff's lack on evidence didn't matter anymore and there was no risk that the Jury would not buy Teller's sentimental story, as the Judge did.

## 2. BACKGROUND

I strongly believe that the Court is aware who plaintiff is.  He's a magician performing magical illusions in the Casino hotels of Las Vegas, the same town as where the Court is situated. Plaintiff filed already thousands of pages and newspaper articles to say how 'great' he is. But this is not the point!  Anyone can read on the internet that many professional magicians do not consider P & Teller as honourable magicians, since magicians never reveal illusions or magic tricks. This is what the magicians 'code' is all about.  Still I believe he's a great entertainer, I never said any different.

The Court should not be impressed with the multiple ego tripping exhibits filed by plaintiff.  The exhibits filed in his latest motion, once more have nothing to do with the ground of the case. Apparently plaintiff's vanity is stronger than his evidence to prove his case.  A picture showing Teller shaking hands with Prince Charles of the UK does not prove any infringement on copyright nor unfair competion and does not impress me at all.

For your information: In Europe, scandals come to light, almost daily. A quick google search shows that Jimmy Savile, got handshakes from Prince Charles and even the Queen of England. But he did shake more than some hands.  The world was shocked seeing all the allegations of abuse that came to light the year after he died in October 2011. The famous television star who was knighted for his services to charity in 1990 was no more than a pervert pedophile.  More than 200 offences have been recorded against the disgraced TV presenter. Of his alleged victims, 73 % were children, with some as young as eight. There have also been calls for the UK government to strip Savile of the British knighthood he was awarded in 1990. David Cameron, the prime minister, hinted that the honor could be removed. Regarding the headstone the family said: We took the decision to remove and destroy the headstone so that it couldn't become a focus for malicious people.

Shaking hands or even be called a knight doesn't mean a thing in this world. Nor in this process.   The Court should focus on Tellers evidence... and notice that there is none.

### 3.LEGAL ARGUMENT.

Pros-se defendant is Belgian and not a lawyer and cannot refer to previous lawsuits and orders made in the USA, not his country. Defendant's answers are based on common sense and honesty and points out where plaintiff fails to use the same.

#### a)The expert's report.

Fully aware that there is a lack of evidence, the Courts based her default order on an expertise report made by an expert hired and paid by the plaintiff. Which seems to be a casual thing to do in the USA.  In my country the unbiased experts are pointed out by the Court, are questioned by the Court and by both parties.

It is remarkable that in this unusual and unique proceeding the Judge did not have a single question to the expert.

Even worse, it is unfair and a violation to the defendant's rights not giving him the chance to question Teller's partial expert witness.

I'm sure that, after hearing my pleadings, a Jury could conclude that the expert did not do a 'proper' job.  A proper expertise would have informed the Court that the prop to perform Tellers old shadow illusion is sold all over the world, new and second hand.

An impartial expert would have informed the Court that on the internet is showed how to build the prop to perform the old shadow illusion.

An impartial expert would have informed the Court that there are multiple people performing the old illusion all over the world.

An impartial jury would be interested to hear the answer... why did Jim Steynmeier, the expert, not share this important information with the Court.

An impartial Judge is expected to do the same, at least in my country.

It needs to be said that Steynmeier's report was made on date of April, 11.2013. The Court will remember the episode wherein plaintiff was arguing regarding the 'missing' YouTube video showing my surpassing illusion. The video was finally produced by Google in September 2013, months after the expert made his report.

An impartial Jury and Judge would wonder how the expert was able to write a report about something he doesn't know. Something he never saw before.  The 'prop' I developed allows the performer to perform the illusion in a transparent way and was never showed before.

I'm still the first and only one in the world performing an illusion wherein a removable rose falls apart without touching it, in water filled removable clear transparent vase or bottle.  But no one ever saw it. Defendant's video had 14 views only, most probably coming from an admiring Teller and his lawyers.

5

2   Neither expert Steynmeier saw it.

3   How could he write a report about something he never saw before?  Witchcraft?

4   The only documents the expert could study regarding my new prop and illusion was a

5   draft of a never published advertisement and a manipulated screenshot in Tellers legal

6   evidence showing a still frame of the YouTube video at issue.  Both documents do gave

7   the information in the text underneath that this illusion is different to Tellers.

8   (**Exh.2** TELLER000069-71)

9

10   The Court cannot ignore the fact that Steynmeier got his information from Teller.

11   One sided information coming from his employer. In the report Steynmeier admit that

12   the report is based on Tellers information. An impartial expert could have contacted me

13   to gather more information and to compare the two illusions in order to write a correct

14   and complete expertise. It's his duty. It's an obligation.   But Steynmeier didn't.  Why?

15   Was it not his task? Was he, just as the other witnesses of plaintiff, instructed by Teller

16   what to say and write?

17   An impartial Jury has the right to be informed in a complete and correct way

18   regarding the dispute and subject.

19   An impartial Judge is expected to search for the truth and should demand a

20   complete and correct expertise. Or at least, to allow the other party to cross-examine

21   the expert. **That's the defendants right.**

22   A cross-examination would have showed to the Jury and Judge that the experts

23   report is based on speculations, assumptions, suppositions and hypotheses and not on

24   facts.   Now, in plaintiff's latest motion he refers to the witchery 'predictions' of the

25   expert. Steynmeier appears to be clairvoyant.

26   The expert states that whenever Bakardy starts selling his prop it would damage

27   Teller because many people will use the prop to perform the illusion in Tellers way.

28   Well, the expert is wrong. Double wrong.

Firstly, defendant informed the Court that Tellers perceived exclusivity is no more than a joke because the 'prop' to perform the 'exclusive' illusion is sold all over the world and many persons are performing the illusion already. Probably Teller bought his prop, just as Petros, Hector, IAS Magic and so many more.

Most likely some of them bought the prop from the same trader who had a stall on the magic trade show in Blackpool - England. Defendant informed the plaintiff and the Court with many exhibits that the prop is for sale in England, Scotland and on the worldwide internet. Whenever people are interested to perform the 40 years old illusion they simply buy the prop. Or learn on the internet how to build the prop.

Defendant already informed the Court that the prop to perform the illusion at issue is manufactured, sold and leased by a prop manufacturer in Scotland, already for years. Defendant informed the Court even about the price the prop is sold for or can be leased for.  Apparently Teller didn't inform the expert. Apparently the expert didn't do any research on the subject.

Secondly, just as the expert will never buy a High Definition Full Color TV to afterwards switch of the colors because he loves to watch black/white pictures, no one will buy Bakardy's latest technology which is created to perform a surpassing illusion to afterwards perform the 40 years unveiled disillusion, as Teller does. Tellers 40 years old illusion became a disillusion since it lost his magical value the moment it was unveiled on the internet, not by Bakardy but by others.  Actually, it's a pity. Just the same pity as all the revealing done by the Masked Magician and Penn & Teller.

The Court should recognize the hypocrisy in Tellers complaint and motions. The Court should not focus on a report full of assumptions, suppositions, hypotheses and predictions. The sixth sense, crystal boll, or witchcraft of Mister Jim Steynmeier is not the right base to convict the defendant who did not get the chance to cross-examine the 'expert'.

### b) Copyright rules.

Striking the defendants answers and exhibits did not lead to a fair trial and does not change the rules of the Official Copyright Office of the USA Government. Defendant is confused since the Courts order is in conflict with his own Government rules. Defendant filed several exhibits containing letters from the USA Copyright Office of Washington. These letters are very clear and do state that magic illusions are not protected by copyright.

The Court chose not to see that Tellers copyright was registered in a fraudulent way. When I asked the magician-illusionist Teller in the deposition (**Exh.5** p21:1-15) how he would describe shadows, he called it a magic trick or illusion. They could be called both he said.  However, the Magician-illusionist Teller did not register his work as what it is, a magic trick or an illusion, or a magic routine, but as a dramatic scene/play. The thousands of ego-tripping documents filed by plaintiff do prove one thing: he never called his illusion a dramatic work; he never called himself a dramatic actor. He describes himself as the greatest magician-illusionist performing magical illusions. The only time he described the shadow illusion as a dramatic work was when he, in a fraudulent way, registered it.

An impartial Jury or Judge would see that Teller got his copyright in a fraudulent way.

Many others can and will now abuse the Courts order starting a ridiculous litigation about copyright on something what not really happens, a magical illusion.

It will surely help the economy since more Courthouses will be need to be built and many more lawyers will make more impressive invoices.

### c)Tellers statements.

Since defendant cannot refer to law texts as mentioned before, I would like to refer to the many contradicting unbelievable statements made by the plaintiff, especially the 'under oath' statements and testimonies, some in deposition and discovery.

- *Tellers testimony filed as exh.1 in plaintiffs motion.*

(Par.11) Teller is again misleading the Court pulling my email out of the context. The complete email, attached hereby as **Exh.6,** shows that although Teller had refused to inform me about the details of his copyright, that I would inform the buyers that they need to respect Tellers version. **Teller knows that I never intended to infringe** nor to '*plunder... as a common pirate*' as he likes to call me in par.13. Before the litigation even started we discussed multiple alternative presentations using my surpassing 'prop'. (**Exh.5** P155:15 & **Exh.4** p5:21-p6:2)


In Par.13 of his testimony Teller is again telling stories. The 'sell to a clever Chinese' was not a threat. It was sales talk to get the right price for my surpassing method, he was eager to buy, nothing more.  To make some things clear to the Court I attach Tellers deposition as Exh.5. In this way the Court can see that I'm not pulling statements out of the context.


Teller declares that he is convinced that defendant will *continue to plunder other material of Teller,* because he had to answer some questions in the deposition regarding the SilverFish illusion. Further he states that *he fully expect that defendant will continue to develop knockoff versions of Penn & Teller props...*    (#228 p30:13) These statements are no more than false allegations, again without presenting any prove. Most likely based on his own behavior and reputation as Bad Boy's.

The only reason I have asked Teller about the SilverFish illusion was to have prove for the Court that Teller is not really honest when it comes to copyright. Vain as he is, Teller proudly explained me on the phone that I was not respecting the magicians' code. He explained that if I would be a correct person that I should do the same as the Scandinavian magician did when Teller told him that he was infringing on his magic illusion SilverFish.

The 'infringer' immediately boxed the prop he used for it and send it on his expenses to Teller. Teller proudly publishes this same 'story' in interviews (eg. The Esquire), after he tried to intimidate me with this story he repeated it in the deposition. His intimidating story is in complete conflict with the discovery wherein I asked Teller to list his copyrighted illusions. The list did <u>not</u> mention SilverFish. (**Exh.5** p83:21-p89 and **Exh.1** p8:19 - p9:5 and **Exh.3** p13:20-26)

When I confronted Teller in the deposition with his 'under oath' given answers he acted uncomfortable. Understandable, I would do to.

When I asked Teller if he could explain me more about the Hiding the Elephant illusion he had listed as copyrighted illusion, he even got more uncomfortable. Logic, since he does not perform an illusion as such. Then he continued saying that he had a copyright on the foreword he wrote in the book Hiding The Elephant. (**Exh.5** p143:9)

Afterwards I understood that this book was written by his friend Jim Steynmeier, who turned out to be the expert in this process.

I've learned that Tellers fraudulent registered Copyright was not the only time that Teller lies regarding his copyrighted illusions. The Court chose to be blind for the multiple exhibits defendant filed proving the fraudulent behavior of the plaintiff, by striking the defendants answers. It's a shame.

