Mark G. Tratos (Bar No. 1086)
tratosm@gtlaw.com
Nancy Ayala (Bar No. 7146)
ayalan@gtlaw.com
Peter Ajemian (Bar No. 9491)
ajemianp@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Teller, an individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Gerard Dogge (p/k/a Gerard Bakardy), an individual.<br><br>　　　　Defendant. | Case No. 2:12-cv-00591-JCM-GWF<br><br>**REPLY IN SUPPORT OF PLAINTIFF TELLER'S MOTION FOR DEFAULT JUDGMGENT AND PERMANENT INJUNCTION AGAINST DEFENDANT DOGGE** |

　　　　Plaintiff Teller ("plaintiff" or "Teller") hereby files this reply in support of his motion for entry of default judgment and a permanent injunction against defendant Gerard Dogge, p/k/a Gerard Bakardy ("defendant" or "Dogge").

///
///
///
///
///
///
///
///

This reply is based upon the attached memorandum of points and authorities, the papers, pleadings, declarations and exhibits on file herein, and any oral argument that this court may allow.

DATED this 15th day of September, 2014.

GREENBERG TRAURIG, LLP

/s/ Mark G. Tratos
Mark G. Tratos (Bar No. 1086)
Thomas F. Kummer (Bar No. 1200)
Nancy R. Ayala (Bar No. 7146)
Peter Ajemian (Bar No. 09491)
3773 Howard Hughes Pkwy, Suite 400 North
Las Vegas, NV  89169

Counsel for Plaintiff

## I. INTRODUCTION

Dogge's opposition to Teller's motion for default judgment is too little, too late.  This court has already struck Dogge's answers and entered default as a ***case-dispositive*** sanction for repeatedly disobeying court orders and general bad faith litigation conduct pursuant to Rules 16 and 37.  Dogge has essentially failed to participate in this case since the entry of partial summary judgment against him in March of 2014 – even when the court specifically ordered him to do so.  He repeatedly stated he would not be physically attending trial, and failed to file a trial brief, an exhibit/witness list, proposed findings of fact and conclusions of law, and refused to otherwise meaningfully participate in a court-ordered settlement conference to the extent that Magistrate Judge Foley decided not to hold the conference.  Although he opposed Teller's motion for case-dispositive sanctions, he filed no objection to Magistrate Judge Foley's findings and recommendations, which recommended default as a sanction.[1]  After filing nothing since June of 2014, and even stating that "defendant will not file any more motions nor answers to motions as such," *see* doc. no. 215, at 6, Dogge has resurfaced to suddenly object to this essentially procedural step of obtaining the actual judgment after default.[2]

---

[1] Case dispositive sanctions had been requested twice before for Dogge's refusal to follow the court's discovery orders.

[2] It would not make sense, however, to construe this motion as a motion to set aside default, as this default was entered pursuant to Rules 37 and 16 as a <u>sanction</u>, not Rule 55 for failure to participate.  Further, even if the court so construed the motion and granted it, the parties would simply be back where they started: the plaintiff ready and willing to go to trial and the defendant refusing to participate in the mandatory pretrial procedures and refusing to come to the United

Moreover, in his opposition, Dogge does nothing but rehash the same tall tale he's been repeating all along – that Teller's counsel is unethical, that the judge is unethical and has "no clue," that Dogge's prop is far better than Teller's, and a number of references to sex and pornography are thrown in for scurrilous effect. Each of the issues Dogge raises – including the ridiculous claim of "evidence tampering" – has been briefed and ruled upon (in Teller's favor) at other stages of the litigation.[3] Absent are new facts, evidence to support them or legally sound arguments.

Dogge complains that he "never had a chance to plead [his] case for a Jury or Judge," p. 1. This is the height of irony as he has refused to come to trial or file a witness list, exhibit list or trial brief. He had so very many, many chances. As a pro se defendant, this court gave him numerous warnings, spelled out exactly what needed to be done and by what date, and even specifically cautioned him, on multiple occasions, that case-dispositive sanctions would issue if Dogge continued to flaunt his contempt for the court's orders. With full knowledge of the consequences, Dogge refused to participate in court-ordered pretrial procedures, file any of the required documents and refused to come to the United States for trial. Teller was prepared to go to trial, and indeed has spent hundreds of thousands of dollars toward that end since partial summary judgment was granted. Dogge can simply not justly complain. He has sought to manipulate the legal system from the inception of the action.

