UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TELLER. an individual, | Case No. 2:12-CV-591 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| GERARD DOGGE (p/k/a Gerard Bakardy), an individual, | |
| Defendant(s). | |

Presently before the court is plaintiff Teller's motions for default judgment (doc. #228) and permanent injunction (doc. #229) against *pro se* defendant Dogge. Defendant filed a response (doc. # 230), and plaintiff filed a reply (doc. # 231).

**I.    Background**

The instant action is a suit by plaintiff, a world-renowned magician, against defendant, a Dutch performer who created two YouTube videos in which he performed a magic trick strikingly similar to one of plaintiff's signature illusions, and offered to sell "A Double illusion for the price of 'One'!!" (*See* doc. # 1).  Defendant also marketed for sale a rose flower prop of his own design.

The illusion, "Shadows," has been an integral part of Teller's act for over three decades.[1] Defendant's similar illusion is called "The Rose and Her Shadow." To allow individuals to

---

[1] "Shadows" consists of a spotlight trained on a vase containing a single rose. The light falls in such a manner that the shadow of the rose is projected onto a white screen positioned some distance behind it. Teller then enters the otherwise still scene, picks up a large knife, and proceeds to use the knife to dramatically sever the leaves and petals of the rose's shadow on the screen slowly, one-by-one, whereupon the corresponding leaves of the real rose sitting in the vase fall to the ground, breaking from the stem at the point where Teller cut the shadow.

**James C. Mahan**
**U.S. District Judge**

locate his videos using YouTube's search functions, defendant tagged the videos with keywords including "Penn" and "Teller."[2]

Plaintiff brought claims for copyright infringement under the Copyright Act and unfair competition under the Lanham Act. (*See* doc. # 1). The case has persisted for more than two years, due in part to defendant's refusal to cooperate in the litigation process and failure to comply with court orders.

On March 20, 2014, this court granted Teller's motion for summary judgment on the issue of liability for copyright infringement. (Doc. # 184). Construing defendant's *pro se* arguments liberally, the court held, however, that defendant Dogge raised a genuine issue of fact as to whether he willfully infringed upon Teller's copyright. (*See id.*). Therefore, the court denied summary judgment on the issue of damages for copyright infringement. (*See id.*) The court also denied summary judgment on Teller's unfair competition claim. (*See id.*).

On July 9, 2014, the court adopted the magistrate judge's report and recommendation to impose sanctions under Federal Rules of Civil Procedure 16 and 37 on defendant for failing to participate in required pretrial procedures and refusing to physically attend trial. (*See* doc. # 225). Plaintiff now seeks default judgment on his willful infringement and unfair competition claims against defendant. Plaintiff also seeks permanent injunctive relief and attorneys' fees and costs.

**II.     Discussion**

   *A.  Default Judgment*

Default judgment is appropriate "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . ." Fed. R. Civ. P. 55(a). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule." Fed.R.Civ.P. 55(b)(2).

---

[2] Teller is one-half of the famous Penn & Teller magic duo. Teller performs primarily with Penn Jillette.

James C. Mahan
U.S. District Judge

- 2 -

1      Obtaining a default judgment entails two steps: "first, the party seeking a default
2  judgment must file a motion for entry of default with the clerk of a district court by
3  demonstrating that the opposing party has failed to answer or otherwise respond to the
4  complaint, and, second, once the clerk has entered a default, the moving party may then seek
5  entry of a default judgment against the defaulting party." *See UMG Recordings, Inc. v. Stewart*,
6  461 F. Supp. 2d 837, 840 (S.D. Ill. 2006).  Where a party has not been properly served, there is
7  no basis for a court to enter default judgment.  *See Fairly v. Potter*, 2003 WL 402261, *4 (N.D.
8  Cal. 2003).

9      Plaintiff has properly complied with Rule 55.  (*See* docs. # 226, 228).  Plaintiff now asks
10  the court to enter default judgment against defendant under Federal Rule of Civil Procedure
11  55(b)(2).

12      The choice whether to enter a default judgment lies within the discretion of the trial court.
13  *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980).  In the determination of whether to grant
14  a default judgment, the trial court should consider the seven factors articulated in *Eitel v.*
15  *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  These factors are: (1) the possibility of
16  prejudice to plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the
17  amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether
18  default was due to excusable neglect, and (7) the policy favoring a decision on the merits.  *Id.*  In
19  applying these *Eitel* factors, "factual allegations of the complaint, except those relating to the
20  amount of damages, will be taken as true."  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th
21  Cir. 1977); *see* Fed. R. Civ. P. 8(d).