### d)The prop/method/the secret

The Court will remember that during the proceedings defendant filed his answer and exhibits proving that Teller was offering money to come in exclusive poses of Bakardy's method/secret or prop.

After it became clear to the Court that this is a weird thing to do and wondered why someone would offer money to come in poses of a bad copy from what he already has, plaintiff tried his best to convince the Court that the 'method' or 'prop' was not the issue. Still, Teller noticed and stated that Bakardy's prop could be an improvement (**Exh.2** TELLER000067/68)

In the multiple motions, deposition and discovery Teller always kept on hammering that the method or prop is not the issue in this litigation.

The Judge blindly stepped into Tellers trap and granted Tellers motion ordering that (**Exh.7**#184 p6:19 and p10:5) '*the secret behind the trick does not impress the court, the performance it is used for is everything*' ... '*whether Dogge uses Teller's method, a technique known only by various holy men of the Himalayas, or even real magic ...is irrelevant*

What a mistake. The Court has no clue. This was the reason that I've requested to have some magicians in the Jury. The method/prop is the most important item. Without having the method one cannot perform at all. Teller never performed in a transparent way because he doesn't know or does not have the <u>method</u> to perform so.

On the other hand, if the Court ordered that the method/prop is irrelevant, there cannot be a reason to forbid defendant to sell the 'irrelevant' prop/method in the Courts next order

### e) Permanent injunction.

Reading plaintiff's latest motion the Court will realize that she was trapped by Teller. Again plaintiff makes a U turn. Now the prop becomes suddenly important. Now he requests the Court for a permanent injunction and to forbid the defendant to sell his prop/method/invention. In the deposition Tellers declares that the method is not the issue (**Exh 5**.p112:12-15 p122:13-24) although he cannot deny that the illusions are different to each other he tries to minimize the differences and states that '*the least important prop is different*'. (**Exh.5** p122:1)

According Tellers statements the performance can be protected with copyright while a prop can only be protected by a patent. (**Exh.5** p100:2-4 & p127:12-16)

The Court should realize that Tellers props are not patented neither the method he uses. The alleged infringement did only happen for a week with a performance on a video having 14 views only.  A permanent injunction should only rule regarding that video since the only alleged infringement happened on and with that video and not regarding the method or prop.

Teller wants the Court to believe that Bakardy's transparent Coca Cola bottle is the 'prop' at issue and calls it the least important prop. Teller is right; the Coca Cola bottle isn't the main prop to perform Bakardy's transparent illusion. Bakardy's method allows the performer to perform the illusion in any transparent bottle or vase even in an ordinary Coca Cola bottle. Whenever Bakardy start selling his invention the customer can freely choose which transparent vase or bottle he would like to use.

Teller is fully aware that Bakardy's method allows a surpassing performance. Teller even requested Bakardy to customize Bakardy's prop to his needs (**Exh.3** p14:8-18)

The Court's order stated that '*the secret behind the trick does not impress the court, the performance it is used for is everything'*.  Also the Court understood that the performance is limited by the prop which is used to perform the illusion.

Defendant is convinced that a cross examination would have showed that the expert witness would agree that there is a huge difference between a non transparent and a transparent illusion. The 'prop' expert knows better than anyone else that the performance is limited by the prop. On cannot drill a hole with a hammer.

More than likely a Jury would notice that Bakardy's prop leads to a performance different from Tellers. Some might probably consider it as a surpassing performance.

This is what Teller noticed. More magical value. That's why he wanted exclusivity on the method and the secret. He even wrote emails to relatives of Bakardy, asking them if they could help him in persuading me to sell my invention exclusively to Teller. He wrote: *'I think his notion of seeing the stem in water might have value to me ...''* **(Exh.2** p3:16-24 TELLER000060)

The Court should not be trapped again, should not make the same mistake by granting Tellers requests.

So many persons are performing the illusion at issue. Using the same rose, the same knife, the same shadow, the same white non transparent vase, the same routine. Probably using a similar method as Teller does. Probably bought from the same manufacturer.

The Court should question why Teller never filed a complaint against the real infringers. Is it because their performance does not surpass Tellers?

Of course Teller can choose the person he wants to sue. But <u>not</u> suing the persons performing exactly the same performance using exactly the same props and method and on the other hand suing the only person in the world who performs a transparent illusion with different props and a different method can at least be called weird.

The Court should realize that there must be another reason than 'infringement' or unfair competition for Tellers complaint.

It looks like Teller can't stand real competition and can't stand to be rejected, what happened when I choose not to be intimidated and not willing to sell my invention exclusively to him on the price he had in mind.

Again, also regarding the permanent injunction, Tellers motion does not show a single evidence. On the contrary his requests are again based on the one sided expertise report full of assumptions, suppositions, hypotheses and predictions. The Court should not focus on a report based on the sixth sense, crystal boll, or witchcraft of Mister Jim Steynmeier. It is not the right base to convict the defendant who did not get the chance to cross-examine the 'expert'; it is violating the defendant's rights.

Therefore the Court should never grant plaintiff's motion for permanent injunction.

### f) Unfair competition.

Indeed Teller recognized competion. After he couldn't buy Bakardy's secret, on the price he had in mind, he started calling it unfair competion. In discovery Teller recognizes that Bakardy is unique. (**Exh.4** p15:11-p16:22 & **Exh.5** p24:14-p26:25 & **Exh.5** p129:18-131:19)  Teller admits that no one, Teller inclusive, ever performed the illusion at issue in a transparent way as performed by Bakardy. So who am I copying?

Bakardy never sold a single 'prop', 'method' or whatever. Bakardy never performed the illusion at issue. Where did the unfair competition take place?  Again in Steynmeier's crystal boll?

To underpin his claim for unfair competion, plaintiff refers to Steinmeyer's statement that ' _if a version of 'Shadows' fell into the hands of a less professional or more careless performer, its performance would be detrimental to Teller's success. It would cease being special and unique in his show, and would lose its value.'_

If.... is the wrong question. The Court should realize that the expert's statement is no more than a speculation that comes too late.  The internet was faster. Anyone can buy or build the prop needed to perform a version of 'shadows'. Many did. Many do!

14

Unfortunately, some of the performers are careless and less professionals. Also Teller is aware that his 40 years old illusion lost his value due to the unprofessional performers **(Exh.3 p8:16-24 & p9:15-22   Exh.4 p15:4-10)** The shadow illusion became a disillusion since it lost its magical value the moment it was unveiled on the internet, not by Bakardy but by others.

Bakardy succeeded to turn the 40 years old disillusion back into an surpassing illusion. Until now, no one knows the secret or the method how to perform the illusion with transparent and removable props.

More than likely one day, Bakardy's method will be revealed by the masked magician, or Penn & Teller, or by a Teller fan on the fast internet. It's a pity.

In the deposition Teller admits that Bakardy never revealed the shadow illusion to anyone. (**Exh.3** p12:17-p13:4 & **Exh.5** p23:17)  That's a fact. Not an assumption.

Neither the plaintiff, nor the Court can blame the defendant for the fast internet showing the secret behind the shadow illusion or for the prop manufacturers selling a prop to perform a version of shadows.

Forbidding the defendant to sell his invention would be unfair to him and unfair to the world. In this world, competion is the most important drive to improve all kinds of products, magic illusions inclusive.   Although, Teller has no competion. He's the greatest. He shakes important hands.

Defendant tries to imagine that one day the non transparent Teller 'prop'  is laying next to the transparent Bakardy 'prop' on the shelf in the magic store. For sale on the same price. Which one will be bought more?  For sure the Teller fan will buy the nostalgic non transparent version. On the other hand when the buyer is looking for the most magical prop he will buy the transparent version.  The competion would be fair.

Of course Teller is free to chose whether and when he wants to sell his prop. Just like the defendant.

15

As far as defendant is aware, at this moment Teller is not selling any DVD's wherein he explains how 'his' shadow illusion works. Neither does the defendant sell DVD's as such. So, there is no (unfair) competion at all.

Teller's complaint and requests are ungrounded and frivolous.

Therefore the Court should not grant plaintiff's requests.

### g) The invoice

I wish plaintiff had the same eager of redacting when he filed the exhibits showing my picture and name right under the favorite gay orientated porn web links of his client. Probably his client wishes the same.

In my country invoices look different. My accountant advises me to ask for all the details since the Belgian tax office will not accept declaration of an invoice as such since redacting the description on an invoice is not allowed.

I can always appreciate a good joke, for instants the Judge's joke about the 'holy men of the Himalayas' in the Courts order. It is impossible for me to study the almost entire black invoice but I noticed that Tratos forgot to redact one detail or description. I can see that he wants me to pay for his holidays abroad. Like I said, I can always appreciate a good joke.

The Courts order has led to presenting plaintiff's invoice. The Order states that the Judge decides that both illusions are 'slightly different or nearly identical'. Well, nearly can mean a lot. This is not a joke:

A man nearly died, because the lightning just missed him he's still alive.

A 72 year old man had sex nearly every day, but had no smile on his face.

The American football team nearly made a goal but they lost and were sent home.

Well, there is still hope that Tratos invoice will be paid, yesterday I nearly won the lottery and nearly paid the invoice even twice. I might have more luck next week.

In plaintiff's last motion plaintiff tries to justify his invoice by blaming the defendant for unnecessarily driving up the costs in this litigation. Just has the plaintiff has the right to file a complaint, the defendant has the right to defend himself.

The price of this litigation was determined by the plaintiff. Due to the actions of the plaintiff  and his reckless filings of exhibits showing a toolbar with shortcuts to gay orientated  porn sites, showing videos and pictures wherein some of the actors do look very young and childish,  people start calling the defendant a pedophile.  Every time defendant asked plaintiff to explain about his intentions, first on the phone, than by email, than in discovery and deposition, he reacted evasive and gave untruthful answers. One day Tellers lawyer even wrote that his office was investigating these websites for another client in another case. Afterwards it turned out that the lawyer was lying. Teller admitted that he took the screenshots on his computer.  This is called suspicious behaving. The FBI is very clear when it comes to suspicious behavior and advises everyone to report it. It's an obligation. Plaintiff is now blaming the defendant for doing what he was advised to do by the FBI. Plaintiff even calls it frivolous and unnecessarily. (#228 p6:26 & p7:27-p8:4)

Although the Court granted plaintiff's motion to strike this serious motion, it looks like the FBI is still investigating the case.

Because it could hinder the FBI in their investigation I do not attach a copy of the report I've filed by the FBI. For the Court's information : the report was filed by the FBI office in Vegas, the FBI headquarters in Washington and I personally handed a copy to an FBI officer in Miami.

If I was Teller, I would not pay my attorney. At the end he was the one who filed the incriminating screenshots and did not protect his client's privacy. Difficult to believe from the best lawyer in the USA, maybe I'm wrong and was it planned that way.

Defendant cannot be blamed for the plaintiff's suspicious misbehaving and reckless filings. Therefore The Court should ignore the falls allegations in plaintiff's motion.

## 4. CONCLUSION

In light of the foregoing defendant requests that this Court denies plaintiff's entire motion.