To further compound his now apparent contempt for this court and these proceedings, he continues to make demonstrably false statements such as "up until today, I never sold a single 'prop', nor did I ever perform the illusion at issue, nor did I ever advertise where, how, and on which price my prop could be bought." *See* Opposition, at 1. The two videos he posted on the internet

---

States for trial. Nowhere does Dogge state he would now be willing to obey the court's orders or actually appear in the United States. Dogge has flouted numerous court orders before; there is simply no hope that he can be trusted to obey if the court were to reopen the case.

[3] He again offers the same excuses he previously tendered for his failure to obey this court's discovery orders, including that he couldn't produce the instructional DVD or instructional manual because "they were not yet finished" and he "was still working on them", despite the fact that the request asks for any draft or version, and despite the fact that he first acknowledged they existed but then claimed he may have accidentally removed them from his computer. His latest explanation for refusing to produce his computer for mirroring is because "no one would comply with such an order by the court" and therefore the plaintiff intentionally asked for this knowing all along that the defendant would refuse such a request.

1  (which he conveniently lost from his computer and never produced, but which were obtained
2  through a subpoena from YouTube), show him performing the illusion in a video advertisement.

3        Dogge demonstrates convincingly in his opposition that if a broad injunction is not ordered
4  preventing the defendant from unfairly competing with the plaintiff, Mr. Dogge will be selling his
5  prop in the marketplace.  At numerous places throughout the opposition, Dogge makes comments
6  such as "[w]henever [Dogge] start[s] selling his invention the customer can freely choose which
7  transparent vase or bottle he would like to use." *See* Opposition, at 12.

8        It is time for the gamesmanship, name calling and refusal to comply with this court's orders
9  to come to an end.  This court should enter a broad injunction preventing the defendant from
10 attempting to unfairly compete with the plaintiff by copying, selling, distributing or assisting others
11 in performing the plaintiff's illusions, order the maximum award of statutory damages available and
12 award plaintiff the entirety of his attorney's fees and costs in having to prevent the defendant's
13 intentional infringement and efforts to unfairly compete.

14 **II.    LEGAL ARGUMENT**

15       Dogge's opposition gives the court no justifiable or legally supportable reason not to enter
16 default judgment.  He makes seven arguments, none of which are meritorious, and each of which are
17 discussed below.  "The general rule is that upon default the factual allegations of the complaint,
18 except those relating to the amount of damages, will be taken as true."  *L G Elecs., Inc. v. Adv.*
19 *Creative Comp. Corp.*, 212 F.Supp.2d 1171, 1175 (N.D. Cal. 2002).  Given that Teller's complaint is
20 now taken as true and that Dogge has no valid arguments against default judgment, there is simply
21 no reason for this court to delay in taking this final, essentially procedural, step in the litigation.

22                 ***1.    Dogge's Argument That Teller's Expert Report is Flawed Fails***

23       Dogge argues that this court should not enter default judgment because Teller's expert was
24 not "impartial," that Dogge did not get to cross-examine him, and that the expert has never seen
25 Dogge's illusion.[4]  Each of these arguments fails.

26

---

[4] Dogge further makes the puzzling argument that Mr. Steinmeyer has not seen Dogge's illusion, and therefore should not opine in the case.  However, Mr. Steinmeyer offers no opinion on Dogge's illusion.  Mr. Steinmeyer offers his opinion on the importance of Teller's signature Shadows illusion within the worldwide magic community and the

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Dogge complains of problems that he inflicted upon himself. Dogge has had the expert report for more than a year. Dogge was aware he could present an expert witness, but chose not to present one, instead stating that he would counter Mr. Steinmeyer himself. Likewise, Dogge chose not to depose Mr. Steinmeyer, did not file any motions in limine, and most telling, refused to appear at trial. At trial, Dogge could have cross-examined Mr. Steinmeyer, including on any issues of credibility and the foundation of his report. Instead, Dogge chose to cease participation in the lawsuit and made the decision not to come to the United States for trial.[5] Dogge cannot later complain that the court relies on the expert's opinions. Further, notably absent from Dogge's argument regarding Mr. Steinmeyer is any allegation that Mr. Steinmeyer is not qualified. As such, this court should see through this argument and grant Teller's motion for default judgment.