22      The first *Eitel* factor weighs in favor of granting plaintiff's motion for default judgment.
23  Plaintiff will be prejudiced because he will not be allowed to litigate his claims.  *See Adobe Sys.*
24  *Inc. v. Marmeletos*, 2009 WL 1034143 at *3 (N.D. Cal. Apr. 16, 2009).  Defendant's response
25  cites no legal authority.  The majority of defendant's "legal argument" is dedicated to soliloquys
26  on issues irrelevant to the case, such as how the United States court system is inferior to the
27  system in his native country.  Defendant shows no respect for this court and no intention of
28  attending trial, complying with any court orders, or cooperating in any way to help resolve the

**James C. Mahan**
**U.S. District Judge**

- 3 -

1 case. Therefore, if plaintiff's motion for default judgment is not granted, plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 283 F.Supp.2d 1127, 1177 (C.D. Cal. 2002).

The second and third *Eitel* factors weigh in favor of default judgment. Plaintiff's complaint states plausible claims for relief for willful copyright infringement and unfair competition. (*See* doc. # 1). Further, plaintiff's complaint is well pleaded as it identifies defendant, enumerates plaintiff's rights under the Lanham and Copyright Acts, describes the steps defendant took to infringe upon these rights, and sets forth causes of action for defendant's conduct. (*See id.*)

Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. *See Cal. Security Cans*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Trs. of Plumbers & Pipefitters Union Local 525 Health & Welfare Trust & Plan v. T.E.N. Mech. Corp.*, No. 2:10-cv-02258-RLH-NJK, 2013 WL 1249600 (D. Nev. March 27, 2013) (quoting *Landstar Ranger, Inc. v. Parth Enter., Inc.,* 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)). The sum of money sought is large: more than $1.1 million.[3] (*See* doc. # 228). The relief sought is appropriate under 17 U.S.C. §§ 504-05[4] and 15 U.S.C § 1117[5] and the amount is commensurate with the seriousness of defendant's deliberate misconduct. Because plaintiff demonstrates a basis for his requested monetary relief, this factor weighs in favor of granting default judgment.

---

[3] Plaintiff seeks $150,000 statutory damages for willful copyright infringement, $931,661.65 in attorneys' fees, and $57,906.95 for costs, totaling $1,139,568.60.

[4] "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). "In any civil action under this title, the court in its discretion may allow the recovery of full costs . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

[5] "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a)(3).

**James C. Mahan**
**U.S. District Judge**

- 4 -

The fifth *Eitel* factor also favors default judgment. "Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Geddes,* 559 F.2d at 560. Given the sufficiency of the complaint, including evidence of plaintiff's copyright registration, known celebrity persona, defendant's willful infringement, and defendant's default, "no genuine dispute of material facts would preclude granting [plaintiff's] motion." *Cal. Security Cans,* 238 F. Supp. 2d at 1177.

Applying the sixth factor, the court cannot conclude that defendant's default is due to excusable neglect. Despite defendant's best efforts to avoid service of process, which necessitated plaintiff's filing of an emergency motion to extend time for service, and a motion for service by publication, plaintiff properly served defendant with summons and the complaint. Defendant's efforts to evade service, and failures to respond, to appear in person, and to litigate this case cannot be attributable to excusable neglect. *United States v. High Country Broad. Co., Inc.,* 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a corporation that failed to appear in the action through licensed counsel). This factor weighs in favor of default judgment.

The final *Eitel* factor weighs against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal. Sec. Cans,* 238 F. Supp. at 1177 (citation omitted). Moreover, defendant's failure to comply with court orders or appear in court "makes a decision on the merits impractical, if not impossible." *Id.*

Having reviewed plaintiff's motion, evidence previously submitted in this case, and having considered the *Eitel* factors as a whole, the court concludes that the entry of default judgment is appropriate against defendant. The court now turns to the reasonableness of the damages and relief sought in the default judgment.