Sincerely,

Gerard Dogge

Hoevensebaan 2, B2950 Kapellen
Belgium - Europe

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

1  MARK G. TRATOS (Bar No: 1086)
   tratosm@gtlaw.com
2  THOMAS KUMMER (Bar No: 1200)
   kummert@gtlaw.com
3  KARA HENDRICKS (Bar No: 7743)
   hendricksk@gtlaw.com
4  PETER H. AJEMIAN (Bar No: 9491)
   ajemianp@gtlaw.com
5  BETHANY L. RABE (Bar No: 11691)
   rabeb@gtlaw.com
6
7  GREENBERG TRAURIG, LLP
   3773 Howard Hughes Parkway, Suite 400 North
8  Las Vegas, Nevada 89169
   Telephone: (702) 792-3773
9  Facsimile: (702) 792-9002
   *Counsel for Plaintiff*
10

11                    UNITED STATES DISTRICT COURT

12                          DISTRICT OF NEVADA

13

14
   TELLER, an individual,
15                                          Case No. 2:12-cv-00891-JCM-GWF
                 Plaintiff,
16                                          **PLAINTIFF'S RESPONSES TO**
     v.                                     **DEFENDANT'S FIRST SET OF**
17                                          **INTERROGATORIES**
   GERARD DOGGE (P/K/A GERARD
18 BAKARDY), an individual,

19               Defendant.

20

21     TO:  GERARD DOGGE, Defendant

22     Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Teller, by and

23 through his attorneys of record, the law firm of Greenberg Traurig, LLP, hereby responds to

24 Dogge's First Set of Interrogatories as follows.

25     These responses are made solely for the purpose of, and in relation to, this action.

26 Each response is given subject to all appropriate objections (including, but not limited to,

27 objections concerning competency, relevancy, materiality, propriety, and admissibility),

28 which would require the exclusion of any statement contained herein if the request were

1  asked of, or any statement contained herein were made by, a witness present and testifying in

2  court. All such objections and grounds therefore are reserved and may be interposed at the

3  time of trial.

4      The parties on whose behalf the responses are given have not yet completed their

5  investigation of the facts relating to this action, have not yet completed their discovery in this

6  action, and have not yet completed their preparation for trial. Consequently, the following

7  responses are given without prejudice to the responding parties' rights to produce, as

8  discovery continues, subsequently-discovered material.

9      Except for facts explicitly admitted herein, no admission of any nature whatsoever is to

10  be implied or inferred. The fact that any request herein has been responded upon should not

11  be taken as an admission, or a concession, of the existence of any facts set forth or assumed by

12  such request, or that such response constitutes evidence of any fact thus set forth or assumed.

13  All responses must be construed as given on the basis of present recollection.

14                      **INTERROGATORIES**

15  **INTERROGATORY NO. 1:**

16      When, or in which year did you, known as Teller, from the duo Penn & Teller, perform

17  magic in public for the first time?

18  **RESPONSE:**

19      Objection. This interrogatory is vague and ambiguous with respect to the terms

20  "perform magic" and "in public," and is unclear as to whether it seeks information regarding

21  Teller or the duo Penn & Teller. Notwithstanding these objections, Teller first performed

22  magic in public more than four decades ago.

23  **INTERROGATORY NO. 2:**

24      How many times did you perform your magic shows, since then?

25  **RESPONSE:**

26      Objection. This interrogatory incorporates by reference the prior interrogatory and

27  therefore suffers from the same deficiencies. This request is also unclear as to whether it

28  seeks information regarding public performances or all performances, and is vague and

1   ambiguous with respect to the term "magic shows." It is also unduly burdensome, as it would

2   be impossible to count the number of times Teller has performed magic shows.

3   Notwithstanding these objections, Teller has performed magic shows tens of thousands of

4   times in his 40-year career.

5   **INTERROGATORY NO. 3:**

6      When, or in what year did you, known as Teller, from the duo Penn & Teller, perform

7   magic for the first time, revealing magic tricks?

8   **RESPONSE:**

9      Objection. This interrogatory is vague, ambiguous and unintelligible with respect to

10  the phrases "in what year did you know, as Teller" and "perform magic for the first time,

11  revealing magic tricks." This interrogatory is also unclear with respect to whether it seeks

12  information regarding Teller or the duo Penn & Teller, and it assumes that Penn & Teller

13  reveal magic tricks. "As it is unclear what is sought by the interrogatory, no response can be

14  provided". Moreover, as revealing the method by which tricks can be performed may reveal

15  trade secrets, Teller will respond to this request only when the parties have entered into an

16  agreeable confidentiality agreement and protective order.

17  **INTERROGATORY NO. 4:**

18     How many magic tricks did you reveal during your career as a magician?

19  **RESPONSE:**

20     Objection. This interrogatory is vague, ambiguous and unintelligible with respect to

21  the term "reveal," and assumes that Teller reveals magic tricks. "As it is unclear what is

22  sought by the interrogatory, no response can be provided". Moreover, as revealing the

23  method by which tricks can be performed may reveal trade secrets, Teller will respond to this

24  request only when the parties have entered into an agreeable confidentiality agreement and

25  protective order.

26  **INTERROGATORY NO. 5:**

27     How many times did you reveal magic tricks in your career as a magician?

28  ///

1  RESPONSE:

2      Objection. This interrogatory is vague, ambiguous and unintelligible with respect to

3  the terms "reveal" and "times" and assumes that Teller reveals magic tricks. "As it is unclear

4  what is sought by the interrogatory, no response can be provided". Moreover, as revealing

5  the method by which tricks can be performed may reveal trade secrets, Teller will respond to

6  this request only when the parties have entered into an agreeable confidentiality agreement

7  and protective order.

8  INTERROGATORY NO. 6:

9      How much did you pay for developing, creating, and constructing your act "Sawing a

10 lady in half" as known in your show?

11 RESPONSE:

12     Objection. This interrogatory is compound and includes subparts. This interrogatory

13 also calls for proprietary and trade secret information. Notwithstanding these objections,

14 Teller will respond to this interrogatory upon entry of a mutually-agreed-upon protective

15 order. Moreover, the cost of developing, creating and constructing illusions is not reasonably

16 calculated to lead to discoverable information. Teller will respond to this interrogatory when

17 an agreeable confidentiality agreement and protective order is agreed to between the parties.

18 INTERROGATORY NO. 7:

19     How much did you pay for developing, creating, and constructing your act "Money to

20 goldfish" as known in your show?

21 RESPONSE:

22     Objection. This interrogatory is compound and includes subparts. This interrogatory

23 also calls for proprietary and trade secret information.

24 INTERROGATORY NO. 8:

25     How much did you pay for developing, creating, and constructing your act "Shadows"

26 as known in your show?

27 RESPONSE:

28     Objection. This interrogatory is compound and includes subparts. This interrogatory

1  also calls for proprietary and trade secret information.

2  **INTERROGATORY NO. 9:**

3      How much did you pay for developing, creating, and constructing your act "Cups and

4  Balls" as known in your show?

5  **RESPONSE:**

6      Objection. This interrogatory is compound and includes subparts. This interrogatory

7  also calls for proprietary and trade secret information.

8  **INTERROGATORY NO. 10:**

9      How many seats are there in the 'Penn & Teller Theatre' at the Rio Hotel?

10  **RESPONSE:**

11      Objection. This information is equally available to the defendant as it is to the plaintiff,

12  as it is publically available. Notwithstanding this objection, on information and belief, there

13  are approximately 1450 seats in the Penn & Teller Theater.

14  **INTERROGATORY NO. 11:**

15      What's the price for a ticket for the 'Penn & Teller show' in that theatre?

16  **RESPONSE:**

17      Objection. This information is equally available to the defendant as it is to the plaintiff,

18  as it is publically available. Notwithstanding this objection, the pricing of seats ranges

19  between USD $75.00 and $95.00.

20  **INTERROGATORY NO. 12:**

21      How much profit did you make in your career, performing your magic shows, known

22  as they are?

23  **RESPONSE:**

24      Objection. This interrogatory is vague, ambiguous and unintelligible with respect to

25  the term "profit," "career," and the phrase "performing your magic shows." Further, this

26  interrogatory is unduly burdensome and requires the disclosure of proprietary business and

27  financial information. Notwithstanding these objections, Teller will consider responding to

28  this interrogatory upon entry of a mutually-agreed-upon confidentiality agreement and

1  protective order.

2  **INTERROGATORY NO. 13:**

3      How is it possible that you were aware of Bakardy's YouTube video 'The Rose and her

4  Shadow', that fast? Almost immediately after it was posted?

5  **RESPONSE:**

6      Objection.   This interrogatory is not reasonably calculated to lead to admissible

7  evidence.  Moreover, the interrogatory is vague, ambiguous, and unintelligible regarding "that

8  fact".  Notwithstanding this objection, Teller was notified of the video by an acquaintance who

9  saw the video posted on YouTube.

10  **INTERROGATORY NO. 14:**

11      Why did you offer to buy Bakardy's trick, while you are stating in your complaint that

12  it is a copy from 'shadows'.  Everybody says the 'original is always better than a copy'.  In

13  other words, why did you offer to pay $15,000, then $40,000, and then negotiated to

14  $125,000 for no more than a 'copy'?

15  **RESPONSE:**

16      Objection.   This interrogatory is not reasonably calculated to lead to admissible

17  evidence, in that Teller's motives for negotiating a pre-litigation settlement have no bearing

18  upon this case.  Moreover, the interrogatory is an intentional misstatement of fact and is thus

19  objectionable and deceptive.  Further, this interrogatory is outside the scope of permissible

20  discovery, as settlement negotiations between parties are not admissible pursuant to Federal

21  Rule of Evidence 408.   This interrogatory is further compound and contains subparts.

22  Notwithstanding the objections, Teller did not offer to buy Bakardy's trick, instead he

23  engaged in settlement efforts to resolve the dispute created by Bakardy threating to sell

24  Teller's signature illusion to others.

25  **INTERROGATORY NO. 15:**

26      Is it, just as defendant's intention, also your intention to bring up the truth in this

27  litigation, and do you honestly, do everything possible to achieve this?

28  ///

1   RESPONSE:

2       Objection. This interrogatory is vague, ambiguous and unintelligible. It is a self-

3   serving statement by the defendant, not inquiry. Notwithstanding this objection, Teller

4   intends to pursue the complete truth in this litigation and do everything possible to achieve a

5   fair and just result for the defendant's infringing conduct and blackmail attempts.

6   INTERROGATORY NO. 16:

7       During the proceedings you've filed different motions to 'seal' exhibits from the

8   defendant, containing your own emails/letters offering to buy exclusivity on Bakardy's trick.

9   Even when defendant re-filed the exhibits with the 'sensible' parts redacted, such as the

10  amounts you offered, you still insisted on the court to 'seal' these exhibits. Explain in your

11  own words why you did this and what's the reason for this?

12  RESPONSE:

13      Objection. This interrogatory is beyond the scope of permissible discovery, as it does

14  not seek information that may lead to the discovery of admissible evidence, but instead seeks

15  litigation strategy information and is a self-serving statement intended to mislead of the facts.

16  Further, any response to this interrogatory would necessarily implicate attorney-client

17  privileged communications and attorney-work product and privilege concerns and this

18  interrogatory is therefore inappropriate. Further, the defendant has attempted to use the

19  litigation to malign, embarrass and harass the plaintiff within the magic community

20  INTERROGATORY NO. 17:

21      Explain the reason for losing your temper in a 'negotiation' phone call, and why you

22  started to shout and swear, calling names to the defendant.

23  RESPONSE:

24      Objection. This interrogatory is beyond the scope of permissible discovery, as it does

25  not seek information that may lead to the discovery of admissible evidence. The

26  interrogatory is an intentional misstatement of the facts and is not intended as an inquiry but

27  as a prejudicial statement intended to malign, embarrass and harass the plaintiff. It is also

28  vague, ambiguous and unintelligible and misleading with respect to the timing of the phone

1   call and the terms "temper", "shout" and "swear."  Further, settlement negotiations are not

2   admissible pursuant to Federal Rule of Evidence 408.  This interrogatory is also compound

3   and contains subparts.  Further, the defendant has attempted to use the litigation to malign,

4   embarrass and harass the plaintiff within the magic community

5   <u>INTERROGATORY NO. 18:</u>

6         Explain why you never apologized for losing your temper in a 'negotiation' phone call,

7   and why you started to shout and swear, calling names to the defendant.  Why did you never

8   apologized [sic] for your bad behaviour?