### 2. *Dogge's Argument that Teller's Copyright is Invalid Fails.*

Dogge next argues that Teller's copyright is invalid, because Teller registered it as a dramatic work when it is really a magic trick.[6] Dogge previously made this argument in opposition to Teller's motion for summary judgment. His apparent inability to distinguish between the action of the performance and the object of the illusion upon which the action works sympathetically demonstrates either willful ignorance or a cleaver attempt to confuse the issue. The court considered it and declined to adhere to Dogge's view, holding that "the mere fact that a dramatic work or pantomime includes a magic trick, or even that a particular illusion is its central feature does not render it void of copyright protection." *See* Order on Motions for Summary Judgment, doc. no. 184, at 5. Judgment has already been entered as to the validity of Teller's copyright; it is not at issue here. Dogge confuses designing a prop that works by different means with being a different illusion. He could have used the same means he employs to have a stuffed Teddy Bear fall apart, when a

---

importance of each of Penn & Teller's original illusions. All of this is well within the ambit of Mr. Steinmeyer's substantial expertise in the magic industry.

[5] It is interesting to note that Dogge states he hand-delivered a copy of a report to an FBI Agent in Miami. Apparently, Dogge is quite capable of traveling to the United States when it suits him.

[6] This is a false dichotomy. Teller's work is both a magic trick and a dramatic work; it is a dramatic work that centers on a magic trick.

body part was selected, and would not have been sued for infringement. Teller is asking for default judgment with regards to several aspects of the case, but this is not one of them; judgment on that issue has already been entered.

### 3.   *Teller's Statements do Not Undermine Teller's Case*

Dogge's next "argument" is entitled "Teller's Statements." Here, Dogge attempts to refute Teller's declaration, in which Teller states he is convinced that Dogge will continue to plunder other material from the Penn & Teller repertoire. Dogge responds, basically, that he didn't really mean it when he told Teller that he was going to sell his version of Shadows to a "clever Chinese," that it was just "sales talk" because he was trying to get more money from Teller. *See* Opp., at 9. Dogge then goes on to explain that he is not trying to copy Teller's Silverfish illusion next, as Teller suspects.

Since Dogge is so willing to say things that aren't true when it suits him, how can the plaintiff or this court believe Dogge when he says he is not planning to rip off Teller's famous Silverfish illusion, despite asking about it on more than one occasion during discovery?

Dogge also claims that Teller seemed "uncomfortable" at various times during his deposition.[7] This has nothing to do with the matter at hand.

As Dogge concludes this section by stating "it's a shame" that the court has stricken Dogge's answer, the irony is palpable. Teller was more than willing to testify in court, at trial, where the court could see for itself if Teller is a credible witness, and Dogge could have cross-examined Teller to his heart's content. It was Dogge, however, who refused to participate in pretrial procedures, even when this court ordered him to do so; it was Dogge who refused to come to trial; it was Dogge who refused to heed this court's multiple warnings of case-dispositive sanctions, and it was Dogge who, in his last filing in June, stated that he would cease participation in this case altogether. This motion for default judgment is Dogge's own doing. The court should enter a broad order ensuring Dogge does not continue his misconduct.

---

[7] The gist of this argument is that Teller represented that Silverfish was copyrighted and it is not. This is not true. Teller tells the story of the magician that stopped doing Silverfish as an example of the professional courtesy that magicians extend to one another, not of the effectiveness of the copyright regime.

### *4. The Prop*

Dogge also devotes considerable space to the well-worn argument that the method behind his Rose prop is different, better, and somehow relevant to this case. It is not. As this court correctly held, the method makes no difference. Dogge can claim "the Court has no clue," but the court is correct; under copyright law, it is what the audience sees that matters, and the audience sees a dramatic work in which a rose is "assaulted and destroyed." *How* the rose falls apart is immaterial. Dogge's copying of Teller's dramatic work amounts to copyright infringement; that has already been determined.

### *5. A Permanent Injunction is Warranted.*

Dogge then argues that if the method behind the prop doesn't matter, why should the court enjoin him from selling the prop? Dogge again mixes apples and oranges to try to win his argument. Although the method behind the prop does not matter to the audience, the prop itself is key. As Teller has explained, and explains again in Section 6, *infra*, Dogge clearly wanted to draw an association between his prop and Teller. Why did Dogge think other magicians would buy more props if they saw Dogge performing Teller's Shadows with it? Because they too would like to replicate Teller's most famous work.