  B. *Statutory Damages*

Plaintiff seeks statutory damages in the amount of $150,000 for plaintiff's prevailing Copyright Act claims. A copyright owner "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all

James C. Mahan
U.S. District Judge

- 5 -

1  infringements involved in the action." 17 U.S.C. § 504(c)(1).  Where the copyright owner
2  sustains the burden of proving, and the court finds, that infringement was committed willfully,
3  the court has discretion to increase the award of statutory damages to a sum up to $150,000.  *Id.*
4  at § 504(c)(2).

5        "The court has wide discretion in determining the amount of statutory damages to be
6  awarded, constrained only by the specified maxima and minima."  *Peer Int'l Corp. v. Pausa*
7  *Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 734
8  F.2d 1329, 1335 (9th Cir. 1984)).  "Even for uninjurious and unprofitable invasions of copyright
9  the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and
10 vindicate the statutory policy" of discouraging infringement.  *F. W. Woolworth Co. v.*
11 *Contemporary Arts*, 344 U.S. 228, 233 (1952); *see also Peer Int'l*, 909 F.2d at 1337.

12       Plaintiff elected statutory damages before succeeding on the merits through defendant's
13 default.  Therefore, this court has wide discretion to award statutory damages, in any amount,
14 from $750 to $150,000.  *See* 17 U.S.C. § 504.  Because plaintiff also seeks a permanent
15 injunction, the court finds the maximum statutory award unnecessary to deter defendant's further
16 violations.

17       Further, plaintiff's initiation of this case stemmed from two YouTube videos defendant
18 posted with an offer to sell "A Double illusion for the price of 'One'!!"  Plaintiff's own exhibits
19 show screenshots which appear to be one video at three different times.  (*See* doc. #1, exh. 3).
20 The video has between twelve and fourteen views, a very small amount.  It is unclear whether
21 defendant sold any of the offered illusions.  Because this court may award damages "[e]ven for
22 uninjurious and unprofitable invasions of copyright," *Woolworth*, 344 U.S. at 233, the court finds
23 damages in the amount of $15,000 appropriate.

24       *C.  Injunctive Relief*

25       Plaintiff contends that a permanent injunction is necessary to stop defendant from his
26 continued violation of plaintiff's trademarks and copyrights.  Plaintiff seeks a permanent
27 injunction prohibiting defendant from selling his flower prop and forbids defendant from trading
28 on Teller's goodwill to sell any goods or services in the future, including reproducing any of

**James C. Mahan**
**U.S. District Judge**

Penn & Teller's illusions. Specifically, plaintiff requests the court enter an injunction enjoining defendant and any of his alter egos, agents, employees, or other representatives from:

1. Infringing Teller's copyright in "Shadows," and from producing, manufacturing, selling, or otherwise distributing the rose flower prop;
2. Trading on Teller's goodwill and reputation to provide Dogge's profits in the future. Teller performs primarily with Penn & Teller; accordingly this includes building, using or selling props to allow Dogge or others to perform any [sic] Penn & Teller's illusions, or assisting others in doing the same.
3. Using in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, to cause mistake or to deceive regarding the origin, sponsorship, or approval of Dogge's goods and services or falsely to imply a connection, affiliation, endorsement, or association with Teller or Penn & Teller;
4. Unfairly competing with Teller or Penn & Teller in any manner whatsoever; and
5. Causing likelihood of confusion or further injuring Teller's business reputation.

(Doc. # 228).

Both the Copyright Act and the Lanham Act vest district courts with power to grant permanent injunctions as they "deem reasonable." 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."); 15 U.S.C § 1116(a) ("[C]ourts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . .").

. . .

. . .

A permanent injunction is warranted when there is no reason to believe the infringing party will cease the infringement without an injunction. *See, e.g., Broadcast Music, Inc. v. Blueberry Hill Family Restaurants, Inc.*, 899 F. Supp. 474, 483 (D. Nev. 1995) (Copyright Act) (citing *Tempo Music v. Christenson Food & Mercantile Co.,* 806 F. Supp. 816, 821 (D. Minn. 1992)) (same); *Superhype Publishing, Inc. v. Vasiliou,* 838 F. Supp. 1220, 1226 (S.D. Ohio 1993)) (same); *Storz Performance, Inc. v. Moto Italia*, No. 07-cv-2242 W(WMC), 2008 WL 4284402, at *4 (S.D. Cal. Sept. 15, 2008) (Lanham Act); *Sprint Nextel Corp. v. Thuc Ngo*, No. C-12-02764 CW (EDL), 2012 WL 4127296, at *8 (N.D. Cal. Sept. 18, 2012) (same). Generally, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations. *See MAI Systems Corp v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993); *Storz*, 2008 WL 4284402, at *8.