9   <u>RESPONSE:</u>

10         Objection.  This interrogatory is beyond the scope of permissible discovery, as it does

11   not seek information that may lead to the discovery of admissible evidence.       The

12   interrogatory is an intentional misstatement of the facts and is not intended as an inquiry but

13   as a prejudicial statement intended to malign, embarrass and harass.  It is also vague,

14   ambiguous and unintelligible and misleading with respect to the timing of the phone call and

15   the terms "temper", "shout" and "swear."  Further, settlement negotiations are not admissible

16   pursuant to Federal Rule of Evidence 408.  This interrogatory is also compound and contains

17   subparts.  Further, the defendant has attempted to use the litigation to malign, embarrass

18   and harass the plaintiff within the magic community

19   <u>INTERROGATORY NO. 19:</u>

20         Identify all magic tricks created and copyrighted by you.

21   <u>RESPONSE:</u>

22         Objection.  This request is unduly burdensome and is intended to seek proprietary

23   information beyond the reasonable and permissive scope of discovery.  Teller will respond

24   further when a confidentiality agreement and protective order has been entered in this

25   matter.

26         In addition to Shadows, Teller holds the following copyright registrations:

27      •   Hiding the Elephant, Reg. No. TX0007393989

28      •   Penn & Teller Get Killed, Reg. No. V2339P483

- Penn & Teller's Cruel Tricks for Dear Friends, Reg. No. TX0002817946
- Penn & Teller's Cruel Tricks for Dear Friends, Reg. No. VA0000399170
- Penn & Teller's How to Play in Traffic, Reg. No. TX0004862302
- Play Dead, Reg. No. PAu003653870
- Mrs. Lonsberry's Evening of Horror, Reg. No. PA0000118290

**INTERROGATORY NO. 20:**

Why did you never inform 'the world' about your copyrights?

**RESPONSE:**

Objection. This interrogatory is vague and ambiguous as to "the world" and assumes that Teller did not inform 'the world' about his copyrights. Notwithstanding these objections, Teller denies that he "never inform[ed] 'the world' about [his] copyrights" and therefore cannot respond to this interrogatory. Moreover, US copyright registrations are a matter of public record and were and are available to the defendant as easily as the plaintiff.

**INTERROGATORY NO. 21:**

Why did you refuse to inform the defendant when he asked for the details of your copyright on 'shadows'?

**RESPONSE:**

Objection. This interrogatory is vague and ambiguous with respect to "details of your copyright" and "refuse to inform." Teller denies that he refused to inform the defendant about the "details of his copyright" and therefore cannot respond to this interrogatory. Moreover, US copyright registrations are a matter of public record and were and are available to the defendant as easily as the plaintiff.

**INTERROGATORY NO. 22:**

Identify exhibit 3 used in your original complaint, filed on 11.04.2012.

**RESPONSE:**

Objection. This interrogatory is not relevant to the pending copyright action, nor is it reasonably calculated to lead to the discovery of admissible evidence in the same. Instead, this request seeks information you presumably believe is related to the claims in the Belgium

1   defamation litigation, and is accordingly outside the scope of the Federal Rules.

2   Notwithstanding these objections, Exhibit 3 is a screenshot consisting of three pages of

3   Defendant's infringing YouTube video, captured on or about March 30, 2012, on a computer

4   owned by the company Buggs & Rudy Discount Corporation, a Nevada Corporation, posted by

5   the defendant in an effort to sell his infringing illusion.

6   **INTERROGATORY NO. 23:**

7       Identify exhibit 3 used in your complaint, re-filed on 25.04.2012.

8   **RESPONSE:**

9       Objection. This interrogatory is not relevant to the pending copyright action, nor is it

10  reasonably calculated to lead to the discovery of admissible evidence in the same. Instead,

11  this request seeks information you presumably believe is related to the claims in the Belgium

12  defamation litigation, and is accordingly outside the scope of the Federal Rules.

13  Notwithstanding these objections, Exhibit 3 is a screenshot of Defendant's infringing YouTube

14  video, posted by defendant in an effort to sell his infringing illusion.

15  **INTERROGATORY NO. 24:**

16      Who is the owner/user of the computer where the screenshots filed on 04.11.2012, in

17  exhibit 3 are taken from?

18  **RESPONSE:**

19      Objection. This interrogatory is not relevant to the pending copyright action, nor is it

20  reasonably calculated to lead to the discovery of admissible evidence in the same. Instead,

21  this request seeks information you presumably believe is related to the claims in the Belgium

22  defamation litigation, and is accordingly outside the scope of the Federal Rules.

23  **INTERROGATORY NO. 25:**

24      Where is this computer now?

25  **RESPONSE:**

26      Objection. This interrogatory is not relevant to the pending copyright action, nor is it

27  reasonably calculated to lead to the discovery of admissible evidence in the same. Instead,

28  this request seeks information you presumably believe is related to the claims in the Belgium

1  defamation litigation, and is accordingly outside the scope of the Federal Rules.

2  **INTERROGATORY NO. 26:**

3     Who took the screenshots, among exhibit 3 filed on 04.11.2012.

4  **RESPONSE:**

5     Pursuant to the Federal Rules of Civil Procedure, a party is permitted 25

6  interrogatories, including all discrete subparts, without leave of court. *See* Rule 33(a)(1). As

7  this interrogatory exceeds the 25-interrogatory limit designated in the Federal Rules, no

8  response is required.

9

10  **INTERROGATORY NO. 27:**

11     Explain in your own words the motivation for showing several web links referring to

12  'hard porn for gay' in 2 screenshots used as exhibit 3 in a litigation about alleged copyright

13  infringement.

14  **RESPONSE:**

15     Pursuant to the Federal Rules of Civil Procedure, a party is permitted 25

16  interrogatories, including all discrete subparts, without leave of court. *See* Rule 33(a)(1). As

17  this interrogatory exceeds the 25-interrogatory limit designated in the Federal Rules, no

18  response is required.

19  **INTERROGATORY NO. 28:**

20     Explain why, after defendant asked you several times the reason for publishing

21  screenshots with a toolbar containing porn web links for gay [sic] such as 'mantube',

22  'CFSelect', 'corbin', '2long', you chose to alter the exhibits or legal evidences in this case,

23  and/or why you did not choose the legal option, redacting the 'sensible' parts on the exhibits?

24  **RESPONSE:**

25     Pursuant to the Federal Rules of Civil Procedure, a party is permitted 25

26  interrogatories, including all discrete subparts, without leave of court. *See* Rule 33(a)(1). As

27  this interrogatory exceeds the 25-interrogatory limit designated in the Federal Rules, no

28  response is required.

**INTERROGATORY NO. 29:**

Explain why, after defendant asked you several times the reason for these humiliating actions, you chose to alter the exhibits or legal evidences in this case, and why you did not choose the legal option, sealing the exhibits?

**RESPONSE:**

Pursuant to the Federal Rules of Civil Procedure, a party is permitted 25 interrogatories, including all discrete subparts, without leave of court. *See* Rule 33(a)(1). As this interrogatory exceeds the 25-interrogatory limit designated in the Federal Rules, no response is required.

**INTERROGATORY NO. 30:**

Explain why you told the defendant that there was no actionable bases for objecting to the documents filed in Court 24th April 2012, whilst you re-filed the altered screenshots again that same day?

**RESPONSE:**

Pursuant to the Federal Rules of Civil Procedure, a party is permitted 25 interrogatories, including all discrete subparts, without leave of court. *See* Rule 33(a)(1). As this interrogatory exceeds the 25-interrogatory limit designated in the Federal Rules, no response is required.

**INTERROGATORY NO. 31:**

Knowing that the screenshots with the porn web links for gay's [sic] were downloaded and seen by millions on several internet forums and knowing that these screenshots are not only associating the defendant with porn for gay's [sic], but that they will shock the parents when they find their 'nosy' kids doing some research on the internet, investigating the favourite web links of their idol. Identify the actions you took to limit or stop both, the humiliation for the defendant and the harassment for the many families with kids surfing on the internet.

///

**RESPONSE:**

Pursuant to the Federal Rules of Civil Procedure, a party is permitted 25 interrogatories, including all discrete subparts, without leave of court. *See* Rule 33(a)(1). As this interrogatory exceeds the 25-interrogatory limit designated in the Federal Rules, no response is required.

**INTERROGATORY NO. 32:**

Identify all persons who have assisted in answering these interrogatories.

**RESPONSE:**

Pursuant to the Federal Rules of Civil Procedure, a party is permitted 25 interrogatories, including all discrete subparts, without leave of court. *See* Rule 33(a)(1). As this interrogatory exceeds the 25-interrogatory limit designated in the Federal Rules, no response is required.

Dated this 13th day of March, 2013.

GREENBERG TRAURIG, LLP

MARK G. TRATOS (Bar No: 1086)
THOMAS KUMMER (Bar No: 1200)
KARA HENDRICKS (Bar No: 7743)
PETER H. AJEMIAN (Bar No: 9491)
BETHANY L. RABE (Bar No: 11691)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES** on:

Gerard Dogge
Abtsdreef 10/bus1
B2940 Stabroek
Belgium – Europe
Gerard-Bakardy@hotmail.com
Cell: 011.34.606.35.65.04

Gerard Dogge
Hoevensebaan 2
2950 Kapellen
Belgium – Europe

by causing a full, true, and correct copy thereof to be sent by the following indicated method or methods, on the date set forth below:

☒ by mailing in a sealed, first class postage-prepaid envelop, addressed to the last-known office address of the attorney, and deposited with the United States Postal Service in Las Vegas, Nevada.

☐ by hand delivery.

☐ by sending via overnight courier in a sealed envelope.

☐ by faxing to the attorney at the fax number that is the last-known fax number.

☒ by electronic mail to the last known e-mail address.

DATED this _12th_ day of March, 2013.

_____
An employee of Greenberg Traurig, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

1   MARK G. TRATOS (Bar No: 1086)
    tratosm@gtlaw.com
2   THOMAS KUMMER (Bar No: 1200)
    kummert@gtlaw.com
3   KARA HENDRICKS (Bar No: 7743)
    hendricksk@gtlaw.com
4   PETER H. AJEMIAN (Bar No: 9491)
    ajemianp@gtlaw.com
5   BETHANY L. RABE (Bar No: 11691)
    rabeb@gtlaw.com
6   GREENBERG TRAURIG, LLP
    3773 Howard Hughes Parkway, Suite 400 North
7   Las Vegas, Nevada 89169
    Telephone: (702) 792-3773
8   Facsimile: (702) 792-9002
    *Counsel for Plaintiff*

10

11

12         UNITED STATES DISTRICT COURT

13            DISTRICT OF NEVADA

14

15   TELLER, an individual,           Case No. 2:12-cv-00891-JCM-GWF

        Plaintiff,           **PLAINTIFF'S RESPONSES TO**
16                         **DEFENDANT'S FIRST SET OF REQUESTS**
17   v.                      **TO PLAINTIFF FOR PRODUCTION OF**
    GERARD DOGGE (P/K/A GERARD       **DOCUMENTS**
18   BAKARDY), an individual,

19         Defendant.

20

21     TO: GERARD DOGGE, Defendant

22     Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Teller, by

23 and through his attorneys of record, the law firm of Greenberg Traurig, LLP, hereby responds

24 to Dogge's First Set of Requests for Production of Documents as follows:

25         GENERAL QUALIFICATIONS AND OBJECTIONS

26     1.   Plaintiff's responses below are made without waiver of, and with express

27 preservation of: (a) all questions as to competency, relevancy, materiality, necessity, privilege,

28 and admissibility of the response and the subject matter thereof as evidence for any purpose

1   in further proceedings in this action and in any other action, (b) the right to object to the use
2   of any such responses, or the subject matter thereof, on any ground in any further
3   proceedings in this action and in any other action, (c) the right to object on any ground at any
4   time to a demand or request for further response to these or any other Document Requests or
5   other discovery proceedings involving or relating to the subject matter of the Document
6   Requests herein responded to; and (d) the right at any time to revise, correct, add to,
7   supplement, or clarify any of the responses contained herein.