As explained more fully in the default motion and declarations of expert Jim Steinmeyer and Teller, distribution of the prop would likely induce others to infringe Teller's copyrights, given that Dogge intended to induce infringement by others by selling a prop that would likely be used to perform Teller's illusion. Further, the sale of these props would cause Teller to incur many costs. Teller would have to continue to bring enforcement actions and engage in a heightened degree of monitoring for infringement. Sale of the props would also make it much more likely that others would be doing this illusion, and that in turn would cause further damage to Teller, as the illusion would no longer be unique. Apart from the priceless loss of his signature illusion, Teller would also incur the expense of research and development for a replacement, and the lost opportunity for licensing and future sales after retirement.

Egregiously, Dogge's opposition is replete with statements that indicate he intends to start selling the prop if not enjoined. He states:

- "Whenever [Dogge] start[s] selling his invention the customer can freely choose which transparent vase or bottle he would like to use." (p. 12)
- "forbidding the defendant to sell his invention would be unfair to him and unfair to the world." (p. 15)
- "of course Teller is free to choose whether and when he wants to sell his prop. Just like the defendant." (p. 15)
- "just as the expert will never buy a High Definition Full Color TV to afterwards switch of the colors because he loves to watch black/white pictures, no one will buy Bakardy's latest technology which is created to perform a surpassing illusion to afterwards perform the 40 years unveiled disillusion, as Teller does. Tellers 40 years old illusion became a disillusion since it lost his magical value the moment it was unveiled on the internet, not by Bakardy but by others." (p. 7).
- "Defendant tries to imagine that one day the nontransparent Teller 'prop' is laying next to the transparent Bakardy 'prop' on the shelf in the magic store. For sale on the same price. Which one will be bought more? For sure the Teller fan will buy the nostalgic non transparent version. On the other hand when the buyer is looking for the most magical prop he will buy the transparent version. The competition would be fair." (p. 15)

A permanent injunction is the remedy of choice for unfair competition actions. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072 (C.D. Cal. 2012), quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988). Likewise, the Copyright Act provides that a court may grant permanent injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *See* 17 U.S.C. §502(a).

Further, without a permanent injunction, Teller is left with no remedy. Dogge has openly mocked the idea of paying Teller's attorneys' fees and presumably any other judgment against him, stating again in this opposition that he "nearly" paid the attorneys' fees twice. "Damages are no remedy at all if they cannot be collected, and most courts sensibly conclude that a damage judgment

against an insolvent defendant is an inadequate remedy." *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp.2d 1197, 1220-21 (C.D. Cal. 2007).

Finally, an injunction would only proscribe what Dogge should never have been doing in the first place – infringing Teller's copyright, and unlawfully trading on Teller's and Penn & Teller's names, reputations, creativity and goodwill. Accordingly, this court should grant an injunction on the terms specified in the motion.

### 6. Unfair Competition

Dogge next argues that this court should not enter judgment in Teller's favor on the unfair competition cause of action because other performers already do the same illusion and anyone could build or buy the same prop. Dogge claims that Teller is too late in enforcing because many people around the world are performing it. There are three major flaws with this argument.

First, it isn't true. In discovery, Teller asked Dogge to identify the purported legions of people performing a work similar to Shadows. Apart from one professional magician who is operating under license from Teller (and doing the illusion in a different presentation without a shadow and with a drawing and eraser instead of a knife), Dogge has identified no one. He pointed to a fan tribute on YouTube, another YouTube user doing a similar illusion in his living room and crediting Teller, and a chat room discussion where a magician states that he has created a method for performing it, but can't because it is Penn & Teller's illusion, but otherwise offers no names, and no evidence. Most importantly, even assuming that there are one or two other people performing Shadows, these people are not selling rose props with instructional DVDs and instruction manuals on the internet and trading on Teller's goodwill to do it.

Second, even if others infringed, it doesn't matter. Whether or not others are performing the illusion has no effect on Dogge's liability whatsoever. Dogge is liable under the terms of the statute, which imposes liability where a person "uses in commerce, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another, or as to the origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person" 15 U.S.C. § 1125(a)(1). In other words, "[a] claim of unfair competition under the Lanham Act encompasses trademark infringement, but also includes a broader range of unfair practices, which may generally be described as the misappropriation of the skill, expenditures and labor of another." *See* 87 C.J.S. Trademarks, Etc. § 142.