Courts must consider the following factors in determining whether to issue a permanent injunction: (1) likelihood of irreparable injury if preliminary relief is not granted; (2) a likelihood of success on the merits; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). "An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22, 32. A moving party is required to make a showing that all of these requirements have been met. *Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Plaintiff has achieved success on the merits for his copyright infringement claim through this court's prior order of summary judgment (doc. # 184),[6] and for his unfair competition claim through defendant's default. Further, plaintiff is likely to suffer irreparable injury because, absent injunctive relief, defendant's trademark and copyright infringement is likely to continue. Consumer confusion and potential dissatisfaction with defendant's recreations of plaintiff's performances are likely to have a negative effect on plaintiff's reputation and goodwill. *See*

---

[6] This court's March 20, 2014 order granted summary judgment as to all issues of copyright infringement, except willful infringement. (*See* doc. # 184). Willful infringement has now been established by defendant's default.

**James C. Mahan**
**U.S. District Judge**

- 8 -

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damage to . . . goodwill, qualify as irreparable harm").

Balance of hardships and public interest both weigh in favor of plaintiff. Plaintiff has expended a substantial amount of time and money in building and promoting performances and a public persona (copyright and trademark, respectively) that are recognizable and respected worldwide. Any harm to defendant in forcing him to comply with the requirements of the law is outweighed by plaintiff's efforts to protect his copyrighted performances and trademarked persona from consumer confusion.

After considering the *Winter* factors, the court finds that a permanent injunction is appropriate to enjoin defendant from any further infringement.

Plaintiff asserts that, in addition to preventing defendant from infringing on plaintiff's copyright and trademark, defendant should be enjoined from producing, manufacturing, selling, or otherwise distributing defendant's rose flower prop. (*See* doc. # 228). Plaintiff further asserts that purchasers of the prop would be more likely to perform plaintiff's famous illusion with the prop than create a new illusion. Additionally, the sale of the prop would cause plaintiff to have to continue to bring enforcement actions and engage in a high degree of monitoring, since sale of the prop would also make it much more likely that others would be doing the illusion, causing further harm to plaintiff. (*See id.*).

That purchasers of defendant's prop *might* perform plaintiff's illusion in an infringing manner, requiring plaintiff to bring future enforcement actions against additional defendants is not a concern for this court. Injunctions must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law. *See Price v. City of Stockton,* 390 F.3d 1105, 1117 (9th Cir.2004); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1062 (N.D. Cal. 2010); *Iconix, Inc. v. Tokuda,* 457 F. Supp. 2d 969, 998 (N.D. Cal. 2006). Therefore, though the court finds it appropriate to enjoin defendant, his alter egos, agents, employees, and other representatives from infringing on plaintiff's copyright and

**James C. Mahan**
**U.S. District Judge**

- 9 -

trademark, this court declines to prevent defendant from producing, manufacturing, selling, or otherwise distributing the rose flower prop.

### D.  Attorneys' fees and costs

#### 1.  Lanham Act claims

The Lanham Act allows a court to award reasonable attorneys' fees to the prevailing party in "exceptional cases." *See* 15 U.S.C. § 1117(a); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). Although the statute does not define the term "exceptional," generally a trademark case is exceptional when the court finds the defendant acted maliciously, fraudulently, deliberately, or willfully. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (district court determined by entry of default judgment that defendant's act were committed knowingly, maliciously, and oppressively, and with an intent to injure).

Here, the complaint alleges that defendant's work "The Rose & Her Shadow" is intentionally similar to plaintiff's "Shadows" and is likely to cause confusion. (*See* doc. # 1). Because the court must accept the allegations in the complaint as true, defendant deliberately and knowingly committed acts of trademark infringement. Therefore, finding that this is an "exceptional" case under 15 U.S.C. § 1117(a), an award of attorneys' fees is justified.