8       2.   As a convenience to and in cooperation with Defendant, to avoid unnecessary
9   disputes, through possible inadvertence, and/or for other proper reasons, Plaintiff may
10  produce documents in response to requests to which Plaintiff has objections and
11  qualifications (including on the grounds of privilege). Any such response or production by
12  Plaintiff is not intended to constitute and shall not be deemed to constitute a waiver of any
13  type, nature or degree of these General Qualifications and Objections or any other
14  qualification, objection, or privilege which Plaintiff has or may have available to him with
15  respect to these matters.

16      3.   Plaintiff objects to Defendant's requests to the extent that they seek information
17  that is protected by any absolute or qualified privilege or exemption, including but not limited
18  to, the attorney client privilege, the attorney work-product doctrine, and the consulting
19  expert exemption.

20      4.   Responses will be made on the basis of information and writings available to and
21  located by Plaintiff upon reasonable investigation.   There may be other and further
22  information respecting the requests propounded by Defendant of which Plaintiff, despite his
23  reasonable investigation, is presently unaware.

24      5.   No incidental or implied admissions will be made by the answers. The fact that
25  Plaintiff may respond or object to any request, or any part thereof, shall not be deemed an
26  admission that Plaintiff accepts or admits the existence of any fact set forth or assumed by
27  such request, or that such answer constitutes admissible evidence or that any document
28  responsive to the request exists. The statement that "all such documents shall be produced"

1  means that if the Plaintiff finds unprivileged relevant documents in his possession, custody or

2  control, such documents will be produced.

3      6.  Plaintiff objects to any request to the extent that it would impose upon Plaintiff

4  greater duties than are set forth under the Federal Rules of Civil Procedure.

5      7.  Each of these General Qualifications and Objections is, to the extent applicable,

6  raised and asserted with respect to each of the Document Requests below and the recitation

7  of specific objections and qualifications in the responses below or the failure to cite a specific

8  objection or qualification or refer to any of these General Qualifications and Objections is not

9  intended to constitute and shall not be construed or deemed to indicate that the General

10  Qualifications and Objections are not being asserted as to each particular Document Request.

11      8.  All production of original documents shall occur at the offices of Plaintiff's counsel

12  in Las Vegas, Nevada upon reasonable coordination.

13      9.  As discovery is just beginning and is ongoing, Plaintiff reserves the right to

14  supplement this response as additional information becomes available.

15                    <u>**REQUESTS FOR PRODUCTION OF DOCUMENTS**</u>

16  <u>**REQUEST NO. 1:**</u>

17      Produce complete and accurate copies of any and all correspondence between Plaintiff

18  and Guther Guinee – Escamoteur magic magazine in Belgium.

19  <u>**RESPONSE:**</u>

20      Objection.  This request is overbroad, as it is not limited to time or in scope, and

21  encompasses documents well outside the realm of reasonable discovery.  This request

22  additionally demands documents that are proprietary or confidential.  Notwithstanding said

23  objections, please see Bates Nos. TELLER000039 – TELLER000068, attached hereto.    As

24  discovery is ongoing, Teller reserves the right to supplement this response.

25  <u>**REQUEST NO. 2:**</u>

26      Produce complete and accurate copies of any and all documents relating to the effort

27  made by the plaintiff to limit or stop the dissemination of the exhibits/screenshots,

28  associating the defendant with hard core porn for gays, on the internet, press or media in

1  general. Notwithstanding the objection, attached hereto as Bates Nos. TELLER000069 –

2  TELLER000071 is a copy of the revised Exhibit Three (3) filed with the United States Federal

3  District Court.

4  **RESPONSE:**

5      Objection.  This request is not relevant to the pending copyright action, nor is it

6  reasonably calculated to lead to the discovery of admissible evidence in the same.  Instead,

7  this request seeks information you presumably believe is related to the claims in the Belgium

8  defamation litigation, and is accordingly outside the scope of the Federal Rules.

9  **REQUEST NO. 3:**

10     Produce an accurate copy from the black/white picture used in your video on

11  YouTube, "shadows," showing (the much younger) Teller with a knife, a flower and shadow.

12  **RESPONSE:**

13     Objection.  This request is beyond the scope of discovery, as it is not reasonably

14  calculated to lead to the discovery of admissible evidence.  Further, this image is publically

15  available as part of the YouTube video to which Defendant refers, the article in Esquire

16  magazine dated September 17, 2012, and elsewhere on the internet.  Notwithstanding these

17  objections, please see Bates No. TELLER 000072, attached hereto.

18  **REQUEST NO. 4:**

19     Produce copies of any and all Documents that relate to or memorialize

20  communications to and from any potential witnesses in this case.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1 | **RESPONSE:**

2      Please see Bates Nos. TELLER000006-000026 and TELLER000030, attached hereto.

3 Discovery is ongoing, and Teller reserves the right to supplement this response as the action

4 proceeds.

5      Dated this ___ day of March, 2013.

6

7                              GREENBERG TRAURIG, LLP

8                              MARK G. TRATOS (Bar No: 1086)

9                              THOMAS KUMMER (Bar No: 1200)
KARA HENDRICKS (Bar No: 7743)

10                              PETER H. AJEMIAN (Bar No: 9491)
BETHANY L. RABE (Bar No: 11691)

11                              3773 Howard Hughes Parkway
Suite 400 North

12                              Las Vegas, Nevada 89169
*Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that I served the foregoing PLAINTIFF'S RESPONSES TO

3  DEFENDANT'S FIRST SET OF REQUESTS TO PLAINTIFF FOR PRODUCTION OF

4  DOCUMENTS on:

5      Gerard Dogge
       Abtsdreef 10/bus1
6      B2940 Stabroek
       Belgium – Europe
7      Gerard-Bakardy@hotmail.com
       Cell: 011.34.606.35.65.04
8
       Gerard Dogge
9      Hoevensebaan 2
       2950 Kapellen
10     Belgium – Europe

11     by causing a full, true, and correct copy thereof to be sent by the following indicated

12  method or methods, on the date set forth below:

13     ☒  by mailing in a sealed, first class postage-prepaid envelop, addressed to the last-

14         known office address of the attorney, and deposited with the United States Postal

15         Service in Las Vegas, Nevada.

16     ☐  by hand delivery.

17     ☐  by sending via overnight courier in a sealed envelope.

18     ☐  by faxing to the attorney at the fax number that is the last-known fax number.

19     ☒  by electronic mail to the last known e-mail address.

20

21     DATED this /6 day of March, 2013.

22

23     _____

24     An employee of Greenberg Traurig, LLP

25

26

27

28

**REDACTED**

**From:** Teller <███████████.com>
**Subject: Question from Teller of Penn & Teller**
**Date:** March 31, 2012 4:00:02 PM PDT
**To:** gunther.guinee@█████████

**REDACTED**

Dear Mr. Guince,

This is from Teller of Penn & Teller in Las Vegas. Our mutual acquaintance Jackey Kahan suggested I ask your advice. I do hope you might be willing to help.

I am in discussions with a magician/musician named Gerard Bakardy on a matter of delicate business, hinging on ethics and requiring all parties to behave honorably. We've had considerable email communication and two long phone calls. But I do not speak the languages he's most fluent in, and he struggles a bit with English. So it's difficult to read his character from what we've said to one another.

Would you be willing to give me your frank opinion? Do you know Mr. Bakardy, and, if so, do your believe he's a man on I can rely on for integrity, ethics, and honorable character?

Thanks,

TELLER

Begin forwarded message:

**From: Gunther Guinee <█████████.com>**
**Subject: Re: Question from Teller of Penn & Teller**
**Date: April 1, 2012 1:21:42 AM PDT**
**To: Teller <█████████.com>**

Hi Teller,

I am quite busy today and have to leave at this very moment for two shows, but I will get back to you tomorrow with all the information and help I can provide.

Bye for now

Gunther

*Guinelli*
**Goochelaar - illusionist**

██████████

**www.guinelli.com**

██████████

Op 1-apr.-2012, om 01:00 heeft Teller het volgende geschreven:

**REDACTED**

Dear Mr. Guinee,

This is from Teller of Penn & Teller in Las Vegas. Our mutual acquaintance Jackey Kahan suggested I ask your advice. I do hope you might be willing to help.

I am in discussions with a magician/musician named Gerard Bakardy on a matter of delicate business, hinging on ethics and requiring all parties to behave honorably. We've had considerable email communication and two long phone calls. But I do not speak the languages he's most fluent in, and he struggles a bit with English. So it's difficult to read his character from what we've said to one another.

Would you be willing to give me your frank opinion? Do you know Mr. Bakardy and, if so, do your believe he's a man on I can rely on for integrity, ethics, and honorable character?

Thanks,

TELLER


Begin forwarded message:

**From: Teller <**▮▮▮▮▮▮▮▮▮▮**.com>**
**Subject: Re: Question from Teller of Penn & Teller**
**Date: April 1, 2012 1:25:47 AM PDT**
**To: Gunther Guinee <**▮▮▮▮▮▮**com>**

Thank you so much, Gunther.

On Apr 1, 2012, at 1:21 AM, Gunther Guinee wrote:


Hi Teller,

I am quite busy today and have to leave at this very moment for two shows, but I will get back to you tomorrow with all the information and help I can provide.

Bye for now

Gunther

**REDACTED**

Gunther Guinee gunther.guinee@█████ He is the publisher of Escamoteur, a Flemish magazine.
Maybe he'll be able to help you too.
If I can help somehow let me know !

Hope all is well with you guys !
Jacky

On Fri, Mar 30, 2012 at 11:31 AM, <maxmaven@████████ wrote:
Dear Flip, Jacky and Rafael:

I have just received a message from Teller, who has learned that a magician named Gerard Bakardy has stolen his wonderful routine wherein he takes a knife and "cuts" the shadow of a flower, causing leaves and petals of the real flower to fall off. If you have seen him perform this, you know that it is a very special piece of magic. Also, he has been doing this routine for more than thirty years, and there is no question that it is his original work. And now, Bakardy plans to sell this routine!

Apparently, Bakardy is Belgian, and currently lives in the Canary Islands. Do you know him, or know about him? Teller is understandably concerned, and would like to stop this crime. If you have any information that could help, please let me (or Teller) know. Also, if you hear that he is trying to advertise in one of the Belgian or Dutch magic magazines, it would be useful to prevent it.

I hope all is well with all of you.