Here, Dogge built the prop himself to perform Teller's illusion; he could have made any item fall apart with the same technique. He could have chosen ornaments falling from a Christmas tree. But he didn't – he chose to replicate the rose from Teller's famous Shadows. Once Dogge decided on a rose, he could have chosen to advertise that rose with any plot; reading a sad love letter causes the petals and leaves to fall from the rose, for example. But he didn't – he chose to replicate the murder of a rose plot from Teller's Shadows. Given that Teller's Shadows is a world-renowned illusion and Teller's signature piece, it is obvious why: Dogge wanted to draw the association between his prop and Teller's illusion to sell more props. This is made clear by the comments Dogge posted beneath his advertisement video, where he references Penn & Teller, and in the advertisement he prepared for a magic magazine, in which he called his prop "better than in Las Vegas." What's more, Dogge intended to include a DVD – and instruction manual of how to perform the illusion – with each order. As this amounts to copyright infringement and unfair competition, as more fully explained in the motion, this court should enter default judgment on this claim.

Finally, Dogge has been sanctioned with default. After default, the court takes the well-pleaded factual allegations in the complaint as true. *See Lagos v. Monster Painting, Inc.*, 2013 WL 5937661, *2. Accordingly, this court should grant default judgment on the unfair competition claim.

### 7. This Court Should Enter Default Judgment on the Willfulness of the Copyright Infringement.

Dogge does not address the willfulness of the copyright infringement in his opposition, and as such the court should enter default judgment on that element as well. *See, e.g.*, Local Rule 7-d ("failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion"); *Boykin v. City of North Las Vegas*, 2011 WL 3859722 (D.Nev. 2011) (noting that "[t]he failure to oppose an issue constitutes consent to the Court granting

the motion to dismiss as to that issue."); *Herold v. One West Bank*, 2011 WL 4543998 (D.Nev. 2011) ("Plaintiff provided no response to this argument in her opposition. The Court finds that the argument has merit. Failure to oppose this argument constitutes consent to granting of the motion.").

Further, as outlined in the motion, Dogge had both actual and constructive knowledge – either of which is sufficient under the law to establish willfulness – of Teller's copyright in Shadows when he was infringing. It is undisputed that Dogge had seen Teller's performance prior to making the videos, and copied the performance with no investigation into whether Shadows was a copyrighted work. Further, the infringement was willful because defendant was made aware of plaintiff's valid ownership of a copyright registration in Shadows when Teller and Dogge started to discuss the issue on or about March 15, 2012. Despite Dogge being made aware by Teller that one of Dogge's infringing videos had been taken down from YouTube, he left a second, nearly identical, video he had posted on YouTube to remain up with full knowledge that it was infringing.[8]

Finally, as noted above, after default, the court takes the well-pleaded factual allegations in the complaint as true. *See Lagos v. Monster Painting, Inc.*, 2013 WL 5937661, *2. Accordingly, this court should enter default judgment in Teller's favor and conclude that the infringement was willful and thus award the maximum statutory damages.

### 8. *Attorneys' Fees and Costs in the Amount Requested are Warranted*

Dogge does not challenge the billing rates of the attorneys on the case. Instead, Dogge challenges the amount of the attorneys' fees, but only by arguing that if Teller had not filed the original Exhibit 3[9] as part of the complaint, the costs of the suit would not have been so high.

---

[8] This second video was also subsequently removed from YouTube though another formal DMCA takedown notice by plaintiff.

[9] As this court likely recalls, the original Exhibit 3 to the complaint contains several screenshots of the YouTube video that forms the basis of this lawsuit. In two of the screenshots, the "bookmark bar" of the person who took the screenshot is visible, and Dogge claims that four of the 19 "bookmarks" that are visible could be construed as a shorthand designation for adult websites. Although no reasonable person would believe that the bookmarks from the computer that captured the screenshot were related to Dogge, the subject of the screenshot, Teller removed the portion of the exhibit with the bookmarks as a courtesy. Teller had no problem doing so, as the bookmarks had nothing to do with the substance of the exhibits – the YouTube video images demonstrating Dogge's infringement of the Shadows copyright and attempted public sale of the illusion.