In addition to reasonable attorneys' fees, the Lanham Act also entitles plaintiffs to an award of costs. *See* 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office [or] a violation under section 1125(a) or (d) . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (3) the costs of the action."). Because defendant has engaged in unfair competition, violating 15 U.S.C. 1125(a) by suggesting plaintiff's endorsement of and connection to defendant's "The Rose & Her Shadow," plaintiff is entitled to recover the costs of this action. *See* 18 U.S.C. § 1125(a); *White v. Samsung Electronics Am., Inc.*, 971 F.2d 1395, 1399-1400 (9th Cir. 1992) (interpreting § 1125(a) to create a cause of action against individuals who use distinctive elements of a celebrity's persona without permission to falsely suggest an association or endorsement of goods or services).

*2. Copyright Act claims*

Under the Copyright Act, "the court in its discretion may allow the recovery of full costs . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

Because the court granted summary judgment in favor of plaintiff's copyright infringement claims, plaintiff is a prevailing party. Therefore, the court may award reasonable attorneys' fees and full costs.

*3. Court's award*

In the Ninth Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah Cnty.,* 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 978 (9th Cir. 2008) (internal quotations and citation omitted).

In calculating the lodestar, the court must determine a reasonable rate and a reasonable number of hours for each attorney. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987). The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider and upward or downward adjustment.

Plaintiff seeks $57,906.95 in costs and $931,661.65 in attorneys' fees, totaling $989,568.60. Plaintiff's counsel has provided the court with an affidavit showing counsel's billing practices and costs incurred.

Having reviewed counsel's affidavit, computed each attorney's hourly rate, and having considered the time spent on each task outlined in exhibit A, the court finds the amount of hours expended and the billable rates used to be reasonable. Further, the court finds the costs expended by plaintiff to be reasonable.

**James C. Mahan**
**U.S. District Judge**

While this court finds that plaintiff is entitled to costs and attorneys' fees, the requested amount—$57,906.95 in costs and $931,661.65 in attorneys' fees, totaling $989,568.60—is significant. Plaintiff initiated this case based on defendant's posting of two infringing YouTube videos that received minimal views, both of which were removed by YouTube in respect for plaintiff's copyright. It is unclear whether defendant sold any of the offered illusions or made any profit at all from the videos.

There is no denying that defendant has been exceptionally difficult and unresponsive, necessitating numerous motions and responses from plaintiff to attempt to compel defendant's compliance and cooperation. For the additional time and effort plaintiff undertook in an attempt to achieve defendant's cooperation in the litigation process, the court finds plaintiff entitled to reasonable costs in the amount of $30,000, and attorney fees in the amount of $500,000, for a total award of $530,000.

### III.   Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Teller's motion for default judgment against defendant Dogge (doc. # 228) be GRANTED.

IT IS FURTHER ORDERED that plaintiff Teller's motion for statutory damages (doc. # 228) be GRANTED in the amount of $15,000.

IT IS FURTHER ORDERED that plaintiff Teller's motion for a permanent injunction against defendant Dogge (doc. # 229) be GRANTED, consistent with the below order, and DENIED as to restricting defendant Dogge from building, producing, manufacturing, selling, or otherwise distributing the rose flower prop or any other props that might allow others to infringe on Teller's or the duo of Penn & Teller's performance copyrights.

IT IS FURTHER ORDERED that plaintiff Teller's motion for attorneys' fees and costs against defendant Dogge (doc. # 228) be GRANTED in the amount of $30,000 for costs and $500,000 for attorneys' fees, totaling $530,000.

**James C. Mahan**
**U.S. District Judge**

      IT IS FURTHER ORDERED that defendant Dogge and any of his alter egos, agents, employees, or other representatives are permanently enjoined from:

1. Infringing Teller's copyright in "Shadows";
2. Trading on Teller's goodwill and reputation to provide Dogge's profits in the future.
3. Using in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, to cause mistake or to deceive regarding the origin, sponsorship, or approval of Dogge's goods and services or falsely to imply a connection, affiliation, endorsement, or association with Teller or Penn & Teller;
4. Unfairly competing with Teller or Penn & Teller in any manner whatsoever; and
5. Causing likelihood of confusion or further injuring Teller's business reputation.

      IT IS FURTHER ORDERED this court shall retain jurisdiction of this case for the purpose of enforcing this judgment.

      DATED September 30, 2014.

                                              _____
                                              UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**