Regards,

Max

Begin forwarded message:

**From: Teller <**████████**com>**
**Subject: Re: Question from Teller of Penn & Teller**
**Date:** April 1, 2012 1:51:24 AM PDT
**To: Gunther Guinee <**████████**om>**

Also, Gunther, if you'd prefer to do this by phone, just let me know the best time to call.  I'm available much of the day tomorrow from about 11:00 -17:00 Vegas time (I believe that's 20:00 -2:00 Belgian time).

On Apr 1, 2012, at 1:21 AM, Gunther Guinee wrote:

Hi Teller,

I am quite busy today and have to leave at this very moment for two shows, but I will get back to you tomorrow with all the information and help I can provide.

Bye for now

Gunther

*Guinelli*
**Goochelaar - illusionist**



**www.guinelli.com**

Op 1-apr.-2012, om 01:00 heeft Teller het volgende geschreven:

Dear Mr. Guinee,

This is from Teller of Penn & Teller in Las Vegas. Our mutual acquaintance Jackey Kahan suggested I ask your advice. I do hope you might be willing to help.

I am in discussions with a magician/musician named Gerard Bakardy on a matter of delicate business, hinging on ethics and requiring all parties to behave honorably. We've had considerable email communication and two long phone calls. But I do not speak the languages he's most fluent in, and he struggles a bit with English. So it's difficult to read his character from what we've said to one another.

Would you be willing to give me your frank opinion? Do you know Mr. Bakardy and, if so, do your believe he's a man on I can rely on for integrity, ethics, and honorable character?

Thanks,

TELLER

Begin forwarded message:

**From:** Gunther Guinee < ████████ com>
**Subject: Re: Question from Teller of Penn & Teller**
**Date:** April 1, 2012 8:35:57 AM PDT

REDACTED

**To: Teller <▬▬▬▬▬com>**

Dear Mr. Teller,
Hello again,

Tough question since I don't really 'know' the man very well..I have met and spoken to him a couple of times and he is a Belgian musician/magician who used to combine music and magic - together with his wife - in hotels in Spain, where they also live most of the time.

He was introduced to me a while ago by a befriended magician when he visited Belgium again. He told me he was getting more and more into magic (he also subscribed to my magic magazine 'Escamoteur', that I publish in Holland and Belgium) and visited some magic shops. That was all that I had heard from him...until recently...

A couple of weeks ago he asked if he could pay me a visit to show me something 'interesting'...He told me he had come up with something 'strong' he wanted to commercialize and he wanted to hear my opinion on this. We arranged a meeting and he showed me the 'rose and her shadow'. I told him I was impressed by the craftsmanship and the technology he came up with, but that I was strongly concerned about the ethics since I immediately recognized your signature effect / routine.

He knew about that but he was (and is) convinced that he has found his 'own way' to achieve this effect and that he has importantly improved the routine by using a glass bottle filled with water that can be emptied at the end. I concluded our conversation by saying that - whatever secret or method he was using and how clever that might be - this has nothing to do with the fact of copying an existing act of a fellow magician, famous or not. And that's something you just don't do. I told him also, if he would have used this technique to - let's say - make the balls fall from a Christmas-tree, the story would be completely different.

So my frank opinion: I don't think he's a bad person...rather a hobbyist who was strongly impressed by your routine and since it was nowhere available on the magic market, he 'invented' his own method. He now seems very excited and satisfied with the result and the 'improvements' he claims to have made...even so much that he decided to start producing and selling it.

That's about all I can say on this matter, a delicate situation in which I hope you find a good solution.

If I can be of any further help, don't hesitate to contact me.

Gunther

*Guinelli*
**Goochelaar - illusionist**
▬▬▬▬▬
www.guinelli.com
▬▬▬▬com

**REDACTED**

Op 1-apr.-2012, om 01:00 heeft Teller het volgende geschreven:

Dear Mr. Guinee,

This is from Teller of Penn & Teller in Las Vegas. Our mutual acquaintance Jackey Kahan suggested I ask your advice. I do hope you might be willing to help.

I am in discussions with a magician/musician named Gerard Bakardy on a matter of delicate business, hinging on ethics and requiring all parties to behave honorably. We've had considerable email communication and two long phone calls. But I do not speak the languages he's most fluent in, and he struggles a bit with English. So it's difficult to read his character from what we've said to one another.

Would you be willing to give me your frank opinion? Do you know Mr. Bakardy and, if so, do your believe he's a man on I can rely on for integrity, ethics, and honorable character?

Thanks,

TELLER


Begin forwarded message:

**From: Teller** ◀━━━━━━━━━━**com>**
**Subject: Re: Question from Teller of Penn & Teller**
**Date:** April 1, 2012 11:16:32 AM PDT
**To:** Gunther Guinee ◀━━━━━━━━**om>**

Thanks very much for this, Gunther. I greatly appreciate your and ethical attitude.

As you might imagine, this situation is profoundly troubling and heartbreaking for me. This is a very personal piece, my original signature piece for my entire career. So there's both a business and a personal concern here.

Gratefully,

TELLER

On Apr 1, 2012, at 8:35 AM, Gunther Guinee wrote:


Dear Mr. Teller,

**REDACTED**

**From: Teller <██████████.com>**
**Subject: Question**
**Date: April 2, 2012 11:08:30 PM PDT**
**To: Gunther Guinee <██████████be>**

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

Begin forwarded message:

**From: Gunther Guinee ██████████com>**
**Subject: Re: Question**
**Date: April 2, 2012 11:20:51 PM PDT**
**To: Teller <██████████.com>**

I'm afraid not...he asked me to send his magazines to his Belgian friend where he would pick them up every time he visited Belgium...

They do have a website with more information, don't know if you have seen that already: http://www.losdosdeamberes.com

*Guinelli*
Goochelaar - illusionist
██████████
www.guinelli.com
██████████om

Op 3-apr.-2012, om 08:08 heeft Teller het volgende geschreven:

**REDACTED**

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

Begin forwarded message:

**From: Teller** ████████████com>
**Subject: Re: Question**
**Date: April 3, 2012 12:33:34 AM PDT**
**To: Gunther Guinee <**████████████com>

Thank you very much. I had not seen this.

On Apr 2, 2012, at 11:20 PM, Gunther Guinee wrote:

I'm afraid not...he asked me to send his magazines to his Belgian friend where
he would pick them up every time he visited Belgium...

They do have a website with more information, don't know if you have seen
that already: http://www.losdosdeamberes.com

*Guinelli*
**Goochelaar - illusionist**
████████████
**www.guinelli.com**
████████████com

Op 3-apr.-2012, om 08:08 heeft Teller het volgende geschreven:

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

Begin forwarded message:

**From:** Gunther Guinee ████████.com>
**Subject: Re: Question**
**Date:** April 3, 2012 12:50:35 AM PDT
**To:** Teller ████████.com>

I just discovered his real name is Gerard Dogge...I guess you can track down his address via his telephone number in Fuertaventura (Spain) mentioned on the site 0034 - 606.35.65.04

*Guinelli*
Goochelaar - illusionist
████████
www.guinelli.com
████████.om

Op 3-apr.-2012, om 09:33 heeft Teller het volgende geschreven:

Thank you very much. I had not seen this.

On Apr 2, 2012, at 11:20 PM, Gunther Guinee wrote:

I'm afraid not...he asked me to send his magazines to his Belgian friend where he would pick them up every time he visited Belgium...

They do have a website with more information, don't know if you have seen that already: http://www.losdosdeamberes.com

REDACTED

*Guinelli*
Goochelaar - illusionist

██████████████████

www.guinelli.com
█████████████.com

Op 3-apr.-2012, om 08:08 heeft Teller het volgende geschreven:

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

Begin forwarded message:

**From:** Teller <████████████.com>
**Subject:** Fwd: Question
**Date:** April 3, 2012 12:58:40 AM PDT
**To:** Glenn Alai <████████████.com>, Mark Tratos
<TratosM@gtlaw.com>

Our good friend in Belgium helps us track him down.

Begin forwarded message:

**From:** Gunther Guinee <████████.com>
**Subject: Re: Question**
**Date:** April 3, 2012 12:50:35 AM PDT

**REDACTED**

**To: Teller <​███████████​com>**

I just discovered his real name is Gerard Dogge...I guess you can track down his address via his telephone number in Fuertaventura (Spain) mentioned on the site 0034 - 606.35.65.04

*Guinelli*
**Goochelaar - illusionist**
███████████
**www.guinelli.com**
███████████com

Op 3-apr.-2012, om 09:33 heeft Teller het volgende geschreven:

Thank you very much.  I had not seen this.

On Apr 2, 2012, at 11:20 PM, Gunther Guinee wrote:

**I'm afraid not...he asked me to send his magazines to his Belgian friend where he would pick them up every time he visited Belgium...**

**They do have a website with more information, don't know if you have seen that already: http://www.losdosdeamberes.com**

*Guinelli*
**Goochelaar - illusionist**
███████████
**www.guinelli.com**
███████████com

Op 3-apr.-2012, om 08:08 heeft Teller het volgende geschreven:

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER


Begin forwarded message:

**From: Teller** ◄███████████.com>
**Subject: Re: Question**
**Date: April 3, 2012 1:09:58 AM PDT**
**To: Gunther Guinee** ◄███████████.com>

Thank you very much again.

You are a wonderful advisor.

Let me just ask:  Do you have any suggestions for the best way to shut down his piracy?

He doesn't seem like a bad guy; he just set his heart on this being a big moneymaker (he thinks he'll make $5,000,000 dollars off it) is reluctant to settle with me at a reasonable sum.  So he's working very hard to convince himself that he's in the right.  We all know he's not.

You told him so.  So did Rafael (who successfully sued Hans Klock over an item much less original than mine).    But he's not hearing all of us.

I really don't want to sue him, and not just because it's expensive and troublesome for me, but because it would ruin his life and I am not eager to do that.

Thanks,

Teller

On Apr 3, 2012, at 12:50 AM, Gunther Guinee wrote:


I just discovered his real name is Gerard Dogge...I guess you can track down his address via his telephone number in Fuertaventura (Spain) mentioned on the site 0034  - 606.35.65.04

**REDACTED**

*Guinelli*
Goochelaar - illusionist
███████████████

www.guinelli.com
███████████com

Op 3-apr.-2012, om 09:33 heeft Teller het volgende geschreven:

Thank you very much.  I had not seen this.

On Apr 2, 2012, at 11:20 PM, Gunther Guinee wrote:

I'm afraid not...he asked me to send his magazines to his Belgian friend where he would pick them up every time he visited Belgium...

They do have a website with more information, don't know if you have seen that already: http://www.losdosdeamberes.com

*Guinelli*
Goochelaar - illusionist
███████████████

www.guinelli.com
███████████com

Op 3-apr.-2012, om 08:08 heeft Teller het volgende geschreven:

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

REDACTED

Begin forwarded message:

**From:** Gunther Guinee < ██████████ com>
**Subject: Re: Question**
**Date:** April 3, 2012 6:26:46 AM PDT
**To:** Teller ██████████ com>

I understand you completely...though I don't want to get to deep involved in this matter...

However, I do want to do all I can to protect your original concept and routine and spare him from possible legal consequences.

Maybe I can mail him once more saying that we had contact about this situation and that I strongly advice him to reconsider his plans. In that way he can maybe win a 'friend' in you instead of crossing arms with the originator of a very unique piece of magic.

*Guinelli*
Goochelaar - illusionist
██████████
www.quinelli.com
██████████ com

Op 3-apr.-2012, om 10:09 heeft Teller het volgende geschreven:

Thank you very much again.

You are a wonderful advisor.

Let me just ask:  Do you have any suggestions for the best way to shut down his piracy?