Nevertheless, Dogge saw an opportunity to avoid the merits of the litigation and exploited it. He sought to profit from this invented association between himself and the adult sites by suing Teller in Belgium for defamation for eight million Euros, likely hoping that the frivolous defamation suit would deter Teller from enforcing his intellectual

However, Dogge fails to acknowledge that he used the same as an excuse to drive up the risk and exposure to Teller. Dogge *sued* Teller over Exhibit 3, claiming defamation, in a frivolous lawsuit in Belgium. After litigating the case through trial, at no small expense of time and money, Teller *prevailed* and was even awarded attorneys' fees. The fees associated with the Belgium action are not included in the attorneys' fees requested.[10]

Accordingly, as Dogge was having his day in court on that issue in Belgium, there was no need for the original Exhibit 3 or the Belgian defamation litigation to be discussed in the American intellectual property litigation at all. Indeed, the Belgian defamation action is entirely irrelevant (as noted by this court on several occasions) to the intellectual property litigation. Nevertheless, Dogge frequently brought it up, sometimes filing entire motions on that topic. Despite the fact that they were not meritorious as inflammatory and offensive, these motions had to be opposed. Not one of them was granted. Addressing these motions was yet another driver of fees and costs in this case.

Finally, as noted in the initial motion, due to Dogge evading service, plaintiff was forced to serve by publication in Europe, which was costly and time-consuming. Even after Dogge was served, litigating the case was made exceptionally difficult and costly due to Dogge's constant frivolous filings and blatant refusal to produce discovery and comply with this court's orders. Teller was forced to file or oppose dozens of discovery motions unnecessarily, and respond to certain post-discovery motions that were completely unwarranted, such as a motion for case-dispositive sanctions against Teller and a motion that asked the court to order the FBI and Interpol investigate Teller for criminal wrongdoing. After partial summary judgment was granted and plaintiff attempted to prepare for trial, Dogge refused to participate in trial preparation, stating in a letter written in Dutch

---

property rights in the American suit. Not surprisingly, Dogge came forward with no credible evidence whatsoever in the Belgian action that anyone has associated Dogge with the adult sites or refused to employ him as a result of Exhibit 3. As a result, Dogge attempted to use the American litigation as a forum to further publicize the removed Exhibit 3, constantly making outlandish claims, as seen further below, and using inflammatory and harassing language in his filings, no doubt hoping to garner media attention and manufacture "evidence" for the Belgian suit.

[10] It is unclear what Dogge means by being asked to pay for Teller's attorney's "holidays abroad." Teller does not want Dogge to pay for counsel's holidays abroad, and if anything to the contrary appears in the billing statements, Teller voluntarily disclaims it. Dogge may be referring to the fact that Teller's attorney, Mark Tratos, attended the trial in Belgium on December 20, 2013. However, the cost of such travel was not paid by Teller and is not sought in this motion.

1 that he would not appear in person for trial. Teller was forced to translate the letter and file additional motions; ultimately, plaintiff was forced to prepare a trial brief, exhibit list, trial exhibits, findings of fact and conclusions of law, settlement statement, motions in limine, and engage in other costly trial preparation despite the fact that Dogge had stated he would not attend trial. Dogge alone is responsible for the unnecessarily high cost of this suit, and this court should order all attorneys' fees paid accordingly.

### III.  CONCLUSION

In light of the foregoing, Teller respectfully requests that this court enter default judgment and a permanent injunction on the terms outlined in the original motion.

Dated this 15th day of September, 2014

GREENBERG TRAURIG, LLP

*/s/ Mark G. Tratos*
Mark G. Tratos (Bar No. 1086)
Peter H. Ajemian (Bar No. 9491)
Nancy R. Ayala (Bar No. 7146)
3773 Howard Hughes Pkwy, Suite 400 North
Las Vegas, NV  89169

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on September 15, 2014, service of the foregoing **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT GERARD DOGGE** was made this date through the Court's CM/ECF electronic filing system, via registered electronic mail and United States mail, postage prepaid to:

> Gerard Dogge
> Hoevensebaan 2
> 2950 Kapellen
> Belgium – Europe
> Gerard-bakardy@hotmail.com

*Cynthia L. Ney*
An employee of Greenburg Traurig