He doesn't seem like a bad guy; he just set his heart on this being a big moneymaker (he thinks he'll make $5,000,000 dollars off it) is reluctant to settle with me at a reasonable sum.  So he's working very hard to convince himself that he's in the right.  We all know he's not.

You told him so.  So did Rafael (who successfully sued Hans Klock over an item much less original than mine).    But he's not hearing all of us.

**REDACTED**

I really don't want to sue him, and not just because it's expensive and troublesome for me, but because it would ruin his life and I am not eager to do that.

Thanks,

Teller

On Apr 3, 2012, at 12:50 AM, Gunther Guinee wrote:

I just discovered his real name is Gerard Dogge...I guess you can track down his address via his telephone number in Fuertaventura (Spain) mentioned on the site 0034 - 606.35.65.04

*Guinelli*
**Goochelaar - illusionist**



www.guinelli.com

Op 3-apr.-2012, om 09:33 heeft Teller het volgende geschreven:

Thank you very much.  I had not seen this.

On Apr 2, 2012, at 11:20 PM, Gunther Guinee wrote:

I'm afraid not...he asked me to send his magazines to his Belgian friend where he would pick them up every time he visited Belgium...

They do have a website with more information, don't know if you have seen that already: http://www.losdosdeamberes.com

*Guinelli*
**Goochelaar - illusionist**

REDACTED

**From:** Gunther Guinee ████████████com>
**Subject: Re: Question**
**Date:** April 3, 2012 6:26:46 AM PDT
**To:** Teller ◄████████████com>

I understand you completely...though I don't want to get to deep involved in this matter...

However, I do want to do all I can to protect your original concept and routine and spare him from possible legal consequences.

Maybe I can mail him once more saying that we had contact about this situation and that I strongly advice him to reconsider his plans. In that way he can maybe win a 'friend' in you instead of crossing arms with the originator of a very unique piece of magic.

*Guinelli*
**Goochelaar - illusionist**
██████████████
www.guinelli.com
████████████com

Op 3-apr.-2012, om 10:09 heeft Teller het volgende geschreven:

Thank you very much again.

You are a wonderful advisor.

Let me just ask:  Do you have any suggestions for the best way to shut down his piracy?

He doesn't seem like a bad guy; he just set his heart on this being a big moneymaker (he thinks he'll make $5,000,000 dollars off it) is reluctant to settle with me at a reasonable sum.  So he's working very hard to convince himself that he's in the right.  We all know he's not.

You told him so.  So did Rafael (who successfully sued Hans Klock over an item much less original than mine).    But he's not hearing all of us.

I really don't want to sue him, and not just because it's expensive and troublesome for me, but because it would ruin his life and I am not eager to do that.

Thanks,

Teller

REDACTED

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

Begin forwarded message:

**From: Teller <**███████████**com>**
**Subject: Re: Question**
**Date: April 3, 2012 11:52:08 PM PDT**
**To: Gunther Guinee** ███████████**com>**

Kind Gunther,

I'd be grateful if you would try communicating with Gerard. Clearly he respects you. He needs to know that I'm not the lone voice saying what he's doing is morally wrong.

I get the sense that he's very new in our world. He needs to be aware that Rafael recently won the case against Hans Klock for an infringement of something much less original and distinctive than my "Shadows." Manufacturing the item multiplies the damage many times.

I hate lawsuits. No one benefits except the attorneys. But if Gerard compels me to go the legal route, I would enforce based on Copyright (I registered the effect in 1983), Unfair Competition, Trademark Infringement (it has been my signature piece since 1975), and Droit Moral in the US and EU. If I prevail, he'll be stuck with all my legal costs. It would be dreadful for him and a waste of both our time.

The problem in coming to an agreement is that he imagines this trick will bring him $4-5,000,000. That's insane, **especially** when one considers the difficulty of advertising and selling an item that is under legal dispute.

Now, all this said, I would rather make a friend of Gerard and have another clever person in my employ. If we could agree on a realistic fee, I would consider hiring him as consultant to try and improve my trick, provided of course, he takes it off the market and sells to nobody but me. I think his notion of seeing the stem in water might have value to me, if he could achieve the kind

of slow, mysterious movement my method involves; his is more abrupt and mechanical looking.

But he is, I think, expecting a hundred thousand dollars for such a consultation, and that's completely irrational and out of line with anything I've ever paid for such thing.

There, I think that about sums it up.

You may find that it would take less time and be more productive just to talk with him on the phone (+34.606356504). Sometimes when people talk on the phone in a language that they are comfortable in, it's easier to resolve problems than it is in writing (which can be rigid and forbidding).

Thanks so much for your kindness. Know that regardless of the outcome, you now have a new friend in the U.S. When you come to Vegas you will be most cordially received as my guest, and if there are any Penn & Teller materials (e.g. my David Abbott book) that interest you, they will be on their way to you with my gratitude.

TELLER

P.S. Many famous magicians around the world agree with us on this issue, and if you know of someone whose opinions might impress and influence Gerard (Lance Burton, Copperfield, Tamariz, Johnny Thompson, Derren Brown, etc.) let me know and I'll ask if they'd be willing to call and talk with him. It would be so much better to settle all of this like gentlemen.

On Apr 3, 2012, at 6:26 AM, Gunther Guinee wrote:

I understand you completely...though I don't want to get to deep involved in this matter...

However, I do want to do all I can to protect your original concept and routine and spare him from possible legal consequences.

Maybe I can mail him once more saying that we had contact about this situation and that I strongly advice him to reconsider his plans. In that way he can maybe win a 'friend' in you instead of crossing arms with the originator of a very unique piece of magic.

*Guinelli*
**Goochelaar - illusionist**
████████████
**www.guinelli.com**
████████████ com

Op 3-apr.-2012, om 10:09 heeft Teller het volgende geschreven:

Thank you very much again.

You are a wonderful advisor.

Let me just ask:  Do you have any suggestions for the best way to shut down his piracy?

He doesn't seem like a bad guy; he just set his heart on this being a big moneymaker (he thinks he'll make $5,000,000 dollars off it) is reluctant to settle with me at a reasonable sum.  So he's working very hard to convince himself that he's in the right.  We all know he's not.

You told him so.  So did Rafael (who successfully sued Hans Klock over an item much less original than mine).   But he's not hearing all of us.

I really don't want to sue him, and not just because it's expensive and troublesome for me, but because it would ruin his life and I am not eager to do that.

Thanks,

Teller

On Apr 3, 2012, at 12:50 AM, Gunther Guinee wrote:


I just discovered his real name is Gerard Dogge...I guess you can track down his address via his telephone number in Fuertaventura (Spain) mentioned on the site 0034  - 606.35.65.04

*Guinelli*
**Goochelaar - illusionist**
█████████████
**www.guinelli.com**
████████████com


Op 3-apr.-2012, om 09:33 heeft Teller het volgende geschreven:


Thank you very much.  I had not seen this.

On Apr 2, 2012, at 11:20 PM, Gunther Guinee wrote:


**I'm afraid not...he asked me to send his magazines to his Belgian friend where he would pick them up every time he visited Belgium...**

**REDACTED**

Thanks,

TELLER

Begin forwarded message:

**From:** Gunther Guinee ████████████com>
**Subject: Re: Question**
**Date:** April 4, 2012 12:13:19 AM PDT
**To:** Teller ◀████████████com>

OK, I will give it a shot later on today...besides the ethical objections you just gave me some strong extra arguments to try and make him change his mind.

I keep you posted!

And also thanks for your kindness and the way you appreciate my (small) efforts.

Bye for now,

Gunther

Op 4-apr.-2012, om 08:52 heeft Teller het volgende geschreven:

Kind Gunther,

I'd be grateful if you would try communicating with Gerard. Clearly he respects you. He needs to know that I'm not the lone voice saying what he's doing is morally wrong.

I get the sense that he's very new in our world. He needs to be aware that Rafael recently won the case against Hans Klock for an infringement of something much less original and distinctive than my "Shadows." Manufacturing the item multiplies the damage many times.

I hate lawsuits. No one benefits except the attorneys. But if Gerard compels me to go the legal route, I would enforce based on Copyright (I registered the effect in 1983), Unfair Competition, Trademark Infringement (it has been my signature piece since 1975), and Droit Moral in the US

and EU.  If I prevail, he'll be stuck with all my legal costs.  It would be dreadful for him and a waste of both our time.

The problem in coming to an agreement is that he imagines this trick will bring him $4-5,000,000.  That's insane, especially when one considers the difficulty of advertising and selling an item that is under legal dispute.

Now, all this said, I would rather make a friend of Gerard and have another clever person in my employ.  If we could agree on a realistic fee, I would consider hiring him as consultant to try and improve my trick, provided of course, he takes it off the market and sells to nobody but me.  I think his notion of seeing the stem in water might have value to me, if he could achieve the kind of slow, mysterious movement my method involves; his is more abrupt and mechanical looking.

But he is, I think, expecting a hundred thousand dollars for such a consultation, and that's completely irrational and out of line with anything I've ever paid for such thing.

There, I think that about sums it up.

You may find that it would take less time and be more productive just to talk with him on the phone (+34.606356504).  Sometimes when people talk on the phone in a language that they are comfortable in, it's easier to resolve problems than it is in writing (which can be rigid and forbidding).

Thanks so much for your kindness.  Know that regardless of the outcome, you now have a new friend in the U.S.  When you come to Vegas you will be most cordially received as my guest, and if there are any Penn & Teller materials (e.g. my David Abbott book) that interest you, they will be on their way to you with my gratitude.

TELLER

P.S.  Many famous magicians around the world agree with us on this issue, and if you know of someone whose opinions might impress and influence Gerard (Lance Burton, Copperfield, Tamariz, Johnny Thompson, Derren Brown, etc.) let me know and I'll ask if they'd be willing to call and talk with him.  It would be so much better to settle all of this like gentlemen.

On Apr 3, 2012, at 6:26 AM, Gunther Guince wrote:


I understand you completely...though I don't want to get to deep involved in this matter...

However, I do want to do all I can to protect your original concept and routine and spare him from possible legal consequences.

TELLER000060

Maybe I can mail him once more saying that we had contact about this situation and that I strongly advice him to reconsider his plans. In that way he can maybe win a 'friend' in you instead of crossing arms with the originator of a very unique piece of magic.

*Guinelli*
**Goochelaar - illusionist**

www.guinelli.com
com

Op 3-apr.-2012, om 10:09 heeft Teller het volgende geschreven:

Thank you very much again.

You are a wonderful advisor.

Let me just ask:  Do you have any suggestions for the best way to shut down his piracy?

He doesn't seem like a bad guy; he just set his heart on this being a big moneymaker (he thinks he'll make $5,000,000 dollars off it) is reluctant to settle with me at a reasonable sum.  So he's working very hard to convince himself that he's in the right.  We all know he's not.

You told him so.  So did Rafael (who successfully sued Hans Klock over an item much less original than mine).   But he's not hearing all of us.

I really don't want to sue him, and not just because it's expensive and troublesome for me, but because it would ruin his life and I am not eager to do that.

Thanks,

Teller

On Apr 3, 2012, at 12:50 AM, Gunther Guinee wrote:

I just discovered his real name is Gerard Dogge...I guess you can track down his address via his telephone number in Fuertaventura (Spain) mentioned on the site 0034 - 606.35.65.04

*Guinelli*
**Goochelaar - illusionist**

www.guinelli.com
com

REDACTED

Begin forwarded message:

**From:** Teller <████████com>
**Subject: Re: Question**
**Date:** April 4, 2012 12:35:09 AM PDT
**To:** Gunther Guinee ████████com>

That is very kind of you, and yes, I'd be very grateful.  He knows your character and your intentions.

I really want this to be settled amicably, like gentlemen, rather than being forced to pursue an infringement based on copyright, unfair competition, trademark infringement, and *droit moral* under the laws of the U.S. and E.U.

On Apr 3, 2012, at 6:26 AM, Gunther Guince wrote:

I understand you completely...though I don't want to get to deep involved in this matter...

However, I do want to do all I can to protect your original concept and routine and spare him from possible legal consequences.

Maybe I can mail him once more saying that we had contact about this situation and that I strongly advice him to reconsider his plans. In that way he can maybe win a 'friend' in you instead of crossing arms with the originator of a very unique piece of magic.

*Guinelli*
**Goochelaar - illusionist**
████████
www.guinelli.com
████████com

Op 3-apr.-2012, om 10:09 heeft Teller het volgende geschreven:

Thank you very much again.

You are a wonderful advisor.

TELLER000062

**REDACTED**

*Guinelli*
Goochelaar - illusionist

██████████████

www.guinelli.com

██████████████com

Op 3-apr.-2012, om 08:08 heeft Teller het volgende geschreven:

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

Begin forwarded message:

**From: Teller** ◀██████████com▶
**Subject: Re: Question**
**Date: April 4, 2012 12:50:42 AM PDT**
**To: Gunther Guinee** ◀███████.com▶

Thank you.

As I was shutting down my computer to go off to sleep, I realized I forgot to mention in my note that YouTube responded as soon as my attorneys notified them of the copyright violation and took Girard's videos down within 36 hours of my request. They recognize Intellectual Property violations as a serious issue, as does Google and other search engines.

TELLER000063

*Guinelli*
Goochelaar - illusionist

www.quinelli.com

Op 3-apr.-2012, om 08:08 heeft Teller het volgende geschreven:

Gunther, my friend,

Do you have a physical address for Gerard Bakardy?

Thanks,

TELLER

Begin forwarded message:

**From:** Gunther Guinee              com>
**Subject: Re: Question**
**Date:** April 4, 2012 12:54:53 AM PDT
**To:** Teller <              com>

I just checked and indeed...video blocked. Important sign towards Gerard.

Good night and hope to have some news for you in the morning!

**REDACTED**

*Guinelli*
Goochelaar - illusionist
███████

www.guinelli.com
███████com

Op 4-apr.-2012, om 09:50 heeft Teller het volgende geschreven:

Thank you.

As I was shutting down my computer to go off to sleep, I realized I forgot to mention in my note that YouTube responded as soon as my attorneys notified them of the copyright violation and took Girard's videos down within 36 hours of my request. They recognize Intellectual Property violations as a serious issue, as does Google and other search engines.

On Apr 4, 2012, at 12:13 AM, Gunther Guince wrote:

OK, I will give it a shot later on today...besides the ethical objections you just gave me some strong extra arguments to try and make him change his mind.

I keep you posted!

And also thanks for your kindness and the way you appreciate my (small) efforts.

Bye for now,

Gunther

Op 4-apr.-2012, om 08:52 heeft Teller het volgende geschreven:

Kind Gunther,

I'd be grateful if you would try communicating with Gerard. Clearly he respects you. He needs to know that I'm not the lone voice saying what he's doing is morally wrong.

I get the sense that he's very new in our world. He needs to be aware that Rafael recently won the case against Hans Klock for an infringement of something much less original and distinctive than my "Shadows." Manufacturing the item multiplies the damage many times.

I hate lawsuits. No one benefits except the attorneys. But if Gerard compels me to go the legal route, I would enforce based on Copyright (I registered the effect in 1983), Unfair Competition, Trademark Infringement (it has been my signature piece since 1975), and Droit Moral in the US and EU. If I prevail, he'll be stuck with all my legal costs. It would be dreadful for him and a waste of both our time.

The problem in coming to an agreement is that he imagines this trick will bring him $4-5,000,000. That's insane, especially when one considers the difficulty of advertising and selling an item that is under legal dispute.

Now, all this said, I would rather make a friend of Gerard and have another clever person in my employ. If we could agree on a realistic fee, I would consider hiring him as consultant to try and improve my trick, provided of course, he takes it off the market and sells to nobody but me. I think his notion of seeing the stem in water might have value to me, if he could achieve the kind of slow, mysterious movement my method involves; his is more abrupt and mechanical looking.

But he is, I think, expecting a hundred thousand dollars for such a consultation, and that's completely irrational and out of line with anything I've ever paid for such thing.

There, I think that about sums it up.

You may find that it would take less time and be more productive just to talk with him on the phone (+34.606356504). Sometimes when people talk on the phone in a language that they are comfortable in, it's easier to resolve problems than it is in writing (which can be rigid and forbidding).

Thanks so much for your kindness. Know that regardless of the outcome, you now have a new friend in the U.S. When you come to Vegas you will be most cordially received as my guest, and if there are any Penn & Teller materials (e.g. my David Abbott book) that interest you, they will be on their way to you with my gratitude.

TELLER

P.S. Many famous magicians around the world agree with us on this issue, and if you know of someone whose opinions might impress and influence Gerard (Lance Burton, Copperfield, Tamariz, Johnny Thompson, Derren Brown, etc.) let me know and I'll ask if they'd be willing to call and talk with him. It would be so much better to settle all of this like gentlemen.

On Apr 3, 2012, at 6:26 AM, Gunther Guinee wrote:


I understand you completely...though I don't want to get to deep involved in this matter...

However, I do want to do all I can to protect your original concept and routine and spare him from possible legal consequences.

**REDACTED**

Begin forwarded message:

**From: Teller** <██████████.com>
**Subject: Fwd: At last**
**Date: April 4, 2012 1:11:04 AM PDT**
**To: Gunther Guinee** ██████████.com>

Forgive this additional email, but I think you might want to see the last exchange of correspondence between Gerard and me:

> From:██████████.com
> Date: Mon, 26 Mar 2012 20:33:15 -0700
> Subject: At last
> To: gerard-bakardy@hotmail.com
>
> Dear Gerard,
>
> This is a tough thing to figure out, and I don't think either of us ends up being totally happy with any plan, but here's my best attempt at being fair to each of us.
>
> Sometimes I hire people to help develop mechanical parts of tricks. If I had hired you for that purpose, and you'd developed a way to allow the rose stem to be visible and mobile, I would think a reasonable price for that improvement would be about $7500.
>
> But at this point, I have no idea whether I can build on what you've developed to make the movement smooth enough to have the look I want on stage. So for me, that $7500 would be a total gamble.
>
> On the other hand, I understand that you have put a lot of experimentation and ingenuity into what you've done, and were hoping to have good sales. Unfortunately those sales would have forced me to defend my rights by unpleasant and protracted lawsuits in both the U.S. and Europe. We would both lose large amounts of money and would end up poorer and bitterly angry at each other.
>
> That is not the way I want to live.
>
> So here's what I suggest:
>
> I would like to offer you $15,000. For this, you send me everything you've built. You cease manufacture of your prop. You share your idea with nobody and assist nobody else in copying my trick. I assume full ethical and legal possession of your method. I would pay $7500 upon signing the agreement, and the remaining $7500 upon receipt of the props.
>
> Now, understand, this is a total gamble for me. I do not know whether what I'm buying will actually be usable in any way for me. But the reason I'm offering such a generous settlement is to reflect three

REDACTED

things:
>
> 1. The thought and work you have put into developing the alternate method.
> 2. Your respectful and ethical willingness to step completely away from this project.
> 3. The wish not be compelled to solve this problem through strife and lawsuits.
>
> I would also expect that you would agree to keep our arrangement absolutely confidential. If this were to get out in the magic community, I believe it would make both of us look very, very bad and cause future problems. And I'd expect your sworn promise never to emulate or endeavor to manufacture any of the material Penn and I have developed on stage or television (unless you contact Penn and me and develop the material exclusively for us -- we do appreciate clever thinking.)
>
> As I said above, there is no perfect solution to this situation. I suspect you were hoping for greater profits in sales than I am offering. And I'm not very pleased to be offering a large amount of money for something that should not have been done without my consent in the first place, and which may turn out to be of no use to me.
>
> But if we follow this plan, and back it up with proper paperwork, you make a respectable amount for your work and ingenuity, avoid legal headaches, and have a new friend in Vegas. I end up without the aggravation of lawsuits, get a potential step towards improving my signature trick, and gain an ingenious new colleague in Spain.
>
> So we turn bad to good and move on with clear hearts and warm feelings.
>
> Please let me know your thoughts on this proposal.
>
> Cordially,
>
> TELLER

http://www.youtube.com/watch?v=BYmt7NtO85Y

Live now: Owls performing at the SXSW festival in Austin.

You Tube

Browse   Movie

## The Rose & her Shadow in Close up ! - Gerard Bakardy

Gerarroko   Subscribe   8 videos



0:53 / 1:51

Like   + Add to ▾   Share   14 views

Uploaded by Gerarroko on Mar 18, 2012

The magician cuts one by one the leaves from a rose .. in her shadow ! But it happens in reality on the real rose which is standing 2 meters away from her shadow. Everything is separate and loose from each other, so how is this possible? This is the most Magical, romantic and beautiful illusion I know. I've seen the great Penn & Teller performing a similar trick and now I'm very happy to share my version in a different and more impossible way with you. It is so magical to manipulate a shadow! The audience is so surprised especially when they see that the stem and 'vase' filled with water are removed from the table ! In combination with the floating table effect, these are for sure the 'eye catchers' in my show.
It could be a wonderful and refreshing addition to all your coin or card tricks on show !
Thanks for watching my movie.

Category:
Entertainment

Tags:
The rose her shadow Magic trick illusion Floating table Gerard Bakardy Penn Teller Magic (illusion) Card Tricks Revealed Coin Cards Magic Trick Criss David Blaine Magician Cool Amazing Tutorial Magic Tricks

License:
Standard YouTube License

TELLER000069

Show less

All Comments (0)                                                    see all

 You Tube

<div style="border:1px solid;padding:4px;">

Q    Browse    Movies

# The Rose & her Shadow in Close up ! - Gerard Bakardy

Gerarrake   ⊕   Subscribe   6 videos ▾

‖  🔊  0:58 / 1:51                              ⚙ ▭ ▭ ▢

👍 Like   👎   ✦ Add to ▾   Share   ⚑              **12** views ⏹

Uploaded by Gerarrake on Mar 15, 2012

The magician cuts one by one the leaves from a rose... in her shadow ! But it
happens in reality on the real rose which is standing 2 meters away from her
shadow. Everything is separate and loose from each other, so how is this
possible? This is the most Magical, romantic and beautiful illusion I know.
I've seen the great Penn & Teller performing a similar trick and now I'm very
happy to share my version in a different and more impossible way with you. It
is so magical to manipulate a shadow! The audience is so surprised
especially when they see that the stem and 'vase' filled with water are
removed from the table ! In combination with the floating table effect, these
are for sure 'the' eye catchers' in my show.
It could be a wonderful and refreshing addition to all your coin or card tricks
on show !
Thanks for watching my movie.

Category:

0 likes, 0 dislikes

TELLER000070





"The magician — TELLER — wordless, miming, frizzy-headed, big-eyed, victim of the universe in general, does really uncanny magic, including pruning a rose by cutting its shadow . . ."

Joseph Adcock — The Evening Bulletin

LV 419936838v1

TELLER000072